David Chami, AZ Bar No. 027585
dchami@consumerjustice.com
Michael Yancey, AZ Bar No. 37187
myancey@consumerjustice.com
**CONSUMER JUSTICE LAW FIRM PLC**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (480) 626-2359
Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Aída Esmeralda Campos; Autumn Byars; Beldaja Jama; Breanna Broker; Emma Davis; Fatima Jabardi; Guadalupe Chavez Morales; Harry Smith; José Maciel; Michaela Koert; Mya Vallejo; Michael Phillips Clancy; Nolan Quinn; Noor Odeh; Rebecca Huang; Salam Jabaieh; and Zahra Alam., *Plaintiffs*, v. Arizona Board of Regents d/b/a Arizona State University, a constitutionally created body corporate; Joanne Vogel, Lance Harrop, Brian Reece, Michael Crow, Michael Thompson, Maricopa County Sherriff Jerry Sheridan, Maricopa County Sherrif Russ Skinner, Arizona Department of Public Safety, Officer Juan Padilla, Officer Clayton Mason, Officer Jason Latella, Officer Robert Van Buhler, Officer Kyle Bathke, Officer Prince Singh, Denise Whisman, Jason Weber, Cayla Sullivan, Drew Solomon, Gary Samuels, Norean Sablan, Dawn Russo, Charles Ross, James | Case No. CV-24-00987-PHX-JJT<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

O'Brien, Jeffrey Nix, Anthony Momon,
Megan Thompson, John Thompson,
Christopher Hopkins, Daniel Herrmann,
Nancy Gonzales, Carrie Gambee, Robert
Brems, and Michael Anderson.

*Defendants.*

Plaintiffs Aída Esmeralda Campos, Autumn Byars, Beldaja Jama, Breanna Broker, Emma Davis, Fatima Jabardi, Guadalupe Chavez Morales, Harry Smith, José Maciel, Michaela Koert, Mya Vallejo, Michael Phillips Clancy, Nolan Quinn, Noor Odeh, Rebecca Huang, Salam Jabaieh, and Zahra Alam (together as "Plaintiffs") bring this action against the Arizona Board of Regents ("ABOR") (at times d/b/a Arizona State University or "ASU") (at times d/b/a Arizona State University Campus Police or "ASU PD"), Joanne Vogel, Lance Harrop, Brian Reece, Michael Crow, Sheriff Jerry Sheridan, Arizona Department of Public Safety, Officer Juan Padilla, Officer Clayton Mason, Officer Jason Latella, Officer Robert Van Buhler, Officer Kyle Bathke, Officer Prince Singh, Denise Whisman, Jason Weber, Cayla Sullivan, Drew Solomon, Gary Samuels, Norean Sablan, Dawn Russo, Charles Ross, James O'Brien, Jeffrey Nix, Anthony Momon, Megan Thompson, John Thompson, Christopher Hopkins, Daniel Herrmann, Nancy Gonzales, Carrie Gambee, Robert Brems, and Michael Anderson and allege as follows:

**JURISDICTION AND VENUE**

1. This Court has Jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Plaintiffs allege a violation of the First Amendment to the United States Constitution.

2. This Court has Jurisdiction to hear Plaintiffs' state law claims in this matter pursuant to 28 U.S.C. § 1367 because Plaintiffs' state law claims form part of the same case or controversy under Article III of the United States Constitution, arising out of the same nucleus of operative facts as Plaintiffs' federal claims.

3. Pursuant to Ariz. Rev. Stat. § 12-821.01, notices of all state law claims alleged in this Complaint were submitted to all public entity and public employee/agent Defendants against whom such claims are asserted. No responses were received, and the statutory deadline for Defendants' responses has passed. Plaintiffs are therefore authorized to bring this action against public entity and public employee/agent Defendants by Arizona law.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant ABOR is a public Arizona entity with the capacity to sue and be sued in its common name under applicable law in this Court and therefore resides in Arizona. The remaining Defendants also reside in Arizona. Venue is also proper here pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the District.

**PARTIES**

5. Plaintiffs are students who are currently or were previously enrolled at Arizona State University.

6. Defendant ABOR is a constitutionally created body corporate established by the Arizona Constitution as the governing body for Arizona's state university system.

7. Defendant Joanne Vogel is the Vice President of Student Services in Educational Outreach and Student Services.

8. Defendant Lance Harrop is the Dean of Students at Arizona State University's Tempe campus.

9. Defendant Brian Reece is the Associate Dean of Students at Arizona State University's Tempe campus.

10. Defendant Michael Crow is the President of Arizona State University.

11. Defendant Michael Thompson was the ASU PD Chief of Police during the times relevant to this Complaint, was placed on administrative leave following the events described in this Complaint, and thereafter retired from his position with ASU PD.

12. Defendant Jerry Sheridan is the Sheriff of Maricopa County, Arizona.

13. Defendant Russ Skinner was the Sheriff of Maricopa County, Arizona during the events described in this Complaint.

14. Defendant Arizona Department of Public Safety is a state agency established and authorized by Arizona statute.

15. Defendant Juan Padilla is an ASU PD Officer.

16. Defendant Clayton Mason is an ASU PD Officer.

17. Defendant Jason Latella is an ASU PD Officer.

18. Defendant Robert Van Buhler is an ASU PD Officer.

19. Defendant Kyle Bathke is an ASU PD Officer.

20. Defendant Prince Singh is an ASU PD Officer.

21. Defendant Denise Whisman is a Senior Director of Emergency Management at the ASU Department of Enterprise Risk and Resilience.

22. Defendant Jason Weber is a Crime Prevention Manager at ASU PD.

23. Defendant Cayla Sullivan is an Emergency Management Coordinator at the ASU Department of Enterprise Risk and Resilience.

24. Defendant Drew Solomon is a Senior Director of Risk Management at the ASU Department of Enterprise Risk and Resilience.

25. Defendant Gary Samuels is an Assistant Director in the ASU Department of Student Rights and Responsibilities.

26. Defendant Norean Sablan is an Assistant Director in the ASU Department of Student Rights and Responsibilities.

27. Defendant Dawn Russo is the Director of the ASU Department of Student Rights and Responsibilities.

28. Defendant Charles Ross is the Director of Physical Security Systems in the ASU Department of Preparedness and Security Initiatives.

29. Defendant James O'Brien is the Senior Vice President of the ASU Office of University Affairs.

30. Defendant Jefferey Nix is a Crime Intelligence Analyst for ASU PD.

31. Defendant Anthony Momon is an ASU PD Commander.

32. Defendant Megan Thompson is an Associate Director in the ASU Department of Student Rights and Responsibilities.

33. Defendant John Thompson is an ASU PD Assistant Chief of Police.

34. Defendant Christopher Hopkins is the Real Time Analysis Center Manager for ASU PD.

35. Defendant Daniel Herrmann is an Offer/Detective with ASU PD.

36. Defendant Nancy Gonzalez is the ASU Executive Vice President and University Provost.

37. Defendant Carrie Gambee is an ASU PD Assistant Chief of Police.

38. Defendant Robert Brems is the Direct of Strategy and Innovation at ASU PD.

39. Defendant Michael Anderson is an Assistant Vice President at the ASU Department of Enterprise Risk and Resilience Management.

40. The individual Defendants named include officers, agents and employees of ABOR involved in the pre-planned, targeted decisions to forcefully remove peaceful protest from public land for non-content-neutral reasons, to immediately and unilaterally suspend Plaintiffs from enrollment at ASU following the events of April 26, 2024, and April 27, 2024, to retaliate against Plaintiffs academically without complying with Arizona law, and to impose draconian punishments designed to restrict the exercise of free speech.

41. All acts and omissions of non-individual Defendants as alleged herein are alleged to have been committed through agents of Defendants acting within the course and scope of their agency, including members of the ASU administration and members of the ASU campus police department, as well as any employees, officers, or members of state and local agencies.

42. To the extent appropriate and necessary, all individual Defendants are sued both in their individual and official capacities.

**FACTS**

43. Prior to the events of April 26, 2024, groups of students at public universities

5

throughout the nation were participating in protests, marches, and gatherings in solidarity to express their political views on the United States' involvement in the mass genocide of civilians residing in Gaza, including the investment and use of public funds in and for causes aligned with the same.

44. Students throughout the country protested their respective Universities participation in the ongoing genocide of the people of Gaza through investments in the military industrial complex who profited from the selling of weapons of mass destruction to the State of Israel.

45. In light of this movement and in the weeks leading up to April 26, 2024, from the top of the ABOR chain of command to the bottom of ASU and ASU PD management, plans were made on how to swiftly stifle any such student demonstration should it make it to Arizona's public universities.

46. Prior to the events of April 26, 2024, Defendants engaged in extensive communication and preparation – internally with each other and members of ASU and ASU PD staff, as well as externally with public law enforcement and affiliates of political organizations such as the Anti-Defamation League (which has ties with the State of Israel) – all with the goal of preventing or squashing any public demonstrations against the use of public assets to fund the genocide in Gaza or affiliation with pro-Zionist entities that might take place at ASU or any other public Arizona university.

47. For example, Defendants Michael Crow and Joanne Vogel were in contact with non-party Jonathan Greenblatt – the controversial CEO of the Anti-Defamation League perhaps most famous for equating opposition to Zionism with white supremacy in 2022 – as early as April 22, 2024, four days prior to the events of this Complaint, wherein Greenblatt explicitly called for ASU to prepare and coordinate with law enforcement in order to impose clear and immediate consequences on students protesting Zionism and its murderous effects in Gaza.

48. All of the individual Defendants employed in various ASU departments were directly involved in a flurry of email, telephone, and personal communication taking place

during the days prior to the events of April 26, 2024, and April 27, 2024.

49. These communications varied in content from general "awareness" of protests occurring at other universities to explicit preparation for cracking down on any such protest to occur at ASU – referred to by top brass as "nip[ping] it immediately" – and consideration of what policies would be available to use as authority to remove protesters.

50. These communications further included plans on how to handle the media narrative after any anticipated "incident".

51. All individual Defendants employed by ASU and involved in these communications assented to – either explicitly or implicitly – to the plans and goals being discussed and established, including the swift and decisive retaliation against any pro-Palestine or anti-Zionist protest by way of arrest.

52. All individual Defendants employed by ASU and involved in these communications participated in the planning and execution of that retaliation.

53. Defendant Michael Thompson was in contact with the ASU Executive Vice President, Treasurer and CFO, non-party Morgan Olsen, regarding student protests over the genocide in Gaza as early as 6:41 AM on April 26, 2024, seventeen hours before the events of this Complaint.

54. ASU PD officials also contacted Maricopa County Sheriff's Office ("MCSO") before 10:10am on April 26, 2024, to inform MSCO that it planned to arrest "between 75-100 individuals from a protest" and asking for assistance in transporting arrestees. This communication was made over twelve hours before the events of this Complaint.

55. ASU and ASU PD employees were in also preemptive communication with media outlets prior to events of this Complaint, upon information and belief to begin spinning their actions as more palatable for public consumption and to plant seeds of misrepresentation regarding the actions and identities of the protesters.

56. Defendants' planned crackdown on free speech began on or about April 26, 2024, and continued throughout the following months, with certain actions, decisions, and

effects still being taken, implemented, and felt to this day.

57. On or about April 26, 2024, Plaintiffs joined a large group of like-minded individuals in front of the conference center known as "Old Main" on the Tempe campus of ASU in order to peacefully protest the United States' involvement in the genocide being carried out in Gaza and ASU's use of public funds to invest in entities with ties to the perpetrators of that genocide.

58. The protest format was that of a "sit in", where participants make their protest known through their presence, gathering in solidarity.

59. At no time were Plaintiffs violent, disruptive, or dangerous.

60. At no time did Plaintiffs assault, harass, or otherwise intimidate anyone.

61. The sit in protest lasted through the evening, until at or around 11:30pm ASU campus police, at the direction of ASU administration, began forcibly removing protesters and arresting any individuals who refused to voluntarily leave.

62. Most of the Plaintiffs were among those who refused to voluntarily leave and were consequently arrested on charges of trespassing, with the exceptions of Plaintiff Harry Smith and Plaintiff Michael Phillips Clancy, discussed in more detail below.

63. ASU PD was assisted in substantial part by the Maricopa County Sheriff's Office, at the direction of then Sheriff Russ Skinner, and the Arizona Department of Public Safety, both of which provided officers who were part of the "arrest pipeline" through which peaceful protesters were arrested, searched, loaded on to busses, and transported to jailing facilities.

64. ASU PD, Maricopa County, and Arizona Department of Public Safety officers worked together to systematically break up the peaceful protest, arresting anyone who refused to capitulate to the obvious violation of their free speech rights.

65. The arrests resulted in multiple injuries to protesters, including bruising, contusions, and loss of consciousness.

66. From the outset, ASU police made their intentions clear; they fully intended to break up any protest, peaceful or otherwise, against Israeli violence in Gaza, regardless

of the legality of such actions and with no actual ASU policy in mind to justify such actions.

67. In fact, at or around 9 AM on the 26th, Plaintiff Harry Smith was arrested by Defendants Singh, Padilla, Latella, and Buhler, without warning or explanation to send a message to other protestors that they too would be arrested if they remained at the protest. Later that same day the court and prosecutor dropped all charges against Plaintiff Smith for lack of any probable cause for the arrest.

68. Despite the charges being dropped, Mr. Smith has faced identical boiler plate charges by Defendant resulting in Mr. Smith being kicked out of his student housing, rendering him temporarily homeless during the early months of summer.

69. Plaintiff Michael Phillips Clancy was subject to a similar unwarranted arrest on the morning of the 26th by Defendants Padilla, Mason, Latella, Buhler, and Bathke.

70. On or about April 27th, Plaintiffs began receiving identical preplanned messages from ASU administration informing them that their enrollment at the school had been suspended, effective immediately.

71. In total, approximately 65 suspension notices were completed by ASU Defendants by the afternoon of April 27, 2024, meaning that ASU processed 65 suspensions in less than a single work day, indicating either that the ASU Defendants had preplanned the punishments prior to the protest and ASU's crack down on free speech or that multiple ASU employees worked furiously for hours on a Saturday.

72. The messages further informed Plaintiffs that they were not permitted back on ASU campus grounds, on threat of arrest for trespassing.

73. The messages also informed Plaintiffs that they were prohibited from communicating with any ASU faculty or staff, including professors.

74. ASU's decision to suspend Plaintiffs, ban Plaintiffs from the ASU campus, and prohibit communication with Plaintiffs' professors, made just as semester finals were about to be administered, effectively made it inevitable that student Plaintiffs' grades would suffer for the Spring 2024 semester.

75. Being suspended and banned from the campus, Plaintiffs were prohibited

from attending the semester finals in person.

76. Being prohibited from communicating with their professors, Plaintiffs could not make arrangements to take the semester finals remotely.

77. ASU's decision to enact harsh, immediate disciplinary action without any recourse was based solely upon the anti-genocide message being communicated by Plaintiffs' protest.

78. There were pro-Isreal counter-protesters also present on the Old Main lawn at all relevant times; ASU chose to target the anti-genocide demonstration.

79. Moreover, there were fraternity members partying, drinking, and recording the events of the protests when Plaintiffs were arrested, in direct violation of the "curfew" being used as a post-hoc explanation for ASU's actions; ASU chose to arrest and discipline the anti-genocide protesters instead of the bystanders, demonstrating the targeted nature of ASU's actions.

80. ASU therefore retaliated against Plaintiffs on the basis of Plaintiffs' expression of protected free speech, and – following the denial of Plaintiff's request for a temporary restraining order and preliminary injunction – ASU's retaliation has had and continues to have significant and detrimental effects on the Plaintiffs' academic futures and livelihoods.

81. Interestingly, on or about May 6, 2024, Michael Crow told a crowd of graduating students that they should "Fight... for their rights...of free speech..."

82. Apparently, this encouragement of ASU students to fight for their right to speak extended only to those ASU students who were not protesting genocide.

83. Following the events of April 26, 2024, and April 27, 2024, Defendant Michael Crow embarked upon a media campaign designed to spread misinformation about the actions of Defendants and Plaintiffs on the night of April 26, 2024, including but not limited to false accusations that Plaintiffs had erected fortifications on ASU property, false assertions that no one had been injured during the arrest, and false descriptions of the role of law enforcement at the protests as simply helping ASU take down encampment tents.

84. In early summer of 2024, Defendants issued blanket denials to any appeals or requests for accommodations relating to the unilateral suspensions handed out *en masse* on April 27, 2024, and April 28, 2024, despite personal guarantees from ASU representatives to the Court at the hearing on the Plaintiff's request for a temporary restraining order and preliminary injunction that accommodations would be made to permit Plaintiffs to make up the missed final exams.

85. Throughout the summer of 2024, Defendants engaged in sham "investigations" which universally resulted in findings that Plaintiffs were responsible for violating various vague ASU policies by applying obviously post-hoc reasoning in an attempt to justify ASU's violations of Plaintiff's First Amendment rights.

86. The punishments for such "violations" included Orwellian reeducation assignments where Plaintiffs were tasked with drafting position papers on why their actions were wrong and why ASU was justified in its violent response to free speech.

87. ASU further imposed extended suspensions on multiple Plaintiffs. For example, Plaintiffs Clancy and Smith were suspended through the Fall 2024 semester, despite not being present at the evening protest.

88. These decisions handed out days before the deadline to register for Fall 2024 classes, ensuring that each and every student Plaintiff's summer plans related to education were ruined and that Plaintiffs were faced with a short time window to decide whether to complete the reeducation assignments and get back to their educations or to engage in the appeals process.

89. Those Plaintiffs who did engage in the appeals process were met with predictably hostile arbiters of their claims and universal confirmation of ASU's illegal free-speech crackdown.

90. Defendants' actions have resulted in substantial and ongoing harm to Plaintiffs' educational and vocational futures, and have caused severe emotional and mental distress, frustration, anxiety, and fear.

## COUNT I – FIRST AMENDMENT RETALIATION
### 42 U.S.C. § 1983 – U.S. CONST. AMEND. I
#### INDIVIDUAL DEFENDANTS

91. Plaintiffs incorporate by reference all other paragraphs in this Complaint as though fully alleged herein.

92. The individual Defendants named in this suit are persons as that term is used under 42 U.S.C. § 1983.

93. Defendants, in their individual capacity and as the final decision-making authority on behalf of ASU and ASU PD, were acting under the color of law when engaging in the actions set forth in the preceding paragraphs.

94. The actions set forth in the preceding paragraphs deprived Plaintiffs of their right to be free from retaliation for exercising their First Amendment rights under the United States Constitution.

95. The peaceful sit-in in which Plaintiffs engaged is a constitutionally protected activity that did not involve substantial disruption of or material interference with school activities.

96. Suspending Plaintiffs indefinitely, banning Plaintiffs from setting foot on campus, prohibiting Plaintiffs from communicating with their professors just prior to the administration of final exams, refusing reasonable accommodations for final exams, and imposing Orwellian and draconian punishments on plaintiffs, all for engaging in a peaceful sit-in, would chill a person of ordinary firmness from continuing to engage in the constitutionally protected activity.

97. The Plaintiffs' act of participating in a peaceful sit-in to bring attention to politically significant actions on the part of the United States government – including sending aid to Israel – was a substantial or motivating factor in Defendants' decision to punish and suspend Plaintiffs from enrollment at ASU.

98. Furthermore, the decision of Defendants Singh, Padilla, Latella, Buhler, Mason, and Bathke to arrest Plaintiffs Smith and Clancy with no probable cause on the morning of the protests was done solely because of Plaintiffs Smith and Clancy's affiliation

with the planned protest and the message thereof.

99. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer harm, including damage to their academic standing, perceived character and standing in the community, and future prospects, as well as emotional and psychological distress, in amounts to be determined by the jury.

100. Additionally, due to the wanton and outrageous conduct of Defendants, Plaintiffs ask that punitive damages be imposed in amounts to be determined by the jury.

101. Finally, Plaintiffs' claims arise under 42 U.S.C. § 1983. As an action to enforce this provision and seek redress for a violation of civil rights, Plaintiffs are entitled to an award of reasonable costs and attorneys' fees in an amount to be deemed reasonable by this Court pursuant to 42 U.S.C. § 1988 in the event that Plaintiffs prevail at trial.

### COUNT II – VIOLATION OF STUDENTS' FREE SPEECH RIGHTS
### A.R.S. § 15-1864
### ABOR; INDIVIDUAL DEFENDANTS EMPLOYED BY OR REPRESENTING ABOR

102. Plaintiffs incorporate by reference all other paragraphs in this Complaint as though fully alleged herein.

103. ASU's immediate disciplinary action of suspension was taken as a result of Plaintiffs' exercise of free speech and therefore violated A.R.S. § 15-1864.

104. A.R.S. § 15-1864 prohibits a university or community college from restricting a student's right to speak in a public forum unless such restrictions are reasonable, justified without reference to the content of the speech, necessary to achieve a compelling governmental interest, are the least restrictive means to further that interest, leave ample alternative channels for communication of the information, and allow spontaneous assembly. A.R.S. § 15-1864(A)-(B).

105. A.R.S. § 15-1864 further provides that any person lawfully present on a university or community college campus has a right to engage in protests and/or demonstration in any area where the person is lawfully present, subject only to restriction from engaging in conduct that infringes upon the free speech rights of others. A.R.S. § 15-

1864(C).

106. A.R.S. § 15-1864 also provides that the public areas of Arizona university campuses are "public forums" open on the same terms to any speaker. A.R.S. § 15-1864(D).

107. Defendants acted to prevent and stop Plaintiffs from exercising their rights to public assembly, protest, demonstration, and speech due solely to the content and viewpoint of Plaintiffs' speech.

108. This restriction was imposed in an unreasonable manner, without any legitimate justification not related to the content of Plaintiffs' speech.

109. The various post-hoc explanations submitted to Plaintiffs and the Court through the past seven months are all implausible under the circumstances.

110. It is readily apparent that Defendants did not target Plaintiffs due to their presence on the Old Main lawn because (1) the lawn is a public forum under A.R.S. § 15-1864 and therefore open to public demonstrations, and (2) none of the pro-Isreal counter-protesters or fraternity members also present on the Old Main lawn were arrested or persecuted.

111. It is likewise readily apparent that Defendants did not target Plaintiffs due to an 11 PM "curfew" because (1) Defendants made at least two arrests in mid-morning on April 26, 2024, and (2) none of the pro-Isreal counter-protesters or fraternity members also present past the curfiew were arrested or persecuted.

112. Defendants targeted Plaintiff because of the content and viewpoint of the speech in which Plaintiffs were engaged.

113. Furthermore, ASU's immediate disciplinary action of suspension – taken as a result of Plaintiffs' exercise of free speech – was imposed without providing advanced written notice and without affording Plaintiffs the opportunity to review the evidence in support of ASU's allegations, confront any witnesses against them, to present a defense, or to call witnesses before an impartial person or panel, in violation of Arizona law.

114. A.R.S. § 15-1866 sets forth a policy of free expression on Arizona campuses

of higher learning, explicitly stating that, in Arizona, "[i]t is not the proper role of an institution of higher education to shield individuals from speech protected by the first amendment, including, without limitation, ideas and opinions that may be unwelcome, disagreeable or deeply offensive." A.R.S. § 15-1866(A)(2).

115. A.R.S. § 15-1866 further acknowledges that students have the right to assemble in order to address issues of public concern as long as the assembly does not include unlawful or disruptive activities, subject to reasonable viewpoint and content-neutral restrictions that must be clear, published, and provide for "ample alternative means of expression." A.R.S. § 15-1866(A)(3).

116. In order to protect a student's fundamental free speech rights, A.R.S. § 15-1866 provides that before punishment can be meted out in "disciplinary proceedings […] involving expressive conduct" a student must receive advance written notice of the relevant allegations, be provided a chance to review any evidence and confront any witnesses relevant to the allegations, be provided opportunity to present a defense and call witnesses against the allegations in front of an impartial person or panel, be given an avenue to appeal any decision made by that person or panel, and where suspension of more than thirty days (or expulsion) is a potential punishment to be provided the right to active assistance of counsel. A.R.S. § 15-1866(A)(5).

117. These requirements explicitly supersede any university policies or procedures which impact the free speech rights of Arizona students. A.R.S. § 15-1866(C).

118. Defendants failed to comply with each and every one of the A.R.S. § 15-1866 requirements.

119. Plaintiffs were immediately punished by the imposition of indefinite suspensions from ASU without receiving advance written notice, the chance to review evidence, confront witnesses, mount a defense, call witnesses, or engage counsel to assist in making a case in front of an impartial person or panel.

120. Indeed, the person and/or persons who made the decision to impose immediate, indefinite suspensions were not impartial, being members of the ASU

administrative teams which pre-planned the crackdown.

121. The appeals supposedly available to Plaintiffs universally resulted in a rubberstamping of Defendants' actions and no accommodation for making up missed final examinations, despite assurances to the Court by ASU representation that such accommodation would be made.

122. As such, these appeals were not effective and did not provide a legitimate or real opportunity to appeal the decisions.

123. The subsequent "investigation" and final decision-making process about the ultimate punishments to be imposed were unilaterally completed by ASU employees, including certain Defendants to this case.

124. The resultant findings of guilt were predetermined; had ASU concluded that any of the Plaintiffs were not guilty of the allegations it would have been forced to admit in this suit that it had violated Plaintiffs' free speech rights.

125. As such, these persons or panels were not impartial.

126. Defendants' violation of Arizona law regarding free speech on campus renders them liable to each Plaintiff – all of who were subject to violation of their expressive rights – for injunctive relief, statutory damages, actual damages, and reimbursement of reasonable attorneys' fees and costs. A.R.S. § 15-1864(I)-(J).

### JURY DEMAND

Plaintiffs hereby demand trial by jury for all issues and claims raised in this Complaint.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand judgment against the Defendants, and each of them, for the violations of Plaintiffs' constitutional rights as follows:

1. Injunctive relief requiring that Defendants permanently revoke all disciplinary actions taken against Plaintiffs arising out of the events of April 26, 2024, and

16

April 27, 2024;

2. Money damages to fairly and reasonably compensate plaintiffs for the deprivation of their rights, including compensatory, consequential, and presumed damages;

3. Punitive damages against the individual Defendants in an amount to be determined by the trier of fact;

4. A declaration that Defendants violated Plaintiffs' constitutional rights;

5. Pre-judgment and post-judgment interest;

6. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and A.R.S. § 15-1864; and

7. Any such other and further relief as the Court deems just and proper.

Respectfully submitted this 12th day of February 2025,

> */s/David Chami*
> David Chami, AZ Bar No. 027585
> dchami@consumerjustice.com
> Michael Yancey, AZ Bar No. 37187
> myancey@consumerjustice.com
> **CONSUMER JUSTICE LAW FIRM PLC**
> 8095 N. 85th Way
> Scottsdale, Arizona 85258
> T: (480) 626-2359
>
> *Attorneys for Plaintiffs*