Keith Beauchamp (012434)
D. Andrew Gaona (028414)
Austin C. Yost (034602)
Andrew T. Fox (034581)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5490
kbeauchamp@cblawyers.com
agaona@cblawyers.com
ayost@cblawyers.com
afox@cblawyers.com

*Attorneys for University Defendants*[1]

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Aida Esmeralda Campos, et al., | No. 2:24-CV-00987-JJT |
| Plaintiffs, | **UNIVERSITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| v. | |
| Arizona Board of Regents, et al., | |
| Defendants. | |

---

[1] The University Defendants are the Arizona Board of Regents and these 30 ASU employees named as Defendants in the Second Amended Complaint: (1) Joanne Vogel, (2) Lance Harrop, (3) Brian Reece, (4) Michael Crow, (5) Michael Thompson, (6) Juan Padilla, (7) Clayton Mason, (8) Jason Latella, (9) Robert Van Buhler, (10) Kyle Bathke, (11) Prince Singh, (12) Denise Whisman, (13) Jason Weber, (14) Cayla Sullivan, (15) Drew Solomon, (16) Gary Samuels, (17) Norean Sablan, (18) Dawn Russo, (19) Charles Ross, (20) James O'Brien, (21) Jeffrey Nix, (22) Anthony Momon, (23) Megan Thompson, (24) John Thompson, (25) Christopher Hopkins, (26) Daniel Herrmann, (27) Nancy Gonzales, (28) Carrie Gambee, (29) Robert Brems, and (30) Michael Anderson.

1

**Table of Contents**

2    Introduction .................................................................................................1

3    Factual Background.......................................................................................2

4    I.    ASU encourages free expression on its campuses subject to reasonable and
           content-neutral time, place, and manner restrictions, including the Policy. ...2

5
6    II.   Plaintiffs violated the Policy and refused to leave campus, leading to their
           arrests for trespassing and their suspensions under the Code of Conduct. .....3

7          A.   The Encampment ...................................................................3

8          B.   The Arrests .............................................................................3

9          C.   The Interim Actions ..............................................................4

10         D.   The Final Decisions................................................................5

11   Legal Standard.............................................................................................6

12   Argument .....................................................................................................6

13   I.    The SAC lacks individualized allegations of wrongdoing.............................6

14   II.   Count 1 fails to state a claim on which relief can be granted. .......................9

15         A.   The SAC alleges no facts plausibly establishing that the
                University Defendants deprived Plaintiffs of their free speech
16              rights. ......................................................................................9

17              1.   Plaintiffs were not engaged in a constitutionally protected
                     activity. .........................................................................9

18
19                  a. The Policy is a valid restriction on expressive conduct. .........9

                    b. Plaintiffs violated the Policy. ...............................................12

20                     (1)   Plaintiffs Harry Smith and Michael Clancy .................13

21                     (2)   The Remaining Plaintiffs.............................................13

22
                    c. There was no selective enforcement. ....................................14

23
24              2.   Any constitutionally protected activity was not a substantial or
                     motivating factor in the University Defendants' conduct. ........15

25                  a. Plaintiffs' challenges to their arrests fail..............................16

26                     (1)   Plaintiffs Harry Smith and Michael Clancy .................16

27                     (2)   The Remaining Plaintiffs.............................................17

28                  b. Plaintiffs' challenges to their suspensions fail. ....................17

B.  Plaintiffs' failure to seek judicial review of the decisions to suspend them from ASU bars the SAC's challenge to those suspensions...........................................................................................18

C.  Plaintiffs cannot recover their requested relief. ...............................19

   1.  The Eleventh Amendment prohibits retrospective relief against the University Defendants named in their official capacities....19

   2.  The SAC alleges no facts plausibly showing that the University Defendants can provide the requested injunctive relief. ..........19

   3.  The University Defendants named in their personal capacities are entitled to qualified immunity. ...................................................20

      a. Plaintiffs Harry Smith and Michael Clancy ..........................21

      b. The Remaining Plaintiffs .......................................................21

III.  Count 2 fails to state a claim on which relief can be granted. .....................22

   A.  Plaintiffs cannot sue ABOR because ABOR is immune from suit under the Eleventh Amendment. ...................................................22

   B.  The Eleventh Amendment also bars Count 2 against the individual University Defendants. ......................................................22

   C.  Even if Plaintiffs could bring Count 2, they would lack statutory authority to sue several University Defendants. .................23

   D.  The SAC alleges no facts plausibly demonstrating that the University Defendants violated A.R.S. §§ 15-1864 or -1866.............23

   1.  There was no content- or viewpoint-based discrimination........24

   2.  Section 15-1866 merely requires ABOR to adopt a policy.......24

   3.  Even if A.R.S. § 15-1866 conferred procedural rights on Plaintiffs, those rights would not apply to interim actions........24

   4.  Plaintiffs failed to seek judicial review of the decisions to suspend them from ASU................................................................25

Conclusion...................................................................................................25

1

2

**Table of Authorities**

**Page(s)**

**Cases**

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents,*
   824 F.3d 858 (9th Cir. 2016) ............................................................... 19, 22

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................. 6, 13, 15, 16

*Beasley v. City of Atlanta,*
   No. 1:11-CV-03801, 2012 WL 13012623 (N.D. Ga. Aug. 30, 2012) ...................... 11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ......................................................................... 6, 13

*Bellis v. Navajo Cnty.,*
   No. CV-23-08125, 2024 WL 3202332 (D. Ariz. June 27, 2024) ........................... 16

*Blomquist v. Town of Marana,*
   501 F. App'x 657 (9th Cir. 2012) ............................................................ 14

*State ex rel. Brnovich v. Ariz. Bd. of Regents,*
   250 Ariz. 127 (2020) .......................................................................... 23

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez,*
   561 U.S. 661 (2010) ........................................................................... 14

*City of Chicago v. Alexander,*
   46 N.E.3d 1207 (Ill. App. Ct. 2015) ......................................................... 11

*Clark v. Cmty. for Creative Non-Violence,*
   468 U.S. 288 (1984) ...................................................................... 10, 11

*Dickenson v. Haga,*
   No. 18-2464, 2019 WL 416720 (C.D. Cal. Jan. 31, 2019) .................................... 6

*District of Columbia v. Wesby,*
   583 U.S. 48 (2018) ............................................................................ 16

*Doe v. Regents of the Univ. of Cal.,*
   891 F.3d 1147 (9th Cir. 2018) ................................................................ 22

*Eilrich v. Remas,*
   839 F.2d 630 (9th Cir. 1988) ................................................................. 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Felarca v. Birgeneau*,
    891 F.3d 809 (9th Cir. 2018) ............................................................. 14

*Gamino v. Schrouder*,
    No. CV-23-00239, 2024 WL 1740016 (D. Ariz. Apr. 23, 2024) ........................... 9

*Gomez-Shaw v. White*,
    No. CV-23-00575, 2023 WL 4899914 (D. Ariz. Aug. 1, 2023) ............................ 19

*Green v. Ariz. Bd. of Regents*,
    No. CV-18-04665, 2020 WL 2512759 (D. Ariz. May 15, 2020) ........................... 18

*Greer v. Spock*,
    424 U.S. 828 (1976) ........................................................................ 9

*Heck v. Humphrey*,
    512 U.S. 477 (1994) ....................................................................... 25

*Hines v. Youseff*,
    914 F.3d 1218 (9th Cir. 2019) ............................................................. 6

*Ivey v. Bd. of Regents of Univ. of Alaska*,
    673 F.2d 266 (9th Cir. 1982) ........................................................... 6, 8

*Jones v. Bank of Am. NA*,
    No. CV-17-08231, 2017 WL 11686858 (D. Ariz. Dec. 8, 2017) ............................ 7

*Kievit v. Ariz. Bd. of Regents*,
    No. CV-09-1673, 2010 WL 749927 (D. Ariz. Mar. 4, 2010) .............................. 22

*Killgore v. City of South El Monte*,
    860 F. App'x 521 (9th Cir. 2021) ......................................................... 15

*Kirwin v. Kot*,
    No. CV-22-00471, 2024 WL 911745 (D. Ariz. Mar. 4, 2024) ......................... 16, 18

*Klein v. Ariz. State Univ.*,
    No. CV-20-01982, 2020 WL 7404564 (D. Ariz. Dec. 17, 2020) ........................... 22

*Krist v. Arizona*,
    No. CV17-2524, 2018 WL 1570260 (D. Ariz. Mar. 30, 2018) ............................. 22

*Lamorie v. Davis*,
    485 F. Supp. 3d 1065 (D. Ariz. 2020) ................................................ 20, 21

*Mandel v. Bd. of Trs. of Cali. State Univ.*,
    No. 17-CV-03511, 2018 WL 5458739 (N.D. Cal. Oct. 29, 2018) .......................... 15

iv

*Marder v. Lopez,*
    450 F.3d 445 (9th Cir. 2006) ................................................................. 4

*Medlock v. Trs. of Indiana Univ.,*
    738 F.3d 867 (7th Cir. 2013) ............................................................... 14

*Miller-Jacobson v. City of Rochester,*
    941 N.Y.S.2d 475 (N.Y. Sup. Ct. 2012) .............................................. 11

*Minch v. Ariz. State Bd. of Nursing,*
    No. CV-17-2525, 2017 WL 5496156 (D. Ariz. Nov. 16, 2017) ............... 8

*Misischia v. Pirie,*
    60 F.3d 626 (9th Cir. 1995) ................................................................. 25

*Monterroso v. City of San Diego,*
    857 F. App'x 935 (9th Cir. 2021) ........................................................ 16

*Moss v. U.S. Secret Serv.,*
    572 F.3d 962 (9th Cir. 2009) ............................................................... 15

*Navratil v. City of Racine,*
    101 F.4th 511 (7th Cir. 2024) .............................................................. 14

*Occupy Sacramento v. City of Sacramento,*
    878 F. Supp. 2d 1110 (E.D. Cal. July 10, 2012) .................................. 11

*Occupy Tucson v. City of Tucson,*
    No. CV-11-699, 2012 WL 13027046 (D. Ariz. May 4, 2012) ................. 11

*Olson v. Morris,*
    188 F.3d 1083 (9th Cir. 1999) ............................................................. 18

*Patches v. Indus. Comm'n of Ariz.,*
    220 Ariz. 179 (App. 2009) ................................................................... 23

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) ............................................................................... 22

*Quade v. Ariz. Bd. of Regents,*
    700 F. App'x 623 (9th Cir. 2017) .................................................. 12, 18

*Quade v. Ariz. Bd. of Regents,*
    No. CV-15-00610, 2015 WL 10939902 (D. Ariz. Sept. 14, 2015) .......... 12

*Rico v. Ducart,*
    980 F.3d 1292 (9th Cir. 2020) ............................................................. 21

*Roberson v. Cnty. of Cochise,*
   No. CV-18-00587, 2019 WL 2053568 (D. Ariz. May 9, 2019) ............................... 20

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.,*
   44 F.4th 867 (9th Cir. 2022) ............................................................... 20, 21

*Sebra v. Neville,*
   801 F.2d 1135 (9th Cir. 1986) ............................................................... 19

*Skilstaf, Inc. v. CVS Caremark Corp.,*
   669 F.3d 1005 (9th Cir. 2012) ............................................................... 2

*Sounders v. Lucero,*
   196 F.3d 1040 (9th Cir. 1999) ............................................................... 11, 12

*Source Cap. Funding Inc. v. Barrett Fin. Grp., LLC,*
   No. CV-23-02113, 2024 WL 1856552 (D. Ariz. Apr. 29, 2024) ............................... 7

*State v. Bailey,*
   100 A.3d 514 (N.H. 2014) ............................................................... 11

*Students for a Conservative Am. v. Greenwood,*
   378 F.3d 1129 (9th Cir. 2004) ............................................................... 19

*U.S. v. Griefen,*
   200 F.3d 1256 (9th Cir. 2000) ............................................................... 2, 10

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) ............................................................... 10

*Wood v. Yordy,*
   753 F.3d 899 (9th Cir. 2014) ............................................................... 17

*Ex Parte Young,*
   209 U.S. 123 (1908) ............................................................... 19, 22

**Statutes**

A.R.S. § 13-1502 ............................................................... 2, 17, 25

A.R.S. § 15-1864 ............................................................... passim

A.R.S. § 15-1866 ............................................................... 23, 24, 25

42 U.S.C. § 1983 ............................................................... 18, 22, 25

**Introduction**

The Second Amended Complaint ("SAC") fares no better than its predecessors and should be dismissed with prejudice and without leave to amend.

Seventeen ASU students ("Plaintiffs") sued to challenge their arrests and suspensions for violating a longstanding content- and viewpoint-neutral ASU policy prohibiting camping and overnight occupancy on campus and for failing to follow police officer commands to leave. The SAC names the Arizona Board of Regents ("ABOR") and 30 ASU employees as Defendants ("University Defendants")—ranging from police officers in the ASU Police Department, to people in ASU's administration, to people in various other ASU departments, offices, and positions. According to the SAC, all these University Defendants unconstitutionally retaliated against Plaintiffs and violated their state law rights for expressing pro-Palestinian messages on campus.

This Court should dismiss the SAC in full for three reasons:

*First*, the SAC (like the complaints before it) has no individualized allegations of wrongdoing. Paragraphs 7 through 39 simply allege the University Defendants' names and job titles. Elsewhere, they are barely mentioned. The SAC instead repeatedly lumps them together as "Defendants," yet again disregarding *Iqbal*'s pleading standard.

*Second*, for Count 1 (a First Amendment retaliation claim), the SAC alleges no facts plausibly establishing any constitutional violation by any University Defendant. But even if it had, the Eleventh Amendment would bar any request for retrospective relief against the Defendants named in their official capacities, and the Defendants named in their personal capacities would be entitled to qualified immunity.

*Third*, for Count 2 (a state law claim under A.R.S. § 15-1864), the Eleventh Amendment forecloses it against both ABOR and the individual University Defendants. In any event, Plaintiffs lack statutory authority to sue several Defendants, and the SAC alleges no facts plausibly showing any violation by any Defendant.

1

**Factual Background**

I.    **ASU encourages free expression on its campuses subject to reasonable and content-neutral time, place, and manner restrictions, including the Policy.**

As a public university, ASU "strive[s] to ensure the fullest degree of intellectual freedom and free expression" on its campuses. [Declaration of Austin C. Yost ("Yost Decl.") at Ex. 1 (ABOR Policy 1-124(A))][2] To that end, the open areas on ASU's campuses are generally public fora. They are available for free expression on any topic or viewpoint subject to reasonable and content-neutral time, place, and manner restrictions. *See, e.g.*, *U.S. v. Griefen*, 200 F.3d 1256, 1259-60 (9th Cir. 2000).

This means that ASU's campuses "are not places of unrestricted public access." [Yost Decl. at Ex. 2 (ABOR Policy 7-201(A)(1))] Rather, ASU has "reasonable policies [governing] the maintenance of the peaceful conduct and operation of the university and university property." [*Id.* (ABOR Policy 7-201(A)(6))] When people violate these policies and refuse to leave campus, they may be arrested for, among other offenses, criminal trespassing. *See* A.R.S. § 13-1502(A)(1). [*See also* Yost Decl. at Ex. 3 (SSM 104-02) ("Interfering with the peaceful conduct of university-related business or activities or remaining on campus grounds after a request to leave may be considered a crime.")]

One reasonable and content-neutral time, place, and manner restriction is ASU's Facilities Management Manual 115: Overnight Use of University Property ("Policy"). Adopted over a decade ago, the Policy prohibits camping and overnight occupancy on ASU's campuses with few exceptions not present here. [*See* Yost Decl. at Ex. 4 (Policy)] The Policy's purpose is to "protect the health and safety of the university and campus community and access to and security of university facilities and property." [*Id.*]

Under the Policy, "no person shall camp or erect any structure or use any camp paraphernalia or light or maintain any campfire on any university property"—except in

---

[2] This Court can consider Exhibits 1-4, 22-23, and 41 because they are "public record[s]" of which this Court "may take judicial notice." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (citation omitted).

2

the narrow circumstance when a university activity or event "require[s]" it. [*Id.*] "Camp" means the "use of tents, shelters, portable toilets, or camp paraphernalia or structures . . . for the apparent purpose of overnight occupancy." [*Id.*] "Overnight" means "[a]ny time between the hours of 11:00 p.m. and 5:00 a.m." [*Id.*] And "camp paraphernalia" means "[a]ny equipment or materials for sleeping, occupancy, or living accommodations, including . . . tents, huts, cots, beds, sleeping bags, tarpaulins, hammocks, cooking/warming equipment, or cooling/air conditioning equipment." [*Id.*]

## II.    Plaintiffs violated the Policy and refused to leave campus, leading to their arrests for trespassing and their suspensions under the Code of Conduct.

### A.    The Encampment

In Spring 2024, pro-Palestinian protests on university campuses spread across the country. [Doc. 75 ¶¶ 43, 44] These protests often involved "marches" and "gatherings." [*Id.* ¶ 43] The SAC does not (and cannot) allege that these "gatherings" typically complied with university policies banning encampments and occupations.

The SAC alleges that the University Defendants "communicat[ed]" about this "movement" and "prepar[ed]" for a similar "demonstration[]" at ASU. [*Id.* ¶¶ 45, 46] These discussions involved "awareness" about protests at "other universities," ASU policies, and media relations. [*Id.* ¶¶ 49, 50] For instance, non-party Jonathan Greenblatt contacted Defendants Michael Crow and Joanne Vogel to "call[] for ASU" to impose consequences on certain protesters. [*Id.* ¶ 47] And Defendant Michael Thompson was "in contact" with non-party Morgan Olsen about "student protests" on this topic. [*Id.* ¶ 53]

On April 26, Plaintiffs participated in a "large" demonstration on ASU's Tempe campus. [*Id.* ¶ 57] It was a "sit-in" protest where Plaintiffs and others gathered to express pro-Palestinian messages. [*Id.* ¶¶ 57, 58] The SAC acknowledges, as it must, that these protesters set up "encampment tents" on ASU's property. [*Id.* ¶ 83]

### B.    The Arrests

The SAC states that the protest started in the "morning." [*Id.* ¶ 69] Around 9:00am, the ASU Police Department arrested Plaintiffs Harry Smith and Michael Clancy. [*Id.* ¶¶

3

67, 69] About one hour later, as the protest grew to "75-100" people, it asked the

Maricopa County Sheriff's Office for "assistance in transporting arrestees." [*Id.* ¶ 54]

The protest lasted all day and "through the evening"—until "around 11:30pm." [*Id.* ¶ 61] At that point, police officers ordered Plaintiffs (except Mr. Smith and Mr. Clancy) and other protesters to "voluntarily leave" ASU's campus. [*Id.*] They "refused," and so the police officers arrested them for "trespassing." [*Id.* ¶ 62] The arrestees were then "searched," placed in "buses," and "transported" to jail. [*Id.* ¶ 63]

### C.    The Interim Actions

Shortly after, "ASU administration" informed Plaintiffs that they were placed on interim suspension. [*Id.* ¶ 70] These interim actions notified Plaintiffs that ASU's "Office of Student Rights and Responsibilities has received information alleging that you may have engaged in conduct that would violate the [ABOR] Student Code of Conduct." [Yost Decl. at Exs. 5-21 (Interim Actions)][3] The interim actions explained that it "has been reported that on or around Friday, April 26, 2024,[4] during a gathering located at the Old Main lawn at the ASU Tempe campus, you failed to comply with the directives of ASU PD officers and were subsequently arrested for trespassing."[5] [*Id.*] The interim actions cited possible violations of the Student Code of Conduct pertinent to each Plaintiff. [*Id.*; *see also id.* at Ex. 22 (ABOR Policy 5-308(F)) (detailing "prohibited conduct" for ASU students)] The interim actions also disclosed that the Office of Student Rights and Responsibilities had "initiated an investigation into this matter." [*Id.* at Exs. 5-21]

---

[3] This Court can consider Exhibits 5-21 and 24-40 because the SAC "necessarily relies" on them. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citation omitted). The SAC repeatedly refers (¶¶ 70, 72, 73, 74, 85, 86, 87, 88, 96, 113, 119, 120, 123, 124) to the interim actions and decision letters and seeks relief targeted at them (an injunction "revok[ing] all disciplinary actions"). [Doc. 75 (Prayer for Relief) ¶ 1]

[4] Some interim actions say "Saturday, April 27, 2024," but are otherwise identical. [*See* Yost Decl. at Exs. 7, 8, 9, 10, 14, 16, 17, 21]

[5] One interim action includes information about additional allegations. [*See id.* at Ex. 12 (also informing this Plaintiff that it "has been reported that . . . you . . . prevent[ed] the officers from leaving . . . and were also charged with resisting arrest")]

1

**D.**    **The Final Decisions**

2          The Office of Student Rights and Responsibilities completed its investigation over

3    the summer. [Doc. 75 ¶ 85] Under the Student Code of Conduct, Plaintiffs had the right

4    to receive an "explanation of the charges" against them and "all investigative materials"

5    and to "respond." [Yost Decl. at Ex. 23 (Student Code of Conduct Procedures) § D]

6          After the investigation, non-parties Daniel Drane III and Regina Matos (ASU

7    Deans of Students) issued decision letters to Plaintiffs. [*Id.* at Exs. 24-40 (Decision

8    Letters)] The Deans of Students concluded, based on the evidence, that it was "more

9    likely than not" that Plaintiffs violated the Student Code of Conduct. [*Id.*] The letters

10   summarized the relevant evidence for each Plaintiff, listed the Student Code of Conduct

11   violations, and imposed suspensions. [6] [*Id.*] The letters also placed Plaintiffs on

12   "administrative probation" and set out "additional outcomes" that required them to

13   complete certain assignments as a "condition[] for return." [*Id.*][7]

14         Because the Deans of Students imposed "disciplinary sanctions" on Plaintiffs in

15   the form of suspensions, Plaintiffs had the right under the Student Code of Conduct to

16   "request a hearing before a University Hearing Board." [*Id.* at Ex. 23 § E] The SAC does

17   not identify any Plaintiff who requested a hearing. [*See* Doc. 75 ¶ 89] Nor does it (or can

18   it) allege that any Plaintiff appealed a final administrative decision to state court under

19   Arizona's Administrative Review Act. *See* A.R.S. §§ 12-901 through -914.

20

21         [6] One Plaintiff was not suspended. [*Id.* at Ex. 40 (only placing the student on
22   "administrative probation" and requiring her to complete an "educational opportunity")]
     All the other Plaintiffs received suspensions with varying lengths. [*Id.* at Exs. 24-39] Most
23   Plaintiffs completed their suspensions before the 2024 fall semester started. [*Id.*]

24         [7] The SAC alleges (¶¶ 84, 121) that the University Defendants' counsel provided
25   "personal guarantees" that Plaintiffs would be permitted to "make up [their] missed final
     exams" at the hearing on their request for a TRO. Wrong. The University Defendants'
26   counsel said that ASU would work to "find [a] solution in the event that a suspension is
27   ultimately revoked" or "reversed." [Tr. at 97:17-98:9] But no interim suspension was
     "revoked" or "reversed." And the Deans of Students decided that every Plaintiff "more
28   likely than not" violated the Student Code of Conduct. [Yost Decl. at Exs. 24-40]

1

**Legal Standard**

2      A complaint must allege enough facts that, "accepted as true, . . . 'state a claim to

3  relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

4  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must allege facts that

5  would allow a court to "draw the reasonable inference that [each] defendant is liable for

6  the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a

7  formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting

8  *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions'

9  devoid of 'further factual development.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

10

**Argument**

11  **I.    The SAC lacks individualized allegations of wrongdoing.**

12      As the University Defendants explained in their previous motion to dismiss, civil

13  rights plaintiffs like Plaintiffs here must allege enough facts to state a plausible claim that

14  "*each Government-official defendant*, through the official's *own individual actions*, has

15  violated the Constitution." *Id.* at 676 (emphasis added). [*See also* Doc. 32 at 6-8 (motion

16  to dismiss); Doc. 45 at 2-3 (reply in support)] That's because "each Government official,

17  his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556

18  U.S. at 677. Plaintiffs must thus "present facts showing how [each] particular defendant

19  was directly and personally involved in inflicting the alleged injury, such that a claim to

20  relief is 'plausible on its face.'" *Dickenson v. Haga*, No. 18-2464, 2019 WL 416720, at

21  *3 (C.D. Cal. Jan. 31, 2019) (quoting *Iqbal*, 556 U.S. at 678); *see also, e.g.*, *Hines v.*

22  *Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) ("[Plaintiffs] sued the officials under 42

23  U.S.C. § 1983. That means [they] must show that each defendant personally played a role

24  in violating the Constitution."). "Vague and conclusory allegations of official

25  participation in civil rights violations are not sufficient to withstand a motion to dismiss."

26  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

27

28

6

These principles also apply to Plaintiffs' state law claim under A.R.S. § 15-1864. "[G]roup pleading" violates Federal Rule of Civil Procedure 8(a)(2) because "it does not give fair notice of the claims against each [d]efendant with the requisite specificity." *Jones v. Bank of Am. NA*, No. CV-17-08231, 2017 WL 11686858, at *2 (D. Ariz. Dec. 8, 2017). This means that, for any claim, plaintiffs cannot "collectively accuse multiple defendants of committing misdeeds through the expedience of the title 'Defendants.'" *Id.*; *see also, e.g.*, *Source Cap. Funding Inc. v. Barrett Fin. Grp., LLC*, No. CV-23-02113, 2024 WL 1856552, at *8, *12 (D. Ariz. Apr. 29, 2024) (similar).

The SAC—like its predecessors—does not come close to meeting this standard. The SAC names 30 ASU employees as Defendants. Yet for 21 employees, the SAC mentions them by name in one (and only one) paragraph. Paragraphs 7 through 39 merely recite the individual University Defendants' names and job titles. Those allegations do not tie any University Defendant to any of the 17 Plaintiffs, the alleged constitutional or state law violation, or the SAC's requests for relief.[8]

Elsewhere, the SAC alleges a few facts about individual University Defendants, but those allegations—many of which are vague and conclusory—do not state a plausible claim for relief. Put another way, even when the SAC connects a specific allegation with an individual University Defendant, the allegation does not plausibly establish a First Amendment retaliation claim or a violation of A.R.S. §§ 15-1864 or -1866. [*See* Doc. 75 ¶ 47 (a non-party "contact[ed]" Defendants Michael Crow and Joanne Vogel to "call[] for ASU" to impose consequences on certain protesters), ¶ 53 (Defendant Michael Thompson was "in contact" with a non-party about "student protests" on this topic), ¶ 67

---

[8] There are no individualized allegations besides the paragraphs alleging their names and job titles for these 21 individual University Defendants: (1) Lance Harrop, (2) Brian Reece, (3) Denise Whisman, (4) Jason Weber, (5) Cayla Sullivan, (6) Drew Solomon, (7) Gary Samuels, (8) Norean Sablan, (9) Dawn Russo, (10) Charles Ross, (11) James O'Brien, (12) Jeffrey Nix, (13) Anthony Momon, (14) Megan Thompson, (15) John Thompson, (16) Christopher Hopkins, (17) Daniel Herrmann, (18) Nancy Gonzales, (19) Carrie Gambee, (20) Robert Brems, and (21) Michael Anderson.

1    (Defendants Prince Singh, Juan Padilla, Jason Latella, and Robert Van Buhler "arrested"

2    Plaintiff Harry Smith "without warning or explanation"), ¶ 69 (Defendants Juan Padilla,

3    Clayton Mason, Jason Latella, Robert Van Buhler, and Kyle Bathke "subject[ed]"

4    Plaintiff Michael Clancy to an "unwarranted arrest"), ¶ 81 (Defendant Michael Crow

5    encouraged "graduating students" to "[f]ight . . . for their rights . . . of free speech"); ¶ 83

6    (Defendant Michael Crow "embarked []on a media campaign")][9]

7        The rest of the SAC lacks any individualized allegation that any University

8    Defendant did anything. Some paragraphs allege that (a) an unspecified "Defendant" did

9    something [*id.* ¶ 68], (b) unspecified "Defendants" did something [*id.* ¶¶ 40, 41, 46, 48,

10   51, 52, 56, 71, 83, 84, 85, 90, 93, 97, 99, 100, 107, 110, 111, 112, 118, 121, 123, 126],

11   (c) unnamed members of the "ASU administration" did something [*id.* ¶¶ 41, 61, 70], (d)

12   unnamed members of the "ASU campus police department" did something [*id.* ¶¶ 41, 45,

13   46, 54, 55, 61, 63, 64, 66, 93], or (e) unnamed persons employed by "ASU" did something

14   [*id.* ¶¶ 45, 46, 55, 74, 77, 78, 79, 80, 85, 86, 87, 89, 93, 103, 113, 120, 123, 124].

15       These broad, generalized, and unclear allegations do not state a plausible claim for

16   relief against any University Defendant. *See, e.g.*, *Minch v. Ariz. State Bd. of Nursing*,

17   No. CV-17-2525, 2017 WL 5496156, at *1 (D. Ariz. Nov. 16, 2017) (dismissing claims

18   when the plaintiff failed to "allege specific actions by [the individual] defendants"). The

19   University Defendants highlighted this defect in their previous motion to dismiss, but

20   Plaintiffs doubled down on the same pleading practice in the SAC. They also proposed

21   no specific amendment to cure the problem in the meet-and-confer before the University

22   Defendants filed this motion. This Court should thus dismiss the SAC with prejudice.

23       [9] The only individualized allegations even remotely tied to the SAC's claims are
24   the allegations (¶¶ 67, 69) that Plaintiffs Harry Smith and Michael Clancy were subjected
25   to "unwarranted" arrests by the University Defendants. But those allegations are entirely
     conclusory. That alone mandates dismissal of their retaliatory arrest claims. *See, e.g.*,
26   *Ivey*, 673 F.2d at 268 ("Vague and conclusory allegations of official participation in civil
     rights violations are not sufficient to withstand a motion to dismiss."). At any rate, these
27   Plaintiffs' claims also fail on the merits. *See* Argument §§ II(A)(1), II(A)(2), II(B). And
28   the individual University Defendants are entitled to qualified immunity. *See id.* § II(C)(3).

**II.    Count 1 fails to state a claim on which relief can be granted.**

**A.    The SAC alleges no facts plausibly establishing that the University Defendants deprived Plaintiffs of their free speech rights.**

To state a civil rights claim, a plaintiff must allege facts plausibly demonstrating that each defendant "violated rights secured by the Constitution or federal law." *Gamino v. Schroder*, No. CV-23-00239, 2024 WL 1740016, at *2 (D. Ariz. Apr. 23, 2024). The SAC asserts a First Amendment retaliation claim against the University Defendants. [Doc. 75 ¶¶ 91-101] All 17 Plaintiffs thus needed to "plausibly allege," among other things, that they each individually "engaged in a constitutionally protected activity" and "the protected activity was a substantial or motivating factor in [all 30 individual University Defendants'] conduct." *Gamino*, 2024 WL 1740016, at *3 (citation omitted) (dismissing a First Amendment retaliation claim for failing to allege facts plausibly meeting these elements). The SAC does not plausibly establish either element.

**1.    Plaintiffs were not engaged in a constitutionally protected activity.**

The SAC alleges (¶¶ 83, 95) that the "sit-in" protest on ASU's Tempe campus—involving "encampment tents"—was a "constitutionally protected activity." Not so. Plaintiffs violated the Policy prohibiting camping and overnight occupancy on campus.

**a.    The Policy is a valid restriction on expressive conduct.**

The First Amendment has "never meant that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." *Greer v. Spock*, 424 U.S. 828, 836 (1976) (citation omitted). This is also true when people want to protest on the government's property. Even in a space that a government entity has dedicated to expressive conduct,[10] restrictions on the time, place,

---

[10] If the SAC survives dismissal, then the University Defendants reserve the right to establish in later stages in the proceedings that the Alumni Lawn is not dedicated to expressive conduct because it requires reservations. *See, e.g.*, *Old Main*, Arizona State University, https://oldmain.asu.edu/ (last visited Apr. 15, 2025). It is thus, at most, a limited public forum. This Court need not reach this issue because the Policy meets the higher standard for a valid restriction in traditional and designated public fora.

9

1    and manner of expressive conduct are "constitutionally valid if they are (1) content-

2    neutral, (2) narrowly tailored to serve a significant government interest, and (3) leave

3    open ample alternatives for communication." *Griefen*, 200 F.3d at 1260 (citation omitted).

4         The Policy checks all the boxes and is a valid restriction on expressive conduct:

5         **Content-Neutral.** The Policy is content-neutral on its face because it "serves

6    purposes unrelated to the content of expression," *Ward v. Rock Against Racism*, 491 U.S.

7    781, 791 (1989), and is thus "justified without reference to the content of the regulated

8    speech," *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

9         **Narrowly Tailored.** This requirement is met when (a) a restriction "promotes a

10   substantial government interest that would be achieved less effectively" without the

11   restriction and (b) "the means chosen are not substantially broader than necessary to

12   achieve that interest." *Ward*, 491 U.S. at 799-800 (citation omitted). A restriction is not

13   "invalid simply because a court concludes that the government's interest could be

14   adequately served by some less-speech-restrictive alternative." *Id.* at 800.

15        Here, the Policy is "narrowly tailored" to "advance significant government

16   interests." *Griefen*, 200 F.3d at 1260. It helps ASU provide a "safe[]," "health[y]," and

17   "secur[e]" environment for the thousands of students, employees, and visitors who study,

18   teach, learn, and even live on its campuses. [Yost Decl. at Ex. 4] The Policy also allows

19   ASU to protect its "property" from overnight occupancy. [*Id.*] It's narrowly tailored to

20   further these interests. *See, e.g.*, *Clark*, 468 U.S. at 290, 296 (upholding a regulation

21   preventing people from "camping" and using parks for "living accommodation purposes"

22   because it "narrowly focuses on the Government's substantial interest in maintaining the

23   parks . . . in an attractive and intact condition," so that they will be "readily available to

24   the . . . people who wish to see and enjoy them by their presence").

25        **Ample Alternatives.** The Policy leaves plenty of alternatives for communication.

26   For one thing, it applies only to "overnight occupancy" and "us[ing] any camp

27   paraphernalia," not to expressive activities that occur during the day (generously defined

28

10

as between 5:00 a.m. and 11:00 p.m.) or to those that use no paraphernalia (or other kinds, including signs and flags). Second, it applies only to ASU's property. Even if a person wanted to engage in conduct that the Policy forbids as a form of expression (like camping "for the apparent purpose of overnight occupancy" or "us[ing] any camp paraphernalia"), the person could still engage in it elsewhere. *See, e.g.*, *id.* at 293-95 (even if sleeping were "symbolic conduct," the Government does not "attempt[]" to ban it "generally" or "everywhere"). Nor does the Policy prevent any message from being "communicated in other ways." *Id.* at 295. Plaintiffs allege no facts showing that "there was, or is, any barrier to delivering to the media, or the public by other means, the[ir] intended" messages. *Id.*

Applying these principles, and following *Clark*, courts across the country uphold policies prohibiting camping and overnight occupancy in public fora. See, for example:

- *City of Chicago v. Alexander*, 46 N.E.3d 1207, 1216-25 (Ill. App. Ct. 2015) (upholding an ordinance prohibiting overnight occupancy in parks between 11:00 p.m. and 6:00 a.m. as a valid time, place, and manner restriction);

- *State v. Bailey*, 100 A.3d 514, 517-23 (N.H. 2014) (similar; upholding an ordinance prohibiting overnight occupancy in parks between 11:00 p.m. and 7:00 a.m.);

- *Beasley v. City of Atlanta*, No. 1:11-CV-03801, 2012 WL 13012623, at *3-16 (N.D. Ga. Aug. 30, 2012) (similar; upholding an ordinance prohibiting overnight occupancy in parks between 11:00 p.m. and 6:00 a.m.);

- *Occupy Sacramento v. City of Sacramento*, 878 F. Supp. 2d 1110, 1111-24 (E.D. Cal. July 10, 2012) (similar; upholding an ordinance prohibiting overnight occupancy in parks between 11:00 p.m. and 5:00 a.m.);

- *Occupy Tucson v. City of Tucson*, No. CV-11-699, 2012 WL 13027046, at *3-6 (D. Ariz. May 4, 2012) (similar; upholding an ordinance prohibiting overnight occupancy in parks between 10:30 p.m. and 6:00 a.m.); and

- *Miller-Jacobson v. City of Rochester*, 941 N.Y.S.2d 475, 479-482 (N.Y. Sup. Ct. 2012) (similar; upholding an ordinance prohibiting overnight occupancy in parks from 11:00 p.m. to 5:00 a.m.).

These principles apply with even more force in the university setting. "A university's mission is education," and neither the Supreme Court nor the Ninth Circuit has ever "denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus facilities." *Sounders v. Lucero*, 196 F.3d

11

1   1040, 1044 (9th Cir. 1999) (citation omitted). "Not only must a university have the power

2   to foster an atmosphere and conditions in which its educational mission can be carried

3   out, it also has a duty to protect its students by imposing reasonable regulations on the

4   conduct of those who come onto campus." *Id.* at 1045. The Policy is such a reasonable

5   regulation. Under any standard, the Policy is a valid time, place, and manner restriction.

6                   **b.      Plaintiffs violated the Policy.**

7           The Policy generally prohibits camping and overnight occupancy on ASU's

8   campuses. [*See* Yost Decl. at Ex. 4] Every Plaintiff violated the Policy.

9           To start, Plaintiffs cannot re-litigate "legal and factual issues" that they could have

10  raised in their disciplinary proceedings. *Quade v. Ariz. Bd. of Regents*, No. CV-15-00610,

11  2015 WL 10939902, at *3 (D. Ariz. Sept. 14, 2015). "Under Arizona law, 'a party's

12  failure to appeal a final administrative decision makes that decision final and res

13  judicata." *Quade v. Ariz. Bd. of Regents*, 700 F. App'x 623, 625 (9th Cir. 2017) (citation

14  omitted). Here, ASU Deans of Students concluded, based on the evidence, that it was

15  "more likely than not" that Plaintiffs violated the Student Code of Conduct. [Yost Decl.

16  at Exs. 24-40] For every Plaintiff, this included ABOR 5-308(F)(4) ("[v]iolation of, or

17  attempt to violate, other rules that may be adopted by [ABOR] or by [a] university"), and

18  specifically, the Policy. [*Id.*] And because no Plaintiff sought judicial review in state court

19  (as was their right), these legal conclusions and factual findings are final.[11]

20          Even if Plaintiffs could avoid these administrative decisions, the SAC's allegations

21  only confirm that Plaintiffs violated the Policy. The SAC asserts (¶ 58) that Plaintiffs

22  participated in a "sit-in" protest. The whole point, says the SAC, was to "make their

23  protest known" through their ongoing "presence" on ASU's campus. The SAC alleges no

24  facts plausibly suggesting that any Plaintiff intended to leave. And the SAC admits (¶ 83)

25

26  ───────────────

    [11] This argument applies to all Plaintiffs except Guadalupe Chavez Morales
27  because she was not suspended. [Yost Decl. at Ex. 40] Having received no disciplinary
    sanction under the Student Code of Conduct, she had no right to appeal this decision to
28  state court. [*Id.* at Ex. 23 § E]

                                                12

that this protest involved "encampment tents" (though it denies that Plaintiffs "erected [them]"). Plaintiffs were thus present on campus, with tents, not as bystanders or passersby, but as occupants intending to remain. This conduct violates the Policy.

As shown below, a closer examination only reinforces this result.

### (1)   Plaintiffs Harry Smith and Michael Clancy

For Plaintiffs arrested in the morning (Harry Smith and Michael Clancy), the SAC alleges no facts about their activities on ASU's campus or the circumstances surrounding their arrests. Rather, it claims (¶¶ 67, 69) that Mr. Smith was arrested "without warning or explanation" and Mr. Clancy was subjected to an "unwarranted arrest." These allegations are precisely the kind of "'naked assertions' devoid of 'further factual enhancement'" that *Iqbal* condemns. 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

The SAC argues (¶ 111), though, that these Plaintiffs arrested in the "mid-morning" could not have violated the Policy because the Policy imposes an 11:00 p.m. "curfew." It does not. The Policy prohibits specific conduct—camping and overnight occupancy. "Camping" means "us[ing] tents, shelters, portable toilets, or camp paraphernalia or structures . . . for the apparent purpose of overnight occupancy." [Yost Decl. at Ex. 4] While the Policy defines "overnight" as "[a]ny time between the hours of 11:00 p.m. and 5:00 a.m.," the Policy bans camping "for the apparent purpose of overnight occupancy," not just "overnight occupancy." [*Id.*] In any case, the Policy also prohibits "us[ing] any camp paraphernalia" at any time. [*Id.*] Merely alleging the time when these Plaintiffs were arrested—with no factual allegations about their conduct— does not plausibly establish that they were engaged in a constitutionally protected activity.

### (2)   The Remaining Plaintiffs

The 15 Plaintiffs arrested at night fare no better. The SAC concedes (¶ 61) that the "sit-in" protest "lasted through the evening"—until "around 11:30pm." At that point, the SAC alleges (¶¶ 62, 83) that police officers ordered these Plaintiffs to "voluntarily leave,"

13

1    but they "refused"—confirming that they intended to continue occupying ASU's campus

2    overnight with "encampment tents." This conduct violates the Policy.

3                                    *          *          *

4          Contrary to the SAC (¶ 95), Plaintiffs were not engaged in a constitutionally

5    protected activity. They do not have an "unfettered right" to protest on ASU's campus.

6    *Blomquist v. Town of Marana*, 501 F. App'x 657, 659 (9th Cir. 2012). Violating a valid

7    time, place, and manner restriction like the Policy dooms all their First Amendment

8    retaliation claims. *See, e.g.*, *id.* (rejecting a retaliation claim when the plaintiffs "lacked a

9    First Amendment right to picket or otherwise occupy" certain property because they

10   violated "reasonable government restrictions" on expressive conduct); *Navratil v. City of

11   Racine*, 101 F.4th 511, 520-21 (7th Cir. 2024) (rejecting a retaliation claim when the

12   plaintiff's attendance at a protest violated "a valid time, place, and manner restriction"

13   because his attendance "was not protected First Amendment activity").[12]

14                   **c.      There was no selective enforcement.**

15         Although the Policy is content-neutral on its face, the SAC alleges (¶ 112) that the

16   University Defendants made content- and viewpoint-based enforcement decisions to

17   "target[]" Plaintiffs because of "the speech in which [they] were engaged." This

18   conclusion is cut out of whole cloth. The SAC alleges no facts plausibly supporting it.

19

20

21         [12] *See also, e.g.*, *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll.
     of the Law v. Martinez*, 561 U.S. 661, 684 n.15 (2010) ("The benefits of participation in

22   the internal life of the college community may be denied to any group that reserves the
     right to violate any valid campus rule with which it disagrees.") (citation omitted);

23   *Felarca v. Birgeneau*, 891 F.3d 809, 817-18 (9th Cir. 2018) ("While the tents themselves
     posed no threat and the protestors appeared guilty only of misdemeanors, the university

24   was not required to permit the 'organized lawlessness' conducted by the protestors. . . .
     [T]he government had a legitimate interest in applying minimal force to maintain order

25   and enforce university policy.") (citation omitted); *Medlock v. Trs. of Indiana Univ.*, 738

26   F.3d 867, 871 (7th Cir. 2013) ("The in-your-face flagrancy of [the student's] violation of

27   university rules . . . , and of [the] criminal law, required the university to take immediate
     remedial action if its commitment to its rules, and to legality, was not to be questioned.").

28

                                              14

*First*, the SAC's "bald allegation of impermissible motive," repeated several times in varying forms (*see, e.g.*, ¶¶ 40, 46, 51, 66, 77, 107, 108, 112), is "conclusory and is therefore not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009). "The allegation of systematic viewpoint discrimination at the highest levels of [ASU], without any factual content to bolster it, is just the sort of conclusory allegation that [*Iqbal*] deemed inadequate, and thus does nothing to enhance the plausibility of [Plaintiffs'] viewpoint discrimination claim." *Id.*

*Second*, Plaintiffs purport to identify (¶¶ 78, 79) "control-group[s]" against which they can "contrast enforcement practices." *Mandel v. Bd. of Trs. of Cali. State Univ.*, No. 17-CV-03511, 2018 WL 5458739, at *15 (N.D. Cal. Oct. 29, 2018) (citation omitted). They argue (¶¶ 110, 111) that it is "readily apparent" that the University Defendants "target[ed]" them for the viewpoint that they expressed at the protest because pro-Israel protesters and fraternity members were also "present" on the Alumni Lawn and outside "past the curfew," yet they were not "arrested or persecuted." This is incorrect.

Plaintiffs misinterpret the Policy. The Policy prohibits no one's "presence." Nor does it impose a "curfew." It instead prohibits specific conduct—camping and overnight occupancy. [Yost Decl. at Ex. 4] And the SAC alleges no facts plausibly showing that pro-Israel protesters and fraternity members also engaged in that conduct. The SAC says (¶¶ 78, 79) that pro-Isreal protesters were "present" and fraternity members were "partying, drinking, and recording" events. That conduct does not violate the Policy. This Court thus cannot "reasonably infer" from the SAC's factual allegations that any University Defendant took any action "because of" Plaintiffs' pro-Palestinian messages. *Moss*, 572 F.3d at 972. There was no content- or viewpoint-based discrimination.

### 2. Any constitutionally protected activity was not a substantial or motivating factor in the University Defendants' conduct.

Count 1 also fails because the SAC alleges no facts plausibly demonstrating that any constitutionally protected activity was a "substantial or motivating factor" in any University Defendant's conduct. *Killgore v. City of South El Monte*, 860 F. App'x 521,

1    522 (9th Cir. 2021) (affirming the dismissal of a First Amendment retaliation claim when

2    the plaintiff alleged no facts plausibly establishing this element). For all the University

3    Defendants, the SAC lacks facts plausibly showing "but-for causation"—meaning that

4    any "adverse action against [Plaintiffs] would not have been taken absent [a] retaliatory

5    motive." *Kirwin v. Kot*, No. CV-22-00471, 2024 WL 911745, at *9 (D. Ariz. Mar. 4,

6    2024) (citation omitted) (dismissing a First Amendment retaliation claim on this ground).

7                    **a.    Plaintiffs' challenges to their arrests fail.**

8            Plaintiffs criticize (¶¶ 61, 62, 64, 66, 67, 69) their arrests. A retaliatory arrest claim

9    generally requires a plaintiff to allege facts plausibly establishing "the absence of

10   probable cause." *Bellis v. Navajo Cnty.*, No. CV-23-08125, 2024 WL 3202332, at *7 (D.

11   Ariz. June 27, 2024) (dismissing a First Amendment retaliation claim). Probable cause is

12   "not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citation omitted).

13   "It requires only a probability or substantial chance of criminal activity, not an actual

14   showing of such activity." *Id.* (citation omitted). Courts examine "the events leading up

15   to the arrest, and then decide whether these historical facts, viewed from the standpoint

16   of an objectively reasonable police officer, amount to probable cause." *Id.* at 56-57

17   (citation omitted). "Officers may draw on their own experience and specialized training

18   to make inferences from and deductions about the cumulative information available to

19   them that might well elude an untrained person." *Monterroso v. City of San Diego*, 857

20   F. App'x 935, 936 (9th Cir. 2021) (citation omitted). Here, Plaintiffs allege no facts

21   plausibly showing that the University Defendants lacked probable cause to arrest them.

22                    **(1)    Plaintiffs Harry Smith and Michael Clancy**

23           For Plaintiffs arrested in the morning (Harry Smith and Michael Clancy), the SAC

24   identifies (¶¶ 67, 69, 98) the University Defendants who supposedly arrested them, labels

25   the arrests "unwarranted," and declares that the arrests lacked "probable cause." But these

26   "mere conclusory statements" are not enough to "state a claim to relief that is plausible

27   on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). The SAC alleges no facts about

28

                                            16

1   these Plaintiffs' activities on campus, the circumstances leading to their arrests, or any

2   University Defendant's conduct. The SAC thus falls far short of alleging facts plausibly

3   demonstrating that the University Defendants lacked probable cause for these arrests.

4   **(2)    The Remaining Plaintiffs**

5           This Court should also dismiss any retaliatory arrest claim for the 15 Plaintiffs

6   arrested at night. Those Plaintiffs do not even allege the bare conclusion that their

7   arresting officers (who the SAC fails to identify) lacked probable cause to arrest them.

8   Nor could they. The SAC admits (¶¶ 61, 62) that police officers ordered these Plaintiffs

9   and other protesters to "voluntarily leave" ASU's campus "around 11:30pm," but they

10  "refused." That is textbook criminal trespassing. *See* A.R.S. § 13-1502(A)(1).

11  **b.    Plaintiffs' challenges to their suspensions fail.**

12          Plaintiffs also complain (¶¶ 77, 85, 96) about their suspensions from ASU, but the

13  SAC again alleges no facts plausibly establishing that any constitutionally protected

14  activity was a "substantial or motivating factor" for any University Defendant's conduct.

15  The SAC posits (¶ 77) that "ASU's decision" to suspend Plaintiffs was "based solely

16  []on" the pro-Palestinian messages that Plaintiffs expressed at the protest. To support this

17  accusation, the SAC relies (¶ 78) on the "presence" of pro-Israel protesters and fraternity

18  members, who the SAC describes (¶ 79) as "bystanders." Yet as explained above, the

19  SAC alleges no facts plausibly showing that these "bystanders" violated the Policy. Nor

20  does it allege that (a) these "bystanders" tried to occupy this area on ASU's campus; (b)

21  police officers asked them to leave because they were violating the Policy; and (c) despite

22  this request, they refused (and thus also violated the Student Code of Conduct).

23          At most, the SAC spins a narrative to undermine "ASU's decision" to suspend

24  Plaintiffs. No factual allegation plausibly supports this conclusion, and the Ninth Circuit

25  has "repeatedly held that mere speculation that [a] defendant[] acted out of retaliation is

26  not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). That's especially true

27  when, as here, the SAC also alleges no facts plausibly establishing that ASU "would not

28

17

have taken" the same steps *without* a "retaliatory motive." *Kirwin*, 2024 WL 911745, at *9 (citation omitted). Had Plaintiffs violated the Policy and the Student Code of Conduct while expressing any other views on campus, the SAC alleges no facts plausibly suggesting that any University Defendant would have done anything different.

**B.    Plaintiffs' failure to seek judicial review of the decisions to suspend them from ASU bars the SAC's challenge to those suspensions.**

The "failure to seek judicial review of an administrative order precludes collateral attack of the order in a separate complaint." *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir. 1999). "This principle applies even to alleged constitutional errors that might have been corrected on proper application to the court [that] has jurisdiction of the appeal." *Id.*

It's thus no surprise that courts dismiss Section 1983 claims brought by ASU students in connection with their student disciplinary proceedings when they fail to seek judicial review of the decisions in those proceedings. *See, e.g.*, *Quade*, 700 F. App'x at 625-26 (a student's Section 1983 claim failed because he "took no steps to have [the University Hearing Board's] decision corrected through the university's rehearing process or in state court"); *Green v. Ariz. Bd. of Regents*, No. CV-18-04665, 2020 WL 2512759, at *2-3 (D. Ariz. May 15, 2020) (a student's Section 1983 claim failed because his "failure to appeal [the] expulsion render[ed] the administrative decision final").

So too here. ASU Deans of Students decided that Plaintiffs "more likely than not" violated the Student Code of Conduct. [Yost Decl. at Exs. 24-40] They also imposed suspensions on Plaintiffs (except Guadalupe Chavez Morales). [*Id.*] Suspensions are "disciplinary sanctions," and so Plaintiffs had the right to "request a hearing before a University Hearing Board." [*Id.* at Ex. 23 §§ A, E] This process would have led to a "final decision" by ASU's Senior Vice President for Educational Outreach and Student Services that could be appealed in state court. [*Id.* § H] The SAC does not identify any Plaintiff who requested a hearing. [*See* Doc. 75 ¶ 89] Nor does it (or can it) allege that any Plaintiff appealed a final administrative decision to state court under the Administrative Review Act. Plaintiffs thus cannot collaterally attack these suspension decisions.

**C.    Plaintiffs cannot recover their requested relief.**

The SAC names the individual University Defendants in both their official and personal capacities. [Doc. 75 ¶ 42] It requests declaratory relief that these Defendants "violated Plaintiffs' constitutional rights" and injunctive relief requiring them to "revoke all disciplinary actions" arising from the protest. [*Id.* (Prayer for Relief) ¶¶ 1, 4] It also seeks damages. [*Id.* ¶¶ 2, 3] Plaintiffs have no right to this relief.

**1.    The Eleventh Amendment prohibits retrospective relief against the University Defendants named in their official capacities.**

When plaintiffs sue state government employees in their official capacities, the employees are "entitled to Eleventh Amendment immunity" unless the complaint comes within the limited exception provided by *Ex Parte Young*, 209 U.S. 123 (1908). *Students for a Conservative Am. v. Greenwood*, 378 F.3d 1129, 1130 (9th Cir. 2004). As applied here, this means that Plaintiffs cannot recover "money damages and other retrospective relief" against the University Defendants named in their official capacities. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016); *see also, e.g.*, *Gomez-Shaw v. White*, No. CV-23-00575, 2023 WL 4899914, at *4 (D. Ariz. Aug. 1, 2023) ("*Ex Parte Young* does not allow claims for retroactive monetary relief, and state officials are immune from suits seeking retroactive money damages as relief.").

**2.    The SAC alleges no facts plausibly showing that the University Defendants can provide the requested injunctive relief.**

The SAC alleges no facts plausibly establishing that the University Defendants have authority to "revoke all disciplinary actions" arising from the protest. [Doc. 75 (Prayer for Relief) ¶ 1] Plaintiffs sued 30 ASU employees in a wide range of departments, offices, and positions, including (for example) police officers in the ASU Police Department. They do not try to connect any employee to any Plaintiff's student disciplinary proceeding or cite any statute or university policy authorizing any University Defendant to "revoke" disciplinary actions. Plaintiffs thus cannot recover this relief. This Court should dismiss Count 1 against the University Defendants in their official capacities. *See, e.g.*, *Sebra v. Neville*, 801 F.2d 1135, 1138-39 (9th Cir. 1986) (affirming

19

the dismissal of a defendant when his "lack of authority" to provide the requested relief precluded the plaintiff from "obtaining injunctive relief against him").

### 3. The University Defendants named in their personal capacities are entitled to qualified immunity.

"Government actors are immune from liability for civil damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lamorie v. Davis*, 485 F. Supp. 3d 1065, 1069 (D. Ariz. 2020) (citation omitted) (granting qualified immunity on a motion to dismiss). An employee is thus "entitled to qualified immunity 'unless a plaintiff pleads facts showing (1) that the [employee] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 886 (9th Cir. 2022) (citation omitted) (granting qualified immunity on a motion to dismiss). This Court can "decid[e] which of the two prongs to address first." *Id.* (citation omitted). In all events, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Id.* at 892 (citation omitted). That's because "qualified immunity gives government officials 'a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery.'" *Id.* (citation omitted).

As the previous sections explain (Argument §§ I and II), the SAC alleges no facts plausibly establishing that any University Defendant violated any Plaintiff's First Amendment free speech rights. Plaintiffs thus "failed to meet [their] burden of demonstrating that [the University Defendants'] actions were clear constitutional violations." *Roberson v. Cnty. of Cochise*, No. CV-18-00587, 2019 WL 2053568, at *3 (D. Ariz. May 9, 2019) (granting qualified immunity on a motion to dismiss).

The SAC also fails to allege facts plausibly showing that any constitutional right was "clearly established." A right is "clearly established" if, "at the time of the challenged conduct, the contours of the right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Sabra*, 44 F.4th at 886

(citation omitted). Courts "must consider 'whether the violative nature of the defendants' *particular* conduct is clearly established . . . in light of the *specific context* of the case.'" *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020) (citation omitted) (granting qualified immunity on a motion to dismiss). So while plaintiffs need not cite "a case on all fours," they must usually identify "existing precedent" that "place[s] the . . . constitutional question beyond debate." *Id.* (citation omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Sabra*, 44 F.4th at 886 (citation omitted). It also bolsters the Supreme Court's instruction "not to define clearly established law at a high level of generality." *Rico*, 980 F.3d at 1298 (citation omitted).

Nothing in the SAC meets this standard. As explained below, if the SAC somehow states a plausible claim for relief for any Plaintiff against any University Defendant (despite the SAC's thin individualized allegations and vague and conclusory statements on the merits), the University Defendants are entitled to qualified immunity.

### a.    Plaintiffs Harry Smith and Michael Clancy

The SAC alleges (¶¶ 67, 69) that Plaintiff Harry Smith was arrested "without warning or explanation" and Plaintiff Michael Clancy was subjected to an "unwarranted arrest." These barebones allegations do not allow this Court to evaluate any "specific factual scenario," much less decide whether precedent "place[s] beyond debate the unconstitutionality" of any University Defendant's actions. *Lamorie*, 485 F. Supp. 3d at 1071 (citation omitted). That's all the more true for the claims about their suspensions because they do not even identify any University Defendant involved in those decisions.

### b.    The Remaining Plaintiffs

For everyone else, the SAC does not name any University Defendant involved in any Plaintiff's arrest or suspension. In any event, the SAC shows (¶¶ 61, 62) that these Plaintiffs were arrested and suspended for violating the Policy and for failing to follow police officer commands to leave ASU's campus. University students have no "clearly established" right to *not* be arrested or suspended in these circumstances. No precedent

1  holds that police officers cannot arrest and university employees cannot suspend

2  university students who participate in protests on campus involving "encampment tents"

3  in violation of valid restrictions on expressive conduct and refuse to "voluntarily leave."

4  **III.    Count 2 fails to state a claim on which relief can be granted.**

5         **A.    Plaintiffs cannot sue ABOR because ABOR is immune from suit under the Eleventh Amendment.**

6         "Under the Eleventh Amendment, absent express waiver or valid abrogation, a

7  state and the agencies acting under its control are immune from suit in federal court."

8  *Krist v. Arizona*, No. CV17-2524, 2018 WL 1570260, at *3 (D. Ariz. Mar. 30, 2018).

9  "ABOR is a division of the State of Arizona entitled to sovereign immunity." *Id.* (quoting

10  *Ariz. Students' Ass'n*, 824 F.3d at 865); *see also, e.g.*, *Kievit v. Ariz. Bd. of Regents*, No.

11  CV-09-1673, 2010 WL 749927, at *1 (D. Ariz. Mar. 4, 2010) (ABOR is an "arm[] or

12  instrumentalit[y] of the State of Arizona, so [it] share[s] in the State's Eleventh

13  Amendment immunity."). This Court should thus dismiss Count 2 against ABOR.

14         **B.    The Eleventh Amendment also bars Count 2 against the individual University Defendants.**

15

16         Plaintiffs sued the University Defendants under A.R.S. § 15-1864(I). [Doc. 75 ¶

17  126] The individual University Defendants are named in both their official and personal

18  capacities. [*Id.* ¶ 42] All these individuals are immune from suit.

19         **Official Capacity Claims.** The *Ex Parte Young* exception allows a party to seek

20  "prospective injunctive relief against an individual state officer in her official capacity."

21  *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018). But it "does not

22  apply when[, as here,] a suit seeks relief under state law, even if the plaintiff names an

23  individual state official rather than a state instrumentality as the defendant." *Id.* (citing

24  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984)).

25         **Personal Capacity Claims.** Under Arizona law, A.R.S. § 15-1864(I) "only

26  provides a cause of action in the official capacity." *Klein v. Ariz. State Univ.*, No. CV-20-

27  01982, 2020 WL 7404564, at *4 (D. Ariz. Dec. 17, 2020). Unlike 42 U.S.C. § 1983,

28  which authorizes claims against a "person," A.R.S. § 15-1864(I) limits claims to "any

1    university, community college, faculty member or administrator." "Faculty members"

2    and "administrators" are official positions. Nothing in A.R.S. § 15-1864 suggests that the

3    Arizona Legislature intended to permit a plaintiff to bring personal capacity claims, and

4    courts cannot "read into a statute something [that] is not within the express manifest

5    intention of the Legislature as gathered from the statute itself" or "inflate, expand, stretch

6    or extend the statute to matters not falling within its expressed provisions." *Patches v.*

7    *Indus. Comm'n of Ariz.*, 220 Ariz. 179, 182 ¶ 10 (App. 2009) (citation omitted).

8        **C.    Even if Plaintiffs could bring Count 2, they would lack statutory
            authority to sue several University Defendants.**

9
10       Count 2 also fails because Plaintiffs lack statutory authority to sue several

11   University Defendants under A.R.S. § 15-1864(I). That statute authorizes claims against

12   only a "university, community college, faculty member or administrator." Plaintiffs thus

13   needed to allege facts plausibly establishing that each individual University Defendant is

14   a "faculty member" or "administrator." They failed to do so.

15       Plaintiffs sued 30 ASU employees in a wide range of departments, offices, and

16   positions. Although they allege (¶¶ 7-39) these employees' names and job titles, they

17   nowhere assert that any employee is a "faculty member" or "administrator." They thus

18   failed to state a plausible claim for relief against the University Defendants. *See, e.g.*,

19   *State ex rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127, 130-33 ¶¶ 9-22 (2020)

20   (dismissing claims because the plaintiff lacked statutory authority to bring them).

21       **D.    The SAC alleges no facts plausibly demonstrating that the University
            Defendants violated A.R.S. §§ 15-1864 or -1866.**

22       The SAC asserts (¶¶ 107-112) that the University Defendants suspended Plaintiffs

23   because of "the content and viewpoint of [their] speech." It also alleges that the interim

24   actions (¶¶ 113, 118, 119, 120) and disciplinary proceedings (¶¶ 123, 124, 125) violated

25   Plaintiffs' purported procedural rights under A.R.S. § 15-1866. The SAC fails to state a

26   claim on which relief can be granted under all these theories.

27

28

                                            23

**1.    There was no content- or viewpoint-based discrimination.**

Section 15-1864(A) and (B) allow ASU to impose reasonable and content-neutral time, place, and manner restrictions on expressive conduct in public fora. The Policy meets those requirements, and Plaintiffs violated it. *See* Argument § II(A)(1)(a), (b). The SAC also alleges no facts plausibly showing that any University Defendant took any action in a content- or viewpoint-based way. *See id.* §§ I, II(A)(1)(c), II(A)(2). At any rate, these allegations fail because Plaintiffs (except Guadalupe Chavez Morales) failed to seek judicial review of their suspension decisions. *See id.* §§ II(B), III(D)(4).

**2.    Section 15-1866 merely requires ABOR to adopt a policy.**

Section 15-1866(A) requires ABOR to "develop and adopt a policy on free expression that contains [certain] statements and requirements." These "requirements" include procedural protections in "all disciplinary proceedings." A.R.S. § 15-1866(A)(5). The SAC does not (and cannot) allege that ABOR lacks a policy with these requirements. [*See, e.g.*, Yost Decl. at Ex. 41 (ABOR Policy 5-401(G)) (requiring universities to "provide procedural protections for disciplinary procedures" as set out in A.R.S. § 15-1866); *id.* at Ex. 23] Rather, the SAC complains about how the University Defendants applied the relevant policies. But to challenge how the University Defendants applied certain policies, Plaintiffs would have needed to proceed through the administrative appeal process. *See* Argument §§ II(A)(1)(b), II(B), III(D)(4). They did not do so.

**3.    Even if A.R.S. § 15-1866 conferred procedural rights on Plaintiffs, those rights would not apply to interim actions.**

Even if A.R.S. § 15-1866 created procedural rights that Plaintiffs could sue to enforce under A.R.S. § 15-1864(I), the SAC's allegations about the interim actions would fail. Section 15-1866(A)(5) applies only to "disciplinary proceedings." But an interim action is not a "disciplinary proceeding." To the contrary, "interim actions" are only "administrative action[s]" that "remain in effect until a final decision has been made on the pending charges or until the Dean of Students believes that the reason(s) for imposing the interim action[s] no longer exist." [Yost Decl. at Ex. 23 §§ A, C] "Administrative

actions are not disciplinary." [*Id.* § A] The SAC thus fails to allege facts plausibly establishing any violation in connection with any interim action.

> **4.    Plaintiffs failed to seek judicial review of the decisions to suspend them from ASU.**

The SAC alleges (¶¶ 118, 119, 120, 123, 124, 125) that the University Defendants denied Plaintiffs certain purported procedural rights in their disciplinary proceedings. This Court should dismiss any claim based on these allegations because Plaintiffs failed to seek judicial review of the decisions in those proceedings. *See* Argument § II(B); *see also, e.g.*, *Misischia v. Pirie*, 60 F.3d 626, 630 (9th Cir. 1995) (rejecting a claim when the plaintiff had "an opportunity, which he chose not to take, for judicial review [in state court], and even for the presentation of evidence in the reviewing court to demonstrate [alleged] procedural irregularities"); *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988) (rejecting a claim when "an adequate opportunity for review [was] available" in state court because "a losing party cannot obstruct the preclusive use of [a] state administrative decision simply by foregoing the right to appeal") (citation omitted).[13]

### Conclusion

Over the last year, Plaintiffs have filed three complaints, moved for and been denied a TRO, and completed months of early discovery. Yet they still fail to plead a plausible constitutional or state law violation against any University Defendant. This Court should thus dismiss the SAC in full with prejudice and without leave to amend.[14]

---

[13] Once again (see note 11), this argument applies to all Plaintiffs except Guadalupe Chavez Morales because she was not suspended. But even if A.R.S. § 15-1866(A)(5) created procedural rights in "disciplinary proceedings," those rights would not apply to her because she received "academic probation" (an "administrative action") and an "educational opportunity" (an "educational intervention"). Neither administrative actions nor educational interventions are "disciplinary." [Yost Decl. at Ex. 23 § A]

[14] The University Defendants also reserve the right to move to dismiss Count 1 again or move for judgment on the pleadings. Fifteen Plaintiffs have been charged with criminal trespassing under A.R.S. § 13-1502(A)(1). When they are convicted, the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), will bar their Section 1983 First Amendment retaliation claims.

RESPECTFULLY SUBMITTED this 15th day of April, 2025.

**COPPERSMITH BROCKELMAN PLC**

By  s/ Austin C. Yost
　　　　Keith Beauchamp
　　　　D. Andrew Gaona
　　　　Austin C. Yost
　　　　Andrew T. Fox

*Attorneys for University Defendants*

26