David Chami, AZ Bar No. 027585
dchami@consumerjustice.com
Michael Yancey, AZ Bar No. 37187
myancey@consumerjustice.com
**CONSUMER JUSTICE LAW FIRM PLC**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (480) 626-2359

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aída Esmeralda Campos, *et al.*,<br><br>   *Plaintiffs,*<br><br>v.<br><br>Joanne Vogel, Lance Harrop, Brian Reece, & Does I-X,<br><br>   *Defendants.* | Case No. 2:24-cv-00987-JJT<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT MARICOPA COUNTY SHERIFF JERRY SHERIDAN'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

   Plaintiffs respectfully submit the following response in opposition to Defendant Maricopa County Sheriff Jerry Sheridan's ("Defendant" or "Sheridan") Motion to Dismiss Plaintiffs' Second Amended Complaint [Dkt. No. 88, the "Motion"].

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION.................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................ 1

III.   LEGAL STANDARD ........................................................................... 3

IV.    ARGUMENT ........................................................................................ 3

A.    THE  SAC  PLEADS  SUFFICIENT  FACTS  TO  PLAUSIBLY  ALLEGE
CONSTITUTIONAL CLAIMS AGAINST DEFENDANT............................................ 3

B.    THE SAC PLEADS SUFFICIENT FACTS TO PLAUSIBLY ALLEGE THAT
MCSO'S ACTIONS VIOLATED THE FIRST AMENDMENT AND CAUSED HARM
        5

C.    THE SAC DOES NOT STATE A CLAIM AGAINST SHERIDAN IN HIS
PERSONAL CAPACITY ..................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................... 3

*Christie v. Iopa*,
   176 F.3d 1231 (9th Cir. 1999) ......................................................................... 4

*Cousins v. Lockyer*,
   568 F.3d 1063 (9th Cir. 2009) ......................................................................... 3

*DeSoto v. Yellow Freight Sys., Inc.*,
   957 F.2d at 658 (9th Cir. 1992) ...................................................................... 3

*Gable v. City of Chicago*,
   296 F.3d 531 (7th Cir.2002) ............................................................................ 3

*Gilette v. Delmore*,
   979 F.2d 1342 (9th Cir.1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d
   310 (1993) ....................................................................................................... 3

*Harper v. City of Los Angeles*,
   533 F.3d 1010 (9th Cir.2008 ........................................................................... 5

*Jett v. Dallas Indep. Sch. Dist.*,
   491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) ................................... 5

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ......................................................................................... 3

*Lovejoy v. Arpaio*,
   No. CV09-1912PHXNVW, 2010 WL 466010 (D. Ariz. Feb. 10, 2010) ......................... 5

*Lytle v. Carl*,
   382 F.3d 978 (9th Cir. 2004) ........................................................................... 4

*Monell v. Dep't of Soc. Servs. of City of New York*,

iii

436 U.S. 658, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978) ........................................ 3

*Pembaur v. City of Cincinnati*,

475 U.S 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) ................................................ 4

*Webb v. Sloan*,

330 F.3d 1158 (9th Cir. 2003) ................................................................................ 4

**Statutes**

A.R.S. § 11–441 ...................................................................................................... 5

A.R.S. § 11-444 ...................................................................................................... 5

## I.    **INTRODUCTION**

Plaintiffs' Second Amended Complaint [Dkt. No. 75, the "Complaint" or the "SAC"], alleges violations of Plaintiffs' First Amendment rights against Defendant Sheridan in his official capacity as Sheriff of Maricopa County. The Motion argues that Plaintiffs' SAC fails to state a claim against Sheridan because the SAC does not allege (1) a longstanding policy, (2) a Fourth Amendment violation, and (3) that Sheridan was involved in the decision to academically suspend Plaintiffs.

None of these arguments have merit. Under binding precedent, Plaintiffs' SAC plausibly alleges a Constitutional violation claim against Sheridan as the final policymaker at the Maricopa County Sheriff's Office ("MCSO"). Plaintiffs have not raised a Fourth Amendment claim, so whether a Fourth Amendment claim has been plausibly alleged is irrelevant. And Plaintiffs' First Amendment claim against Defendant does not rely – in any way – on Sheridan's involvement in the decision to academically suspend Plaintiffs.

For these reasons, the Motion should be denied.

## II.    **FACTUAL BACKGROUND**

Accepting the allegations in the Complaint as true and construing inferences in Plaintiffs' favor – as is appropriate under Rule 12 – the following facts form the established background against which Defendant's Motion is to be analyzed:

In the weeks leading up to April 26, 2024, Sheridan's co-defendants from Arizona State University (the "University Defendants") made plans on how to swiftly stifle any student demonstration protesting the United States' involvement in current events taking place in the Middle East should such demonstrations spread to Arizona's public universities. SAC, at ¶ 45.

Prior to the events of April 26, 2024, the University Defendants engaged in extensive communication and preparation – internally, as well as externally with public law enforcement and lobbyist organizations such as the Anti-Defamation League – all with

the goal of preventing or squashing any public demonstrations against the use of public assets to fund the genocide in Gaza or affiliation with pro-Zionist entities that might take place at ASU or any other public Arizona university. *Id.,* at ¶ 46. Specific to Plaintiffs' allegations against Sheridan, certain University Defendants, Arizona State University Police Department ("ASU PD") officials, contacted Maricopa County Sheriff's Office before 10:10am on April 26, 2024, to inform MSCO that it planned to arrest "between 75-100 individuals from a protest" and asking for assistance in transporting arrestees. *Id.*, at ¶ 54. Over twelve hours, before any of the individuals were even arrested, MCSO was coordinating and planning with ASU PD to assist with transporting arrestees. *Id.*

On various times on April 26, 2024, Plaintiffs joined a large group of like-minded individuals in front of the conference center known as "Old Main" on the Tempe campus of ASU in order to peacefully protest the United States' involvement in current events taking place in the Middle East. *Id.*, at ¶ 57. The protest format was that of a "sit in", where participants make their protest known through their presence, gathering in solidarity. *Id.*, at ¶ 58. The protest was not violent, disruptive, or dangerous, and at no time did Plaintiffs engage in assault, harassment, or intimidation. *Id.*, at ¶¶ 59-60.

At around 11:30pm, ASU campus police began forcibly removing the peaceful protesters and arresting any individuals who did not immediately comply with the demands that they break up the protest and leave the area. *Id.*, at ¶ 61. Most of the Plaintiffs were among those who were arrested. *Id.*, at ¶ 62. ASU PD was assisted in substantial part by the Maricopa County Sheriff's Office ("MCSO"), which provided officers who were part of the "arrest pipeline" through which peaceful protesters were arrested, searched, loaded on to busses, and transported to jailing facilities. *Id.*, at ¶ 63. ASU PD, MCSO, and Arizona Department of Public Safety officers worked together to systematically break up the peaceful protest, arresting anyone who refused to capitulate to the obvious violation of their free speech rights, processing peaceful protesters for incarceration, and transporting the protesters via bus to jailing facilities. *Id.*, at ¶ 64.

### III.    <u>LEGAL STANDARD</u>

Defendant moves for dismissal of all claims under Rule 12(b)(6) for failure to state a claim for relief. Doc. 088, p. 1. A complaint must allege enough facts that, "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff need only plead facts "that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft*, 556 U.S. at 678 (2009). On a Rule 12(b)(6) motion to dismiss, a district court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *Ashcroft*, 556 U.S. at 678. If a motion to dismiss is granted, leave to amend should follow unless additional facts "could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (internal citations and quotations omitted).

### IV.    <u>ARGUMENT</u>

#### A. THE SAC PLEADS SUFFICIENT FACTS TO PLAUSIBLY ALLEGE CONSTITUTIONAL CLAIMS AGAINST DEFENDANT

Official capacity claims are "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Under 42 § 1983, "a municipality cannot be held liable solely because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). The local government unit "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993). Thus, to maintain a civil rights claim against a local government, a plaintiff must establish the requisite culpability (a "policy or

custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *See Monell*, 436 U.S. at 691–694; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir.2002).

However, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). To hold otherwise would "be contrary to the fundamental purpose of § 1983." *Id.* The Supreme Court in *Pembaur* "hastened" to caveat this holding by explaining that, in such situations, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.*

And it has been Ninth Circuit law for over two decades that "[i]t does not matter that the final policymaker may have subjected only one person to only one unconstitutional action." *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004) (citing *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("[A] municipality can be liable for an isolated constitutional violation when the person causing the violation has final policymaking authority."); *Webb v. Sloan*, 330 F.3d 1158, 1166 (9th Cir. 2003)).

The sole requirement in such circumstances is that "the person causing the violation has final policymaking authority." *Lytle*, 382 F.3d at 983; *See also Christie*, 176 F.3d at 1235; *Larez v. Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991) ("To the extent that the terms 'policy' and 'custom' imply something beyond a single decision, official liability may also be imposed where a first-time decision to adopt a particular course of action is directed by a governmentally authorized decisionmaker."); *Accord Pembaur*, 475 U.S at 481.

Here, Plaintiffs allege a violation of their Constitutional rights stemming from the MCSO's decision to assist ASU PD and other co-defendants in the violent suppression of and retaliation against Plaintiffs' exercise of their First Amendment rights. This was a "single decision" and thus the relevant question is whether Plaintiffs have alleged facts sufficient for a plausible inference that MCSO's actions were taken under the direction of a decisionmaker who "possessed final authority." *Pembaur*, 475 U.S at 481.

The SAC presents facts that show a deliberate course of action and plan to assist ASU PD in carrying out obviously retaliatory arrests of student protesters. The SAC alleges that MCSO was in communication with ASU PD regarding picking up the students to transport them to jail. MCSO agreed to provide support for these arrests before any of the Plaintiffs had allegedly trespassed. MCSO was part of the planning and undertaking of mass civil rights violations with **knowledge** that the goal was to end protests protected by the First Amendment as quickly and ruthlessly as possible and to provide ASU PD with the support necessary to process and detain substantially more students than ASU PD could have processed and detained on their own.

These allegations, construed in Plaintiffs' favor under Rule 12(b)(6), are more than sufficient for a plausible inference that the actions of MCSO officers were the result of direction by someone who "possessed final authority" to set department policy. Indeed, under these allegations, it is a plausible (if not probable) inference that MCSO officers would not have shown up to assist in the violation of Plaintiffs' constitutional rights were they not doing so at the express direction of the Maricopa County Sheriff, who has ultimate decision-making and policy-setting authority at MCSO.

"Identifying a policy-making official is a question of law for the court to decide by reference to state law […]." *Lovejoy v. Arpaio*, No. CV09-1912PHXNVW, 2010 WL 466010, at *12 (D. Ariz. Feb. 10, 2010) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). And it is a question that this Court has already answered: the Sheriff in Maricopa County is the final policymaker. *See Lovejoy*, 2010 WL 466010, at *12 ("Sheriff Arpaio is a final policymaker for Maricopa County in the context of criminal law enforcement.") (citing A.R.S. § 11–441(A)(2); A.R.S. § 11-444). And "[b]ecause Sheriff [Sheridan] is a final policymaker for Maricopa County, his acts 'surely represent[ ] an act of official government 'policy.''" *Id.*, at *3 (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1027 (9th Cir.2008) (further citation omitted).

**B. THE SAC PLEADS SUFFICIENT FACTS TO PLAUSIBLY ALLEGE THAT MCSO'S ACTIONS VIOLATED THE FIRST AMENDMENT AND CAUSED HARM**

Aside from vaguely asserting that Plaintiffs' SAC fails "to plead facts to support a plausible *Monell* claim…", the Motion primarily argues that Plaintiffs' claims should "fail because a warrantless misdemeanor arrest supported by probable cause doesn't violate the Fourth Amendment." Motion, at 3. This argument is repeated on the next page where Sheridan asserts "[t]hat Plaintiffs were arrested or transported isn't sufficient to plead a Fourth Amendment violation." Motion, at 4. Defendant seems to have neglected the reading of the SAC. Plaintiffs are not alleging Fourth Amendment violations. Whether the warrantless arrests were supported by probable cause is a moot issue.[1]

The Motion moves on from its irrelevant discussion regarding the Fourth Amendment to argue – in conclusory fashion - that because MCSO was not involved in the decision to academically suspend Plaintiffs, Plaintiffs' First Amendment claim also fails. Again, the Motion raises a completely irrelevant issue. Whether MCSO was involved in Plaintiffs' suspensions is not an apropos question because Plaintiffs' First Amendment claims against MCSO have nothing to do with the suspensions. Instead, Plaintiffs plausibly alleged that MCSO took a deliberate course of action and planned to assist ASU PD in carrying out obviously retaliatory arrests of student protesters. The SAC alleges that MCSO was in communication with ASU PD regarding picking up the students to transport them to jail. MCSO agreed to provide support for these arrests before any of the Plaintiffs had allegedly trespassed.

In other words, Plaintiffs have alleged that MCSO was part of the planning and undertaking of mass civil rights violations with **knowledge** that the goal was to end protests protected by the First Amendment as quickly and ruthlessly as possible and to provide ASU PD with the support necessary to process and detain substantially more students than ASU

---

[1] The Motion's reference to the legal standards for an excessive force claim against law enforcement likewise raises a moot issue. *See* Motion, at 4. Plaintiffs' allegations relating to bruising and loss of consciousness are allegations of damages resulting from the violation of Plaintiffs' First Amendment rights, including the violent suppression of free speech. Such allegations do not – and were not intended to – raise an additional claim for excessive force.

PD could have processed and detained on their own. These allegations, construed in Plaintiffs' favor under Rule 12(b)(6), are more than sufficient for a plausible inference that MCSO is liable to Plaintiffs for violations of Plaintiffs' First Amendment rights.

**C. THE SAC DOES NOT STATE A CLAIM AGAINST SHERIDAN IN HIS PERSONAL CAPACITY**

Defendant Sheridan is sued in his current capacity as "the Sheriff of Maricopa County, Arizona." SAC, ¶ 12. Plaintiffs are not alleged individual claims against Sheridan. Thus, section III(B) of the Motion is moot.

**V.    CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court deny the Motion.

Respectfully submitted this 20th day of May 2025,

*/s/David Chami*
David Chami, AZ Bar No. 027585
dchami@consumerjustice.com
Michael Yancey, AZ Bar No. 37187
myancey@consumerjustice.com
**CONSUMER JUSTICE LAW FIRM PLC**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (480) 626-2359
F: (480) 613-7733

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

*/s/ Marie Tirona*