David Chami, AZ Bar No. 027585
dchami@consumerjustice.com
Michael Yancey, AZ Bar No. 37187
myancey@consumerjustice.com
**CONSUMER JUSTICE LAW FIRM PLC**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (480) 626-2359

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aída Esmeralda Campos, *et al.*,<br><br>      *Plaintiffs,*<br><br>v.<br><br>Joanne Vogel, Lance Harrop, Brian Reece,<br>& Does I-X,<br><br>      *Defendants.* | Case No. 2:24-cv-00987-JJT<br><br>**PLAINTIFFS' OPPOSITION TO THE UNIVERSITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

Plaintiffs respectfully submit the following response in opposition to Defendants Arizona Board of Regents, Joanne Vogel, Lance Harrop, Brian Reece, Michael Crow, Michael Thompson, Juan Padilla, Clayton Mason, Jason Latella, Robert Van Buhler, Kyle Bathke, Prince Singh, Denise Whisman, Jason Weber, Cayla Sullivan, Drew Solomon, Gary Samuels, Norean Sablan, Dawn Russo, Charles Ross, James O'Brien, Jeffrey Nix, Anthony Momon, Megan Thompson, John Thompson, Christopher Hopkins, Daniel Herrmann, Nancy Gonzales, Carrie Gambee, Robert Brems, and Michael Anderson's (together as the "Defendants") Motion to Dismiss Plaintiffs' Second Amended Complaint [Dkt. No. 89, the "Motion" or "MTD"]

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 2

III.  LEGAL STANDARD ................................................................................. 4

IV.   ARGUMENT .............................................................................................. 6

   A.    THE COURT SHOULD DECLINE TO CONSIDER EVIDENCE FROM OUTSIDE THE PLEADINGS; IN THE ALTERNATIVE, THE COURT SHOULD CONVERT DEFENDANTS' MOTION INTO A SUMMARY JUDGMENT MOTION AND PROVIDE PLAINTIFFS WITH AN ADEQUATE OPPORTUNITY TO RESPOND WITH EVIDENCE OF THEIR OWN .......................................................... 6

   B.    PLAINTIFFS' COMPLAINT PLAUSIBLY STATES A CLAIM FOR VIOLATION OF THE FIRST AMENDMENT .............................................. 8

      i.    Plaintiffs Have Sufficiently Alleged Facts Which Permit A Reasonable Inference That Plaintiffs Were Engaged In Constitutionally Protected Speech ......................... 8

      ii.   Plaintiffs Have Sufficiently Alleged Facts Which Permit A Reasonable Inference That Plaintiffs' Protected Activity Was The Motivating Factor In Defendants' Retaliation ...................................................................... 11

      iii.  Plaintiffs Have Alleged Sufficient Facts For An Inference That Each Defendant Was Part Of The Planned And Executed Violations Of Their First Amendment Rights 14

      iv.   Plaintiffs Need Not Exhaust Administrative Remedies To Bring A Constitutional Claim ................................................................ 16

      v.    Defendants Are Not Entitled To Qualified Immunity ........................................ 17

   C.    PLAINTIFFS' COMPLAINT PLAUSIBLY STATES A CLAIM FOR VIOLATION OF ARIZONA STATE LAW ................................................. 19

i.    The Eleventh Amendment Does Not Apply To Immunize Defendants Generally 19

ii.    The Eleventh Amendment Does Not Bar Plaintiffs' State Law Claims Against The Individual University Defendants, Specifically .................................................. 21

iii.    The University Defendants Are Proper Defendants Under A.R.S. § 15-1864(I) 22

iv.    The Sac Pleads Facts Sufficient To Support A Plausible Inference That Defendants Are Liable ................................................................................................ 23

**V.    CONCLUSION** ....................................................................................... **25**

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adamian v. Jacobsen,*
    523 F.2d 929 (9th Cir.1975) ........................................................................ 1

*Alden v. Maine,*
    527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) ...................... 19, 20

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents,*
    824 F.3d 858 (9th Cir. 2016) ...................................................................... 8

*Ashcroft v. al–Kidd,*
    563 U.S. 731 (2011) .................................................................................. 18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................... 4, 5, 23

*Barry v. Barchi,*
    443 U.S. 55, , 99 S.Ct. 2642, , 61 L.Ed.2d 365 (1979) ........................... 16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................. 4, 5

*Booke v. Cnty. of Fresno,*
    98 F. Supp. 3d 1103 (E.D. Cal. 2015) ...................................................... 23

*Boos v. Barry,*
    485 U.S. 312 (1988) .................................................................................... 9

*Brown v. Lynch,*
    831 F.3d 1146 (9th Cir. 2016) .................................................................. 24

*Camarillo v. McCarthy,*
    998 F.2d 638 (9th Cir. 1993) .................................................................... 18

*Carter v. Stanton,*
    405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972) .............................. 16

*Cf. Steffel v. Thompson,*
    415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) .............................. 17

*Chandler v. McMinnville Sch. Dist*,
    978 F.2d 524 (9th Cir. 1992) ................................................................. 8

*Chung v. P.S.R.B.*,
    No. 6:14-CV-00156-AA, 2014 WL 4629347 (D. Or. Sept. 12, 2014) ....................... 19

*Collins v. Jordan*,
    110 F.3d 1363 (9th Cir. 1996) ................................................................. 9

*Cruz v. Beto*,
    405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) ..................................... 5

*Damico v. California*,
    389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967) ...................................... 16

*Davis v. Scherer*,
    468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) .................................... 5

*DeSoto v. Yellow Freight Sys., Inc.*,
    957 F.2d 655 (9th Cir. 1992) ................................................................. 5

*Doe v. Regents of the Univ. of California*,
    891 F.3d 1147 (9th Cir. 2018) ................................................................ 21

*Drummond ex Rel. Drummond v. City of Anaheim*,
    343 F.3d 1052 (9th Cir. 2003) ............................................................ 18, 19

*Ex parte Young*,
    209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) ....................................... 21

*Gibson v. Berryhill*,
    411 U.S. 564, , 93 S.Ct. 1689, , 36 L.Ed.2d 488 (1973) ................................. 16

*Gonzales ex rel. A.G. v. Burley High Sch.*,
    404 F. Supp. 3d 1269 (D. Idaho 2019) ............................................. 7, 9, 10, 19

*Groten v. California*,
    251 F.3d 844 (9th Cir. 2001) ................................................................ 18

*Hammond v. Jewell*,
    139 F. Supp. 3d 1134 (E.D. Cal. 2015) .................................................. 5, 22

*Houghton v. Shafer*,

    392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968) ................................................ 16

*In re Jackson*,

    184 F.3d 1046(9th Cir.1999) ........................................................................................ 19

*J.C. ex rel. R.C. v. Beverly Hills Unified Sch. Dist.*,

    711 F. Supp. 2d 1094 (9th Cir. 2010) ............................................................................. 9

*Jensen v. City of Oxnard*,

    145 F.3d 1078 (9th Cir. 1998) ..................................................................................... 18

*Johnson v. Duffy*,

    588 F.2d 740 (9th Cir. 1978) ................................................................................. 14, 16

*Keates v. Koile*,

    883 F.3d 1228 (9th Cir. 2018) ................................................................................ 17, 18

*Keyishian v. Bd. of Regents of the Univ. of the State of N.Y.*,

    385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) ....................................................... 1

*King v. 2560 Smith*,

    392 U.S. 309,  88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) ................................................ 16

*Klein v. Arizona State Univ.*,

    No. CV-20-01982-PHX-SPL, 2020 WL 7404564 (D. Ariz. Dec. 17, 2020) ............... 21

*Knievel v. ESPN*,

    393 F.3d 1068 (9th Cir.2005) ......................................................................................... 6

*Kwai Fun Wong v. United States*,

    373 F.3d 952 (9th Cir. 2004) ....................................................................................... 17

*Lockheed Martin Corp. v. Unemployment Appeals Comm'n*,

    876 So. 2d 31 (Fla. Dist. Ct. App. 2004) ..................................................................... 23

*Long v. Cnty. of L.A.*,

    442 F .3d 1178 (9th Cir. 2006) ..................................................................................... 14

*Mendocino Envt'l Ctr. v. Mendocino County*,

    192 F.3d 1283 (9th Cir. 1999) ....................................................................................... 8

*Misischia v. Pirie,*

 60 F.3d 626 (9th Cir. 1995) ........................................................................ 17

*Morley v. Walker,*

 175 F.3d 756 (9th Cir. 1999) ...................................................................... 17

*Muhaymin v. City of Phx.,*

 No. CV-17-04565-PHX-SMB, 2019 U.S. Dist. LEXIS 26819 (D. Ariz. Feb. 20, 2019)

 .................................................................................................... 17, 18

*Mullenix v. Luna,*

 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curiam) ............................... 18

*O'Brien* ........................................................................................................ 8, 14

*O'Brien v. Welty,*

 818 F.3d 920 (9th Cir. 2016) ..................................................................... 8, 18

*Patches v. Indus. Comm'n of Ariz.,*

 220 Ariz. 179¶ 10 (App. 2009) ....................................................................... 22

*Patsy v. Bd. of Regents of State of Fla.,*

 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982) ............................... 16

*Pennhurst State School & Hosp. v. Halderman,*

 465 U.S. 89 (1984) ................................................................................... 19, 20

*Pinard v. Clatskanie Sch. Dist. 6J,*

 467 F.3d 755 (9th Cir. 2006) ....................................................................... 8, 9

*Preschooler II v. Clark Cty. Sch. Bd. of Trustees,*

 479 F.3d 1175 (9th Cir. 2007) ................................................................. 15, 16

*Quade v. Arizona Bd. of Regents,*

 700 F. App'x 623 (9th Cir. 2017) ................................................................... 17

*Ringgold-Lockhart v. Cnty. of L.A.,*

 761 F.3d 1057 (9th Cir. 2014) ......................................................................... 5

*Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.,*

 605 F.3d 703 (9th Cir. 2010) ........................................................................... 1

*Ryan v. State*,

    134 Ariz. 308, 656 P.2d 597 (1982) ................................................................. 20

*Sanders v. City & Cty. of San Francisco*,

    226 F. App'x 687 (9th Cir. 2007) ................................................... 14, 15, 16

*Scheuer v. Rhodes*,

    416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ................................. 5

*Stanley v. Trs. of California State Univ.*,

    433 F.3d 1129 (9th Cir. 2006) .............................................................. 19

*Stone v. Arizona Highway Comm'n*,

    93 Ariz. 384, 381 P.2d 107 (1963) ....................................................... 20

*Sweezy v. New Hampshire*,

    354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957) ............................. 1

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,

    315 F. Supp. 3d 1147 (C.D. Cal. 2018) .............................................. 6

*Tinker v. Des Moines Indep. Comty. Sch. Dist.*,

    393 U.S. 503 (1969) ................................................................. 8, 9, 10, 19

*Twede v. Univ. of Wash.*,

    309 F. Supp. 3d 886 (W.D. Wash. 2018) ........................................... 11

*U.S. v. 14.02 Acres of Land More or Less*,

    547 F.3d 943 (9th Cir. 2008) ............................................................. 6

*U.S. v. Ritchie*,

    342 F.3d 903 (9th Cir. 2003) .......................................................... 6, 7

*Verduzco v. St. Mary's High Sch.*,

    No. 2:23-cv-02269-KJM-CSK, 2024 U.S. Dist. LEXIS 110243 (E.D. Cal. June 21,

    2024) ................................................................................................ 11

*Walling v. Beverly*,

    476 F.2d 393 (9th Cir. 1973) .............................................................. 11

*Warren v. Fox Family Worldwide, Inc.*,

viii

328 F.3d 1136 (9th Cir. 2003) ................................................................ 6

*Warrington by Warrington v. Tempe Elementary Sch. Dist. No. 3,*

187 Ariz. 249, 928 P.2d 673 (Ct. App. 1996) ................................... 20

*West v. Atkins,*

487 U.S. 42 (1988) ............................................................................ 14

*Wilwording v. Swenson,*

404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) ........................ 16

**Statutes**

A.R.S. § 12–820 (1992) ........................................................................ 20

A.R.S. § 15-1864 .......................................................................... 21, 25

A.R.S. § 15-1866 .................................................................................. 23

**Other Authorities**

1984 Ariz. Sess. Laws ch. 285, § 1 ..................................................... 20

**Constitutional Provisions**

U.S. Const. art. VI, § 2 ........................................................................ 16

## I.    <u>INTRODUCTION</u>

"Intellectual advancement has traditionally progressed through discord and dissent, as a diversity of views ensures that ideas survive because they are correct, not because they are popular." *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2010). "Colleges and universities—sheltered from the currents of popular opinion by tradition, geography, tenure and monetary endowments—have historically fostered that exchange. But that role in our society will not survive if certain points of view may be declared beyond the pale." *Id.* "Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise, our civilization will stagnate and die." *Keyishian v. Bd. of Regents of the Univ. of the State of N.Y.*, 385 U.S. 589, 603, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 250, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957)).

The Ninth Circuit has therefore said that "[t]he desire to maintain a sedate academic environment" is not justification for placing unconstitutional limitations on the citizen's "freedom to express himself on political issues in vigorous, argumentative, unmeasured, and even distinctly unpleasant terms." *Adamian v. Jacobsen*, 523 F.2d 929, 934 (9th Cir.1975).

In this case, however, Defendants sought to unconstitutionally limit – and when that failed, they retaliated against – Plaintiffs' exercise of their right to peacefully protest. As described in Plaintiffs' Second Amended Complaint [Dkt. No. 75, the "Complaint" or the "SAC"], none of the Plaintiffs' engaged in "argumentative, unmeasured, [or] even distinctly unpleasant" speech. *Adamian*, 523 F.2d at 934. Instead, Plaintiffs participated in a peaceful "sit in" protest whereby they sang, chanted, and otherwise *existed* in a public square at a public university funded by public monies and open to the public for use. And yet, Defendants executed an arrest and retaliation scheme, organized at the highest levels of the ASU academic and law enforcement chain of command, motivated **solely** by the verboten point of view espoused by the protestors.

1

Now, Defendants ask this Court to bless their misconduct by dismissing Plaintiffs' legitimate First Amendment claims. Under the Supreme Court and Ninth Circuit precedent, the Court should deny Defendants' Motion.

## II.    FACTUAL BACKGROUND

Accepting the allegations in the Complaint as true and construing inferences in Plaintiffs' favor – as is appropriate under Rule 12 – the following facts form the established background against which Defendants' Motion is to be analyzed:

In the weeks leading up to April 26, 2024, the University Defendants made plans on how to swiftly stifle any student demonstration protesting the United States' or the ABOR's involvement in current events taking place in the Middle East should such demonstrations spread to Arizona's public universities. SAC, at ¶ 45.

Prior to the events of April 26, 2024, Defendants engaged in extensive communication and preparation – internally, as well as externally with public law enforcement and lobbyist organizations such as the Anti-Defamation League – all with the goal of preventing or squashing any public demonstrations against the use of public assets to fund the genocide in Gaza or affiliation with pro-Zionist entities that might take place at ASU or any other public Arizona university. *Id.,* at ¶ 46. All of the individual Defendants employed in various ASU departments were directly involved in a flurry of email, telephone, and personal communication taking place during the days prior to the events of April 26, 2024, and April 27, 2024. *Id.,* at ¶ 48. All individual Defendants employed by ASU and involved in these communications assented to the swift and decisive retaliation against any pro-Palestine or anti-Zionist protest and were involved in the planning of the retaliation. *Id.*, at ¶¶ 51-52. ASU PD officials also contacted Maricopa County Sheriff's Office before 10:10am on April 26, 2024, to inform MSCO that it planned to arrest "between 75-100 individuals from a protest" and asking for assistance in transporting arrestees. *Id.*, at ¶ 54. This communication was made over twelve hours before Plaintiffs' alleged policy violations.

At various times on April 26, 2024, Plaintiffs joined a large group of like-minded individuals in front of the conference center known as "Old Main" on the Tempe campus of ASU to peacefully protest the United States' involvement in current events taking place in the Middle East. *Id.*, at ¶ 57. The protest format was that of a "sit in", where participants make their protest known through their presence, gathering in solidarity. *Id.*, at ¶ 58. The protest, and the Plaintiffs specifically, was not violent, disruptive, or dangerous, and at no time did Plaintiffs engage in assault, harassment, or intimidation. *Id.*, at ¶¶ 59-60.

At around 11:30pm, ASU campus police began forcibly removing the peaceful protesters and arresting any individuals who did not immediately comply with the demands that they break up the protest and leave the area. *Id.*, at ¶ 61. Most of the Plaintiffs were among those who were arrested. *Id.*, at ¶ 62. From the outset, ASU made its intentions clear: to break up any protest, peaceful or otherwise, regardless of the legality of such an action. *Id.*, at ¶ 66. So zealous were ASU's agents in preventing Plaintiffs from exercising their free speech rights that they arrested Plaintiffs Michael Claney and Harry Smith – without any probable cause – at or around 9am, fourteen hours before the 11pm curfew that Defendants now ask the Court to find was, along with vague allegations regarding possession of 'camping paraphernalia', the reason for Defendants' actions. *Id.*, at ¶¶ 67-69. The trumped-up charges associated with those arrests were promptly dismissed for lack of probable cause. *Id*.

The real reason for Defendants' decision to arrest Plaintiffs was Plaintiffs' decision to exercise their First Amendment rights; the litigation-manufactured excuses regarding "curfew" and "camping" were contrived, as proven by the identities of the individuals Defendants chose to arrest. For example, fraternity members were standing in the same area with Plaintiffs, engaged in partying, drinking, and videotaping Plaintiffs when Plaintiffs were arrested; clearly demonstrating their unconstitutional intentions, Defendants chose to arrest and discipline the protesters instead of the partyers. *Id.*, at ¶ 79.

Defendants began further retaliation against Plaintiffs' protests in the following days, working what must have been significant overtime to send out mass communications

– starting on (or before) April 28th – to each of the Plaintiffs, informing them that their enrollment at ASU had been suspended indefinitely, effective immediately. *Id.*, at ¶¶ 70-71. Along with the mass suspensions, Defendants also trespassed the Plaintiffs, threatening arrest should any of the Plaintiffs return to ASU campus for any reason and prohibited Plaintiffs from communicating with any ASU faculty or staff, including their professors. *Id.*, ¶¶ 72-73. ASU's decision to suspend Plaintiffs, ban Plaintiffs from the ASU campus, and prohibit communication with Plaintiffs' professors, made just as semester finals were about to be administered, made it inevitable that multiple Plaintiffs would be unable to take the finals for their Spring 2024 classes. *Id.*, at ¶¶ 74-76.

In early summer of 2024, Defendants issued blanket denials to any appeals or requests for accommodations relating to the unilateral suspensions handed out *en masse* on April 27, 2024, and April 28, 2024, **despite personal guarantees from ASU representatives to the Court** at the hearing on the Plaintiff's request for a temporary restraining order and preliminary injunction **that accommodations would be made to permit Plaintiffs to make up the missed final exams.** *Id.*, at ¶ 84.

Throughout the summer of 2024, Defendants engaged in sham "investigations" which universally resulted in findings that Plaintiffs were responsible for violating various vague ASU policies by applying obviously post-hoc reasoning in an attempt to justify ASU's violations of Plaintiff's First Amendment rights. *Id.*, at ¶ 85. The punishments for such "violations" included Orwellian reeducation assignments where Plaintiffs were tasked with drafting position papers on why their actions were wrong and why ASU was justified in its violent response to free speech. *Id.*, at ¶ 86. Those Plaintiffs who chose to engage in the appeals process were met with predictably hostile arbiters of their claims and universal confirmation of ASU's illegal free-speech crackdown. *Id.*, at ¶ 89.

## III.   <u>LEGAL STANDARD</u>

A complaint must allege sufficient facts that, "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff need only plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable." *Ashcroft*, 556 U.S. at 678 (2009).

"On a Rule 12(b)(6) motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Hammond v. Jewell*, 139 F. Supp. 3d 1134, 1137 (E.D. Cal. 2015) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972)). And, when construed in the plaintiff's favor, those allegations must simply "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Plausibility, not provability, is the standard. *Id.* ("The plausibility standard is not akin to a probability requirement…").

Well-pleaded allegations can be sufficient to withstand a motion to dismiss even if a district court concludes that it is unlikely that the plaintiff can prove them. "Courts cannot properly say whether a suit is 'meritorious' from pleadings alone." *Ringgold-Lockhart v. Cnty. of L.A.*, 761 F.3d 1057, 1066 (9th Cir. 2014). "To the contrary, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

If a motion to dismiss is granted, leave to amend should follow unless additional facts "could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (internal citations and quotations omitted).

IV.  **ARGUMENT**

A. **THE COURT SHOULD DECLINE TO CONSIDER EVIDENCE FROM OUTSIDE THE PLEADINGS; IN THE ALTERNATIVE, THE COURT SHOULD CONVERT DEFENDANTS' MOTION INTO A SUMMARY JUDGMENT MOTION AND PROVIDE PLAINTIFFS WITH AN ADEQUATE OPPORTUNITY TO RESPOND WITH EVIDENCE OF THEIR OWN**

"[A]s a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion…" *U.S. v. 14.02 Acres of Land More or Less*, 547 F.3d 943, 955 (9th Cir. 2008); *See also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n. 5 (9th Cir. 2003) (When deciding a Rule 12(b)(6) motion, generally a court must "refrain from considering extrinsic evidence[.]"). The only relevant exception to this rule is the "incorporation by reference doctrine" which allows a court to "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions…" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005).

Defendants "support" their MTD with forty-one exhibits, spanning nearly four hundred pages, including excerpts from various ASU and Arizona Board of Regents policies and manuals alleged to be relevant to Plaintiffs' claims, as well as copies of the interim action notices sent to the Plaintiffs after the events of April 26, 2024. See generally Dkt No. 90-1, 90-2, and 90-3. The exhibits fail both prongs of the "incorporation by reference doctrine" exception.

First, Plaintiffs' SAC does not contain allegations regarding the contents of either the policies or manuals attached to the MTD. *See generally*, SAC. These extraneous documents are included only to support the irrelevant puff-piece written into the introduction of Defendants' "factual background" (MTD, at 2) and as evidence of various affirmative arguments that Defendants' actions were justified under constitutional law (MTD, at 9-11). Neither use is appropriate in considering a Rule 12 motion under Ninth Circuit precedent. (*See 14.02 Acres of Land More or Less*, 547 F.3d at 955; *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). And Defendants do not even argue that the

"incorporation by reference doctrine" applies, asserting only that the exhibits are "public record[s]." Motion, at 2 n. 2. But the prohibition on considering evidence on a Rule 12(b)(6) motion is not only one of foundation, but also of application of the appropriate standard in reviewing a Rule 8 pleading. *See e.g. Ticketmaster L.L.C. v. Prestige Entm't W., Inc*., 315 F. Supp. 3d 1147, 1166 (C.D. Cal. 2018) ("A 12(b)(6) motion tests the sufficiency of a complaint, not the sufficiency of the available evidence").

Second, while Plaintiffs do not dispute the basic authenticity of the interim action notices and decision letters for purposes of this response, Plaintiffs do dispute the implication in the MTD that the exhibits paint an accurate or complete picture of either Defendants' actions thus far in the case or the ongoing harm caused by those actions. The interim suspensions were the original communications which prompted Plaintiffs' lawsuit and emergency request that the Court reset the parties to the status quo via a preliminary injunction so that the Plaintiffs would not be precluded from finishing the Spring 2024 semester. See generally Dkt. No. 2. And, in fact, when the Court denied Plaintiffs' request, Defendants continued apace to inflict the very harm that Plaintiffs alleged in their complaint and the injunction motion, namely the imposition of "significant and detrimental effects on the Plaintiffs' academic futures and livelihoods." SAC, at ¶ 80.

At present, there exist dozens of communications between Defendants and Plaintiffs sent and received since the interim notices, as well as tribunal records and notes, wherein Defendants have doubled down on their unconstitutional retaliation, meting out severe punishments (including suspensions as long as a year) on post hoc reasoning and doing so on timelines obviously designed to force Plaintiffs to choose between continuing their education and appealing such arbitrary decisions. If the Court intends to consider Defendants' exhibits, it should not do so in a vacuum. Plaintiffs should be given the opportunity to provide evidence in a summary judgment format, with the benefit of discovery, wherein all the evidence may be marshalled. For this reason, if the Court intends to consider the exhibits attached to the Motion, Plaintiffs respectfully request that the Court "convert the 12(b)(6) motion into a Rule 56 motion for summary judgment" and allow

7

Plaintiffs' a full "opportunity to respond." *Ritchie*, 342 F.3d at 907.

## B.  PLAINTIFFS' COMPLAINT PLAUSIBLY STATES A CLAIM FOR VIOLATION OF THE FIRST AMENDMENT

"It is well-settled that students in public schools do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Gonzales ex rel. A.G. v. Burley High Sch.*, 404 F. Supp. 3d 1269, 1279 (D. Idaho 2019) (quoting *Tinker v. Des Moines Indep. Comty. Sch. Dist.*, 393 U.S. 503, 506 (1969)).

To state a claim for First Amendment retaliation, Plaintiffs need only plead facts sufficient to allege that "(1) [they were] engaged in constitutionally protected activity; (2) the defendant's actions against [them] would chill a person of ordinary firmness from engaging in protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (citing *Pinard v. Clatskanie Sch. Dist.* 6J, 467 F.3d 755, 770 (9th Cir. 2006); *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

Plaintiffs need not allege or demonstrate that their First Amendment right "was actually suppressed or inhibited." *Ariz. Students' Ass'n*, 824 F.3d at 867. Rather, they "need only show that the defendant 'intended to interfere' with [their] First Amendment rights and that [they] suffered some injury as a result. *Id.* (*quoting Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Courts apply an objective test to retaliatory acts, asking whether the retaliatory acts would "lead ordinary student[s] … in the plaintiff's position to refrain from protected speech?" *Id.*; *O'Brien*, 818 F.3d at 933.

Properly construed in Plaintiffs' favor, the FAC contains sufficient allegations to permit a plausible inference that all the elements for a retaliation claim under 42 U.S.C. § 1983 exist, the arguments raised in the Motion notwithstanding.

### i.  Plaintiffs Have Sufficiently Alleged Facts Which Permit A Reasonable Inference That Plaintiffs Were Engaged In Constitutionally Protected Speech

It is Ninth Circuit law that the First Amendment protects "all student speech that is neither school sponsored, a true threat nor vulgar, lewd, obscene or plainly offensive unless school officials show 'facts which might reasonably have led [them] to forecast substantial disruption of or material interference with school activities.'" *Pinard*, 467 F.3d at 767 (brackets in original) (quoting *Chandler v. McMinnville Sch. Dist*, 978 F.2d 524, 529 (9th Cir. 1992)).

This protection unquestionably extends to attending demonstrations, marches, and/or sit-in protests. *See Boos v. Barry*, 485 U.S. 312, 318 (1988) (Organized political protest is a form of "classically political speech."); *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996) ("Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment.").

"*Tinker's* test for determining whether the First Amendment protects […] student speech examines **only the effect of the speech** on school activities and the rights of others." *Pinard*, 467 F.3d at 766 (emphasis in original) (internal citations omitted). And school officials must have more than an "undifferentiated fear or apprehension of disturbance" to overcome a student's right to freedom of speech. *Tinker*, 393 U.S. at 508. Thus, a decision to curb or discipline speech must be supported "by the existence of specific facts that could reasonably lead school officials to forecast disruption." *J.C. ex rel. R.C. v. Beverly Hills Unified Sch. Dist.*, 711 F. Supp. 2d 1094, 1111 (9th Cir. 2010) (emphasis in original).

Nowhere in Defendants' Motion are any such "specific facts" addressed. *See* generally, Motion. Indeed, Defendants do not even address the applicable standard, switching instead to argue that a "sit-in" protest cannot be a constitutionally protected form of expression where the sit-in violates a school's policy or where the protesters do not comply with demands that they leave. *See* Motion, at 9-14. This argument fails for multiple reasons.

First, as noted above, sit-in protests are a presumptively protected form of speech absent a showing of disruption, a showing which Defendants do not even attempt to make. *See Gonzales ex rel. A.G.*, 404 F. Supp. 3d at 1281 ("There is no evidence Plaintiffs'" sit-

in protest "materially interfered with discipline in the operation of the school, or, given the short duration of the sit-in, with the appropriate discipline" of class.).

Second, simply refusing to comply with instructions from an authority is not dispositive of the issue. That Plaintiff's "may have argued […] when ordered to leave […] does not establish substantial disruption" even "for purposes of summary judgment…", much less under Rule 12. *Gonzales ex rel. A.G.*, 404 F. Supp. 3d at 1282.

> As the Supreme Court emphasized in *Tinker*, 'vigilant protection of constitutional freedom is nowhere more vital than in the community of American schools. The classroom is peculiarly the 'marketplace of ideas.' The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth 'out of a multitude of tongues,' (rather) than through any kind of authoritative selection."

*Id.* (quoting *Tinker*, 393 U.S. at 513). "**Clearly**, students may disagree with […] administrators without materially and substantially interfering with the requirements of appropriate discipline in the operation of the school and without colliding with the rights of others." *Gonzales ex rel. A.G.*, 404 F. Supp. 3d at 1282 (emphasis added). Plaintiffs' refusal to comply with unconstitutional orders from ASU staff and/or police "does not establish the sit-in substantially disrupted the educational process…" *Id.*

Third, Defendants' arguments about the validity of its restrictions on expressive conduct and that Plaintiffs violated those restrictions depend completely upon an assumption that Defendants' retaliatory actions were motivated by Plaintiffs' alleged violation of school policy. *See* Motion, at 9-14. But that assumption is in direct contradiction to the complaint. *See* SAC, ¶¶ 77-80 ("ASU's decision to enact harsh, immediate disciplinary action without any recourse was based solely upon the anti-genocide message being communicated by Plaintiffs' protest. […] There were pro-Isreal counter-protesters also present on the Old Main lawn at all relevant times; ASU chose to target the anti-genocide demonstration. […] Moreover, there were fraternity members partying, drinking, and recording the events of the protests when Plaintiffs were arrested, in direct violation of the "curfew" being used as a post-hoc explanation for ASU's actions; ASU chose to arrest and discipline the anti-genocide protesters instead of the bystanders,

demonstrating the targeted nature of ASU's actions. […] ASU therefore retaliated against Plaintiffs on the basis of Plaintiffs' expression of protected free speech…").

These allegations regarding Defendants' motivation are sufficient under Rule 9, which explicitly notes that, even under the heightened standard for pleading fraud, "…intent, knowledge, and other conditions of the mind may be alleged generally." Fed. R. Civ. P. 9(b). In fact, "[i]n this circuit, plaintiffs need not plead 'any particularity in connection with an averment of intent, knowledge or condition of the mind.'" *Verduzco v. St. Mary's High Sch.*, No. 2:23-cv-02269-KJM-CSK, 2024 U.S. Dist. LEXIS 110243, at *15 (E.D. Cal. June 21, 2024) (quoting *Walling v. Beverly*, 476 F.2d 393, 397 (9th Cir. 1973)).

Plaintiffs explicitly alleged that Defendants' retaliatory actions were motivated by Plaintiffs' speech, and Defendants are not entitled to the Court's deference to contrary assertions of their own motivations on a motion to dismiss. *See Twede v. Univ. of Wash.*, 309 F. Supp. 3d 886, 900 (W.D. Wash. 2018) ("[T]he court is not to presume facts against Plaintiffs on a motion to dismiss."). Therefore, whether the policy which Plaintiffs allegedly violated is a valid restriction on expressive conduct is of no moment to determining whether Plaintiffs have sufficiently alleged a claim for retaliation. That policy is not being challenged. Defendants' decisions and actions are being challenged. Indeed, the entire point of Plaintiffs' claim is that Defendants retaliated specifically against Plaintiffs and did not retaliate against others who were engaged in the same, supposedly violative, conduct. *See* SAC, ¶¶ 77-80.

### ii. Plaintiffs Have Sufficiently Alleged Facts Which Permit A Reasonable Inference That Plaintiffs' Protected Activity Was The Motivating Factor In Defendants' Retaliation

Accepting Plaintiffs' allegations as true, there is a plausible inference that Defendants' actions were motivated by Plaintiffs' exercise of their free speech rights. Indeed, there is no version of events on April 26, 2024, or April 27, 2024, where Defendants would not have chosen to target Plaintiffs by suspending them indefinitely, banning them

from ASU campus grounds, and prohibiting contact with ASU faculty absent Plaintiffs first participating in a constitutionally protected protest.

As noted above, Plaintiffs' allegations of Defendants' motivations must be accepted on a motion to dismiss, and thus Plaintiffs were not required to provide any additional context for the allegation. *See Walling*, 476 F.2d at 397. Regardless, Plaintiffs did allege additional facts supportive of an inference that Defendants targeted Plaintiffs for retaliation. Specifically, the SAC alleges that there were both pro-Israel counter-protesters and fraternity members standing in the same area as Plaintiffs, with the latter partying, drinking, and videotaping both protests. *See* SAC, ¶ 78-79.

Defendants attempt to sweep these allegations under the rug by asking the Court to construe them against Plaintiffs and find that the counter-protesters and bystanders were not also violating the school policy that Defendants assert Plaintiffs were violating by being on the lawn past a certain time. *See* Motion, pg. 15. But – again – Defendants are not entitled to the Court's deference in deciding a motion to dismiss. By Defendants own assertions and arguments, it was the combination of area (campus property) and time (after curfew) that Defendants ask the Court to hold – with no discovery – was the sole motivation behind Defendants' decision to send in campus police, conduct mass arrests, and thereafter directly attack the academic well-being of each of the Plaintiffs by imposing immediate suspensions and prohibitions on communicating with their professors right before the administration of finals. The fact that Defendants chose to terrorize anti-Israel protesters - and not pro-Israel protesters and fraternity partiers who were in the exact same place at the exact same time as Plaintiffs – is more than sufficient to support a reasonable inference that Plaintiffs' speech motivated Defendants' actions

And that inference is further supported by the fact that Defendants treated Plaintiffs Harry Smith and Michael Phillips Clancy **exactly** as they treated the rest of the Plaintiffs, despite Mr. Smith and Mr. Clancy's arrests happening approximately fourteen hours prior to the arrests of the rest of the Plaintiffs. Upon first moving to dismiss, Defendants argued that Plaintiffs were in violation of an 11pm curfew, thus justifying their mass arrest. In the Motion, Defendants have adapted the argument – having read Plaintiff's opposition to the

1    first 12(b)(6) motion – in an attempt to explain away the obvious significance of Mr. Smith
2    and Mr. Clancy's arrests.

3         Specifically, the Motion argues that the fact that Mr. Smith and Mr. Clancy were
4    arrested **well** outside the time constraints in the rule against overnight occupancy does not
5    make their arrests unwarranted, since the ASU policy regarding camping and overnight
6    occupancy also prohibits using camp paraphernalia at any time and using tents, toilets, etc.
7    for the purpose of overnight occupancy. MTD at 13. The MTD then argues that "[m]erely
8    alleging the time when these Plaintiffs were arrested—with no factual allegations about
9    their conduct—does not plausibly establish that they were engaged in a constitutionally
10   protected activity." *Id.*

11        This argument is both wrong and beside the point. The argument raises irrelevant
12   assertions about the validity of Mr. Smith and Mr. Clancy's arrests. Plaintiffs do not allege
13   that those specific arrests were invalid in a vacuum. Plaintiffs allege that **all** of the Plaintiffs
14   were wrongly arrested and punished in retaliation for viewpoint expression. And the SAC
15   includes specific facts about the arrests of Mr. Smith and Mr. Clancy as circumstantial
16   evidence of the illicit motivations of Defendants, and to juxtapose those arrests against the
17   post-hoc explanation of "curfew violation" provided to the other Plaintiffs upon being
18   suspended.

19        And even if the validity of Mr. Smith and Mr. Clancy's arrests were relevant to the
20   12(b)(6) analysis, the MTD seems to imply that for the allegations regarding those arrests
21   to be plausible, Plaintiffs were required to affirmatively allege that Mr. Smith and Mr.
22   Clancy were not using camp paraphernalia, or to affirmatively allege something about
23   Plaintiffs' conduct that would show that Defendants had no reason to arrest Plaintiffs. But
24   that is nonsense. Taking the SAC on its face, it alleges that the Plaintiffs "joined a large
25   group of like-minded individuals in front of the conference center known as "Old Main"
26   on the Tempe campus of ASU in order to peacefully protest the United States' involvement
27   in the genocide being carried out in Gaza and ASU's use of public funds to invest in entities
28   with ties to the perpetrators of that genocide…" SAC, at ¶ 57.

The SAC is clearly alleging that Mr. Smith and Mr. Clancy were part of the large group congregating in a public center to peacefully protest and that they got arrested in the mid-morning. And the SAC further alleges that Plaintiffs were not violent or disruptive and never assaulted or harassed anyone. *Id.*, at ¶¶ 59-60. Plaintiffs do not need to plead that Mr. Smith and Mr. Clancy were not committing an exhaustive list of infractions in order to plausibly allege that an arrest was unwarranted. If Defendants believe the arrests were warranted, evidence of such will come out in discovery.

At its core, this case will turn on a determination of Defendants' motives. *See O'Brien*, 818 F.3d at 932 ("[o]therwise, lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment."). Determining Defendants' motives requires resolution of disputed facts. Resolving facts is not the role of a judge. Simply put, viewing the facts alleged in the SAC in the light most favorable to Plaintiffs, it is more than plausible that Defendants subjected Plaintiffs to arrest and suspension because of the anti-Israel message being communicated by Plaintiffs' protest.

### iii.   Plaintiffs Have Alleged Sufficient Facts For An Inference That Each Defendant Was Part Of The Planned And Executed Violations Of Their First Amendment Rights

An individual capacity claim brought under section 1983 must include facts sufficient to allege that (1) the defendant acted under the color of state law, and (2) the defendant's act, or failure to act, subjected plaintiff to a deprivation of one or more constitutional rights. *Long v. Cnty. of L.A.*, 442 F .3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

This second element is satisfied when a defendant "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978) (internal citations and quotations omitted). The Ninth Circuit was explicit in *Johnson* that "personal participation is not the only predicate for section 1983 liability." *Id.*

14

Instead, the "causal connection" required under section 1983 "can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.*; see also *Sanders v. City & Cty. of San Francisco*, 226 F. App'x 687, 691 (9th Cir. 2007). Where a party's participation is "the more indirect, setting in motion kind" of participation, the standard of causation "closely resembles" the foreseeability formulation of proximate cause. *Id.*, at 691.

To sufficiently plead their claims at this early stage, Plaintiffs do "not need to show with great specificity how each defendant contributed to the violation of [their] constitutional rights." *Preschooler II v. Clark Cty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007). Instead, they "must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law." *Id.*

Here, Plaintiffs have alleged that "in the weeks leading up to April 26, 2024, from the top of the ABOR chain of command to the bottom of ASU and ASU PD management, plans were made on how to swiftly stifle any [anti-Israel] student demonstration should it make it to Arizona's public universities." SAC, ¶ 45.

Specifically, "Defendants engaged in extensive communication and preparation – internally with each other and members of ASU and ASU PD staff, as well as externally with public law enforcement and affiliates of political organizations such as the Anti-Defamation League (which has direct ties with the State of Israel) – all with the goal of preventing or squashing any public demonstrations against the use of public assets to fund the genocide in Gaza or affiliation with pro-Zionist entities that might take place at ASU or any other public Arizona university." *Id.*, ¶ 46. Moreover, "[a]ll of the individual Defendants employed in various ASU departments were directly involved in a flurry of email, telephone, and personal communication taking place during the days prior to the events of April 26, 2024, and April 27, 2024." *Id.*, ¶ 48. "These communications varied in content from general "awareness" of protests occurring at other universities to explicit

15

preparation for cracking down on any such protest to occur at ASU – referred to by top brass as "nip[ping] it immediately" – and consideration of what policies would be available to use as authority to remove protesters." *Id.*, ¶ 49. These communications further included plans on how to handle the media narrative after any anticipated "incident". *Id.*, ¶ 50.

Regardless of how, "[a]ll individual Defendants employed by ASU and involved in these communications assented to – either explicitly or implicitly – to the plans and goals being discussed and established, including the swift and decisive retaliation against any pro-Palestine or anti-Zionist protest by way of arrest." *Id.*, ¶ 51. And "[a]ll individual Defendants employed by ASU and involved in these communications participated in the planning and execution of that retaliation." *Id.*, ¶ 52.

Plaintiffs have alleged facts sufficient to demonstrate either Defendants' "direct personal participation" in the violation of Plaintiffs' rights, or their "indirect, setting in motion" role. *See Johnson*, 588 F.2d at 743-44; *Sanders*, 226 F. App'x at 691. And Plaintiffs have done so "generally so as to provide notice to the defendants" as is required. *Preschooler II*, 479 F.3d at 1183.

### iv. Plaintiffs Need Not Exhaust Administrative Remedies To Bring A Constitutional Claim

The MTD argues – at multiple points – that Plaintiffs cannot challenge Defendants' actions – and specifically their academic damages (suspensions, Orwellian reeducation assignments, etc.) because they did not exhaust the administrative remedies available to them. But the Constitution of the United States preempts any state or local administrative requirements for remedy exhaustion. *See* U.S. Const. art. VI, § 2. And the Supreme Court has "on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 500, 102 S. Ct. 2557, 2559–60, 73 L. Ed. 2d 172 (1982) (citing *Barry v. Barchi*, 443 U.S. 55, 63, n. 10, 99 S.Ct. 2642, 2648, n. 10, 61 L.Ed.2d 365 (1979); *Gibson v. Berryhill*, 411 U.S. 564, 574, 93 S.Ct. 1689, 1695, 36 L.Ed.2d 488 (1973); *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d

569 (1972); *Wilwording v. Swenson*, 404 U.S. 249, 251, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971); *Houghton v. Shafer*, 392 U.S. 639, 640, 88 S.Ct. 2119, 2120, 20 L.Ed.2d 1319 (1968); *King v. 2560 Smith*, 392 U.S. 309, 312, n. 4, 88 S.Ct. 2128, 2130, n. 4, 20 L.Ed.2d 1118 (1968); *Damico v. California*, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967).

Simply put, "[w]hen federal claims are premised on [§ 1983]—as they are here—[the Supreme Court] [has] not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights…" *Cf. Steffel v. Thompson*, 415 U.S. 452, 472–473, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974).[1]

**v. Defendants Are Not Entitled To Qualified Immunity**

As this Court has noted, "[w]hen a motion to dismiss brings a qualified immunity claim, the inquiry 'raises special problems for legal decision making.'" *Muhaymin v. City of Phx.*, No. CV-17-04565-PHX-SMB, 2019 U.S. Dist. LEXIS 26819, at *32 (D. Ariz. Feb. 20, 2019) (quoting *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (citing *Kwai Fun Wong v. United States*, 373 F.3d 952, 956 (9th Cir. 2004))). These problems arise because the court is being asked "to decide far-reaching constitutional questions on a nonexistent factual record." *Kwai Fun Wong*, 373 F.3d at 957; see also *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999) (stating that a court ruling on a motion to dismiss was "not equipped at this stage to determine whether qualified immunity will ultimately protect

---

[1] Defendants' case law presented to the contrary is not apropos. Both cases raised allegations of due process violations involved in disciplinary proceedings related to alleged sexual misconduct. The courts in both *Quade* and *Green* held that administrative res judicata applied because the decisions being challenged were made by panels acting in a judicial capacity. That analysis is specific to due process claims and involves a determination of the availability and adequacy of review. *See Quade v. Arizona Bd. of Regents*, 700 F. App'x 623, 625 (9th Cir. 2017) (citing *Misischia v. Pirie*, 60 F.3d 626, 630 (9th Cir. 1995)). Plaintiffs here do not raise Due Process claims because they are not challenging the processes employed by Defendants to violate their First Amendment rights. Plaintiffs here are challenging the underlying violations themselves. The fact that some of the Plaintiffs did not subject themselves to additional hearings – where the outcomes were predetermined, as proven by the few Plaintiffs who did attempt appeals – does not trump the Supremacy Clause.

1    [the defendant].").

2        And an additional wrinkle to the analysis stems from the fact that "[q]ualified

3    immunity is an affirmative defense that must be raised by a defendant. Thus, a Rule

4    12(b)(6) dismissal is not appropriate unless we can determine, based on the complaint

5    itself, that qualified immunity applies." *Groten v. California*, 251 F.3d 844, 851 (9th Cir.

6    2001) (citing *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993); *Jensen v. City of*

7    *Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998)).

8        Therefore, the appropriate inquiry is "whether the complaint alleges sufficient facts,

9    taken as true, to support the claim that the officials' conduct violated clearly established

10   constitutional rights of which a reasonable officer would be aware 'in light of the specific

11   context of the case.'" *Muhaymin*, 2019 U.S. Dist. LEXIS 26819, at *33 (quoting *Keates*,

12   883 F.3d at 1235 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)

13   (per curiam))). And "[d]ismissal of the claims is not warranted if the complaint 'contains

14   even one allegation of a harmful act that would constitute a violation of a clearly

15   established constitutional right.'" *Id.* (quoting *Keates*, 883 F.3d at 1235) (citing *O'Brien*,

16   818 F.3d at 936).

17       Government officials are not entitled to qualified immunity if, at the time of the

18   violative action, it was "sufficiently clear that every reasonable official would have

19   understood that what he is doing violates [the victim's] right." *Mullenix*, 577 U.S. 7, 11

20   (2015). The Supreme Court has expressly stated that it does "not require a case directly on

21   point," but only that "existing precedent must have placed the statutory or constitutional

22   question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011); See also

23   *Drummond ex Rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1060-61 (9th Cir. 2003)

24   ("...it is not necessary that the alleged acts have been previously held unconstitutional, as

25   long as the unlawfulness was apparent in light of existing law.") (further citations omitted).

26       Aside from restating the argument that Plaintiffs have not pleaded sufficient facts

27   to state a claim, Defendants' sole argument for qualified immunity is that there is no law

28   holding that a university student has a "clearly established" right to not be arrested and

punished under the circumstances alleged in the Complaint. MTD, at 20-21. This argument fails.

Accepting the SAC as true, there is no legitimate argument that Defendants are entitled to qualified immunity. It has been black-letter law in this country since the Vietnam War era that public education staff may not target students for discipline for engaging in political demonstration. *See generally Tinker*, 393 U.S. 503 (1969). And if that were not sufficient to preclude the application of qualified immunity at the pleading stage (it is), a published opinion from another Ninth Circuit district court clearly placed public schools on notice that they may not retaliate against sit-in protesters simply because their message was not appreciated, because their actions contravened policy, or because they refused to comply with instructions. *See generally Gonzales ex rel. A.G.*, 404 F. Supp. 3d 1269 (D. Idaho 2019). The law on inappropriate reactions to student protesters was sufficiently established in April 2024 to preclude a finding of qualified immunity. *See Drummond ex Rel. Drummond*, 343 F.3d at 1060-61 ("...it is not necessary that the alleged acts have been previously held unconstitutional, as long as the unlawfulness was apparent in light of existing law.").

## C. PLAINTIFFS' COMPLAINT PLAUSIBLY STATES A CLAIM FOR VIOLATION OF ARIZONA STATE LAW

### i. The Eleventh Amendment Does Not Apply To Immunize Defendants Generally

The Eleventh Amendment "bars suits in federal court [for damages] against a state and its agencies brought by its own citizens and citizens of other states." *In re Jackson*, 184 F.3d 1046, 1049 (9th Cir.1999) (citations omitted). However, "[a] state may waive its sovereign immunity under the Eleventh Amendment by expressly consenting to suit." *Chung v. P.S.R.B.*, No. 6:14-CV-00156-AA, 2014 WL 4629347, at *2 (D. Or. Sept. 12, 2014) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984)).

As applied to state law claims in federal court, "[c]ourts have often 'referred to the States' immunity from suit as 'Eleventh Amendment immunity.' The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither

derives from nor is limited by the terms of the Eleventh Amendment.'" *Stanley v. Trs. of California State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006) (quoting *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)). "Rather, as the Constitution's structure, its history, and the authoritative interpretations by [the Supreme] Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution…" *Alden*, 527 U.S. at 713.

The State of Arizona expressly waived sovereign immunity as a defense in 1963. *Stone v. Arizona Highway Comm'n*, 93 Ariz. 384, 392, 381 P.2d 107, 112 (1963) (abolishing sovereign immunity for Arizona public entities). In 1982, the Arizona Supreme Court reaffirmed Arizona's waiver, holding that, in Arizona, "'the rule is liability and immunity is the exception.'" *Ryan v. State*, 134 Ariz. 308, 309, 656 P.2d 597, 598 (1982) (quoting *Stone*, 93 Ariz. at 392, 381 P.2d at 112).

In 1984 the Arizona legislature reaffirmed and codified *Ryan's* public policy pronouncement by enacting A.R.S. sections 12–820 through 12–826, entitled "Actions Against Public Entities or Public Employees." The legislature prefaced the Act with this statement of purpose and intent:

> The legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand, the legislature recognizes that, while a private entrepreneur may readily be held liable for negligence within the chosen scope of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. **Consequently, it is hereby declared to be the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state. All of the provisions of this act should be construed with a view to carry out the above legislative purpose.**

1984 Ariz. Sess. Laws ch. 285, § 1 (emphasis added), cited in A.R.S. § 12–820 (1992) (historical note). "It is well settled, therefore, that governmental liability is the rule in Arizona, unless an exception is established by statute or caselaw." *Warrington by Warrington v. Tempe Elementary Sch. Dist. No. 3*, 187 Ariz. 249, 251, 928 P.2d 673, 675

(Ct. App. 1996).

Plaintiffs' state law claims are expressly authorized by statute – A.R.S. § 15-1864 – enacted by a State – Arizona – that abolished sovereign immunity over six decades ago. The Eleventh Amendment does not apply to immunize Defendants from a lawsuit to which Arizona has consented. *Pennhurst State School & Hosp.*, 465 U.S. at 100–01.

### ii. The Eleventh Amendment Does Not Bar Plaintiffs' State Law Claims Against The Individual University Defendants, Specifically

Defendants' reliance upon *Ex parte Young* (209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)) as support for the contention that Defendants cannot be sued in their official capacity is misplaced. *Young*, a habeas corpus case, provided that where injunctive relief under federal law is sought, there is an "exception to th[e] Eleventh Amendment bar" which permits the suit for injunctive relief to proceed in federal court under certain circumstances. *Doe v. Regents of the Univ. of California*, 891 F.3d 1147, 1153 (9th Cir. 2018).

As an exception, *Young* does not alter the rule. And it certainly does not provide justification for the argument that, because Plaintiffs seek injunctive relief expressly authorized by A.R.S. § 15-1864, the Eleventh Amendment operates to automatically preclude Plaintiffs' claims. As discussed in the previous section, Arizona has waived the defense of sovereign immunity, a reality that *Young* does not change.[2]

Defendants' secondary argument that "A.R.S. § 15-1864(I) only provides a cause of action in the official capacity" is not relevant to the Eleventh Amendment argument. Motion, at 22. As an aside, the unpublished D. AZ opinion cited for this proposition simply held, with no analysis, that "the statute only provides a cause of action in the official capacity." *Klein v. Arizona State Univ.*, No. CV-20-01982-PHX-SPL, 2020 WL 7404564, at *4 (D. Ariz. Dec. 17, 2020). But no Arizona state court has ever made such a pronouncement. And the language of the statute is not supportive of the interpretation presented by Defendants. Section 15-1864 authorizes suit against "**any** university,

---

[2] Defendants argument that "A.R.S. § 15-1864(I) only provides a cause of action in the official capacity"

community college, **faculty member or administrator**…". A.R.S. § 15-1864(I) (emphasis added).

Such language is clear: "faculty member[s]" and "administrator[s]" may be sued. The statute does not limit the liability to such individuals "in their official capacity." And, as Defendants correctly point out, and "courts cannot 'read into a statute something [that] is not within the express manifest intention of the Legislature as gathered from the statute itself' or 'inflate, expand, stretch or extend the statute to matters not falling within its expressed provisions.'" Motion, at 23 (quoting *Patches v. Indus. Comm'n of Ariz.*, 220 Ariz. 179, 182 ¶ 10 (App. 2009)). But it is Defendants, not Plaintiffs, who ask the Court to "read into" section 15-864(I) the words "in their official capacity."[3]

**Regardless**, whether the Court reads the words "in their official capacity" into A.R.S. § 15-1864 or not, Defendants' arguments under that statute have nothing to do with Defendants' Eleventh Amendment immunity claim.

### iii.  The University Defendants Are Proper Defendants Under A.R.S. § 15-1864(I)

A.R.S. § 15-1864(I) authorizes claims against "administrator[s]" and "faculty member[s]". The SAC lists the titles of individual defendants and describes the roles of the University Defendants in the lead up to their crackdown on Plaintiffs' free speech rights. Both the titles and alleged actions of the University Defendants **clearly** establish that each and all of the named defendants are administrators or faculty members at ASU. To find that Plaintiffs have failed to state a claim because the SAC does not include the phrase "Defendant X is an administrator and/or faculty member" with respect to each individual defendant would require that the Court construe plausible inference from the SAC against Plaintiffs. And "[o]n a Rule 12(b)(6) motion to dismiss, the court must accept the

---

[3] Defendants' comparison of the language of 42 U.S.C. § 1983 ("person") to the language of A.R.S. § 15-1864(I) ("any university, community college, faculty member or administrator") is meaningless. The two statutes were enacted by different legislative bodies. What one body means by "person" is irrelevant to what the other body means by "faculty member or administrator".

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Hammond*, 139 F. Supp. 3d at 1137.

### iv. The SAC Pleads Facts Sufficient To Support A Plausible Inference That Defendants Are Liable

In order to state a claim upon which relief can be granted, the SAC need only plead facts "that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft*, 556 U.S. at 678. Plaintiffs have pleaded facts from which a reasonable inference could be drawn that Defendants discriminated against Plaintiffs based on the content and viewpoint of their expressive conduct when retaliating against them for exercising their First Amendment rights, violating Arizona state law in the process.

#### 1. The SAC Includes Allegations Supporting A Reasonable Inference Of Content-Based Discrimination

For reasons already thoroughly addressed herein, the SAC plausibly alleges that Defendants violated Plaintiff's free speech rights by taking action that was motivated by the content and/or viewpoint of Plaintiffs' protected speech. *Supra,* Section IV(B).

#### 2. Section 15-1866 Requires That ABOR Adopt And Follow A Policy With Certain Procedural Protections

The Motion argues that § 15-1866 merely requires that ABOR adopt a policy. This argument is facially misleading. In order to protect a student's fundamental free speech rights, A.R.S. § 15-1866 provides that before punishment can be meted out in "disciplinary proceedings […] involving expressive conduct" a student must receive advance written notice of the relevant allegations, be provided a chance to review any evidence and confront any witnesses relevant to the allegations, be provided opportunity to present a defense and call witnesses against the allegations in front of an impartial person or panel, be given an avenue to appeal any decision made by that person or panel, and where suspension of more than thirty days (or expulsion) is a potential punishment to be provided the right to active assistance of counsel. A.R.S. § 15-1866(A)(5).

Even if ABOR had established policies that meet these requirements, their

**intentional** failure to follow the requirements violated Plaintiffs' rights. As courts throughout the country have reasoned (employing common sense), a policy that is ignored is not a policy. *See e.g. Booke v. Cnty. of Fresno*, 98 F. Supp. 3d 1103, 1122 (E.D. Cal. 2015) ("A written policy serves no purpose if it is not followed."); *Lockheed Martin Corp. v. Unemployment Appeals Comm'n*, 876 So. 2d 31, 33 (Fla. Dist. Ct. App. 2004) ("A policy that is not enforced is not a policy, but a suggestion.").

Stated another way, it is the implementation that makes a policy. *See Brown v. Lynch*, 831 F.3d 1146, 1152 (9th Cir. 2016) ("A 'policy' is a deliberate choice to follow a course of action…"). Defendants are not entitled to tell the Court that it had a policy – relying upon unvetted, unincorporated documents in violation of Rule 12(b)(6) standards – and then simply walk away. Plaintiffs are entitled to discovery into Defendants' assertions.

### 3. ABOR Failed To Follow A Policy That Contained The Procedural Protections Required By Section 15-1866.

The Motion argues that the requirements of A.R.S. 15-1866 did not apply to Defendants' unilateral decision to mass suspend, trespass, and excommunicate Plaintiffs for an indeterminate period of time because "an interim action is not a 'disciplinary proceeding'" as that term is used in section 15-1866. Motion, at 24. Forgive the undersigned for employing an incomplete sentence, but: says who? Defendants cite to no case law or statutory definitions in support of the implicit interpretation of the phrase "disciplinary proceeding." Indeed, Defendants' assertions are supported by nothing but the declaration of Defendants' counsel and excerpts from Defendants' "Student Code of Conduct Procedures." This is not a legal argument under Rule 12(b)(6). Again, Defendants assume that they are entitled to simply tell the Court that Plaintiffs' SAC is incorrect and then walk away from liability.

Moreover, this argument improperly relies upon documents from outside the pleadings (*see supra* Section IV(A)). Whether Defendants' retaliatory and instant punishments were violative of A.R.S. 15-1866 is a factual question that requires discovery.

4.  *Plaintiffs Were Not Required To Seek Administrative Review Of Their State Law Claims*

In support of their second "Plaintiffs failed to appeal enough" argument, Defendants reincorporate the sections of the Motion regarding the requirement for exhausting administrative remedies before bringing federal claims. *See* Motion, at 25. But those arguments were predicated on the assumption that the claims were brought to seek Constitutional review of state administrative processes. And while those arguments were wrong in relation to Plaintiffs' First Amendment claim (as addressed at Section IV(B)(iv), *supra*), they are simply inapplicable to Plaintiffs' state law claim.  Plaintiffs' state law claim is expressly authorized by statute to be brought in court to, not before an administrative body, to review the actions of state actors in violating students' free speech rights. *See* A.R.S. § 15-1864(I). Plaintiffs have alleged that Defendants' actions, decisions, and punishments were violative of Arizona state law. That most of the Plaintiffs did not humor Defendants or further exacerbate their damages by opting into the sham appeals process is not grounds for dismissal, and Defendants present no logical or legal argument to the contrary.[4]

## V.  __CONCLUSION__

For these reasons, Plaintiffs respectfully request that the Court deny the Motion.

Respectfully submitted this 20th day of May 2025,

                                    */s/David Chami*_____
                                    David Chami, AZ Bar No. 027585
                                    dchami@consumerjustice.com
                                    Michael Yancey, AZ Bar No. 37187
                                    myancey@consumerjustice.com

---

[4] In fact, those individual Plaintiffs who engaged in the appeals process that Defendants claim were necessary to the process were met with predictably hostile arbiters of their claims and universal confirmation of ASU's illegal free-speech crackdown. SAC, at ¶ 89.

25

**CONSUMER JUSTICE LAW FIRM PLC**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (480) 626-2359
F: (480) 613-7733

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

*/s/ Marie Tirona*