Keith Beauchamp (012434)
D. Andrew Gaona (028414)
Austin C. Yost (034602)
Andrew T. Fox (034581)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5490
kbeauchamp@cblawyers.com
agaona@cblawyers.com
ayost@cblawyers.com
afox@cblawyers.com

*Attorneys for University Defendants[1]*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Aida Esmeralda Campos, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Arizona Board of Regents, et al.,<br><br>Defendants. | No. 2:24-CV-00987-JJT<br><br>**UNIVERSITY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

---

[1] The University Defendants are the Arizona Board of Regents and these 30 ASU employees named as Defendants in the Second Amended Complaint: (1) Joanne Vogel, (2) Lance Harrop, (3) Brian Reece, (4) Michael Crow, (5) Michael Thompson, (6) Juan Padilla, (7) Clayton Mason, (8) Jason Latella, (9) Robert Van Buhler, (10) Kyle Bathke, (11) Prince Singh, (12) Denise Whisman, (13) Jason Weber, (14) Cayla Sullivan, (15) Drew Solomon, (16) Gary Samuels, (17) Norean Sablan, (18) Dawn Russo, (19) Charles Ross, (20) James O'Brien, (21) Jeffrey Nix, (22) Anthony Momon, (23) Megan Thompson, (24) John Thompson, (25) Christopher Hopkins, (26) Daniel Herrmann, (27) Nancy Gonzales, (28) Carrie Gambee, (29) Robert Brems, and (30) Michael Anderson.

**Table of Contents**

Introduction ................................................................................................1

Argument ....................................................................................................2

I.     The SAC lacks individualized allegations of wrongdoing.........................2

II.    Count 1 fails to state a claim on which relief can be granted. ...................3

    A.     The SAC alleges no facts plausibly establishing that the University Defendants deprived Plaintiffs of their free speech rights................................................................................3

        1.     By camping or engaging in overnight occupancy on campus, Plaintiffs did not engage in a constitutionally protected activity..........................................3

        2.     Any constitutionally protected activity was not a substantial or motivating factor in the University Defendants' conduct. .........................................................8

    B.     Plaintiffs cannot recover their requested relief. ............................10

III.   Count 2 fails to state a claim on which relief can be granted. .................11

    A.     Plaintiffs cannot sue ABOR because ABOR is immune from suit under the Eleventh Amendment. ...................................11

    B.     The Eleventh Amendment also bars Count 2 against the individual University Defendants. ...............................................12

    C.     Even if Plaintiffs could bring Count 2, they would lack statutory authority to sue several University Defendants. .............12

    D.     The SAC alleges no facts plausibly demonstrating that the University Defendants violated A.R.S. §§ 15-1864 or -1866. ...............................................................................13

        1.     There was no content- or viewpoint-based discrimination.........................................................13

        2.     Section 15-1866 merely requires ABOR to adopt a policy..................................................................13

        3.     Even if A.R.S. § 15-1866 conferred procedural rights on Plaintiffs, those rights would not apply to interim actions........................................................13

        4.     Plaintiffs failed to seek judicial review of the decisions to suspend them from ASU................................14

i

IV.    This Court can and should consider public records and documents
incorporated into the SAC by Plaintiffs when it rules on the motion
to dismiss. .................................................................................................14

Conclusion ......................................................................................................................14

1

2

**Table of Authorities**

**Page(s)**

3

**Cases**

4

*Ames v. City of Tempe,*
    665 F. Supp. 3d 1013 (D. Ariz. 2023) ........................................................ 11

5

6

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents,*
    824 F.3d 858 (9th Cir. 2016) ..................................................................... 11

7

8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................ 2, 9

9

10

*Bd. of Regents of Univ. of Wis. Sys. v. Southworth,*
    529 U.S. 217 (2000) .................................................................................... 4

11

12

*Bellis v. Navajo Cnty.,*
    No. CV-23-08125, 2024 WL 3202332 (D. Ariz. June 27, 2024) ............... 8

13

*Blomquist v. Town of Marina,*
    501 F. App'x 657 (9th Cir. 2012) ............................................................... 6

14

15

*Doe v. Regents of the Univ. of Cal.,*
    891 F.3d 1147 (9th Cir. 2018) ................................................................... 12

16

17

*Eilrich v. Remas,*
    839 F.2d 630 (9th Cir. 1988) .................................................................. 6, 7

18

19

*Essif v. Ariz. Bd. of Regents,*
    No. CIV 19-00596, 2021 WL 673396 (D. Ariz. Feb. 22, 2021) ............... 12

20

*Gamino v. Schrouder,*
    No. CV-23-00239, 2024 WL 1740016 (D. Ariz. Apr. 23, 2024) ........... 3, 5

21

22

*Gonzales ex rel. A.G. v. Burley High Sch.,*
    404 F. Supp. 3d 1269 (D. Idaho 2019) ..................................................... 11

23

24

*Hines v. Youseff,*
    914 F.3d 1218 (9th Cir. 2019) ..................................................................... 3

25

26

*Killgore v. City of South El Monte,*
    860 F. App'x 521 (9th Cir. 2021) ............................................................... 9

27

*Kirwin v. Kot,*
    No. CV-22-00471, 2024 WL 911745 (D. Ariz. Mar. 4, 2024) ................. 10

28

iii

*Klein v. Ariz. State Univ.*,
  No. CV-20-01982, 2020 WL 7404564 (D. Ariz. Dec. 17, 2020) ............................ 12

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ............................................................... 14

*Lamorie v. Davis*,
  485 F. Supp. 3d 1065 (D. Ariz. 2020) ...................................................... 11

*Lloyd Corp. v. Tanner*,
  407 U.S. 551 (1972) ........................................................................... 6

*Mandel v. Bd. of Trs. of Cali. State Univ.*,
  No. 17-CV-03511, 2018 WL 5458739 (N.D. Cal. Oct. 29, 2018) ............................ 9

*Minch v. Ariz. State Bd. of Nursing*,
  No. CV-17-2525, 2017 WL 5496156 (D. Ariz. Nov. 16, 2017) ............................... 2

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ................................................................. 9

*Navratil v. City of Racine*,
  101 F.4th 511 (7th Cir. 2024) ................................................................ 3

*Olson v. Morris*,
  188 F.3d 1083 (9th Cir. 1999) ............................................................... 7

*Oyama v. Univ. of Hawaii*,
  813 F.3d 850 (9th Cir. 2015) ................................................................ 4

*Quade v. Ariz. Bd. of Regents*,
  No. CV-15-00610, 2015 WL 10939902 (D. Ariz. Sept. 14, 2015),
  *aff'd*, 700 F. App'x 623 (9th Cir. 2017) ................................................... 6

*Rico v. Ducart*,
  980 F.3d 1292 (9th Cir. 2020) ............................................................... 10

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*,
  44 F.4th 867 (9th Cir. 2022) ................................................................. 11

*Skilstaf, Inc. v. CVS Caremark*,
  669 F.3d 1005 (9th Cir. 2012) ............................................................... 14

*Spears v. Ariz. Bd. of Regents*,
  372 F. Supp. 3d 893 (D. Ariz. 2019) ........................................................ 5

iv

*Spears v. Ariz. Bd. of Regents*,
    409 F. Supp. 3d 779 (D. Ariz. 2019) ........................................................... 5

*District of Columbia v. Wesby*,
    583 U.S. 48 (2018) ...................................................................................... 8, 9

**Statutes**

A.R.S. § 15-1864 ........................................................................................... 12, 13

A.R.S. § 15-1866 ............................................................................................... 13

**Introduction**

Plaintiffs' response to the University Defendants' motion to dismiss has no good answer to the fundamental defects identified in the motion. Nor does it propose any amendment that could cure those problems. This Court should thus dismiss the Second Amended Complaint ("SAC") in full with prejudice and without leave to amend.

*First*, under Counts 1 and 2, the response cites a decision predating both *Twombly* and *Iqbal* and argues that the SAC states a claim for all 17 Plaintiffs against all 30 ASU employees named as Defendants because the SAC "generally" provides the University Defendants "notice" about their challenged conduct. But the Supreme Court jettisoned a liberal notice pleading standard nearly 20 years ago. Plaintiffs' lack of individualized allegations related to any of the University Defendants requires the SAC's dismissal.

*Second*, under Count 1, the motion to dismiss applied a forum analysis to refute any suggestion that Plaintiffs engaged in a constitutionally protected activity when they violated the Policy prohibiting camping and overnight occupancy on ASU's campuses. The response sidesteps that analysis and tries to chart a new course, while conceding that Plaintiffs do not challenge the Policy itself. Plaintiffs wish to extend the student speech doctrine to universities, yet offer no reason for this Court to break new ground.

*Third*, also under Count 1, the response claims that the University Defendants selectively enforced the Policy against Plaintiffs, which they say shows that the University Defendants acted with a retaliatory motive. But the SAC alleges no facts plausibly supporting these conclusions. The Policy prohibits camping and overnight occupancy. While Plaintiffs violated it, the SAC does not (and cannot) allege that any fraternity member or pro-Israel protester present also engaged in the prohibited conduct.

*Fourth*, under Count 2, the response declares that the State of Arizona waived its Eleventh Amendment immunity over 60 years ago, yet cites no case from any court in this country so holding in all that time. This argument is baseless. The response's other arguments on statutory authority and the merits likewise fail as a matter of law.

**Argument**

**I.    The SAC lacks individualized allegations of wrongdoing.**

Citing *Preschooler II v. Clark County Sch. Board of Trustees*, 479 F.3d 1175 (9th Cir. 2007), which the Ninth Circuit issued in March 2007, Plaintiffs assert (at 14-16) that to avoid dismissal they must only "state the[ir] allegations generally" to "provide notice" to the University Defendants about their challenged conduct. That's wrong.

As the University Defendants have now explained in two motions to dismiss, Plaintiffs had to allege enough facts to state a plausible claim that "each Government-official defendant, through the official's own individual actions, has violated the Constitution" or state law. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual development.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (May 2007)). [*See also* Docs. 32 at 6-8, 45 at 2-3, 89 at 6-8 (motions to dismiss the FAC and SAC)]

Plaintiffs measure their allegations under the wrong pre-*Twombly* and *Iqbal* standard. They do not try to argue that the SAC's individualized allegations state a plausible claim for relief against any University Defendant. Nor could they. [*See* Doc. 89 at 7-8 (citing the individualized allegations)] Rather, they point to paragraphs in which the SAC lumps 30 ASU employees together (¶¶ 45, 46, 48, 51, 52) and conclude that all the University Defendants are on "notice." That's not enough. *See, e.g.*, *Minch v. Ariz. State Bd. of Nursing*, No. CV-17-2525, 2017 WL 5496156, at *1 (D. Ariz. Nov. 16, 2017) (dismissing claims for failing to allege "specific actions" by individual defendants).

The University Defendants twice informed Plaintiffs that their operative complaint lacked individualized allegations of wrongdoing in the meet-and-confers that preceded the filing of their motions to dismiss. [*See* Docs. 34, 91] Still, Plaintiffs neither requested leave to amend their complaint again nor proposed any amendment to cure this deficiency for any claim against any University Defendant. This is true even after Plaintiffs conducted months of early discovery to supposedly identify "Doe Defendants" and

unearth facts about their purported involvement. [*See* Docs. 31, 44, 71] Plaintiffs simply cannot allege any specific wrongdoing by any specific University Defendant. This Court should thus dismiss the SAC in full with prejudice and without leave to amend.

**II.    Count 1 fails to state a claim on which relief can be granted.**

**A.    The SAC alleges no facts plausibly establishing that the University Defendants deprived Plaintiffs of their free speech rights.**

The SAC lacks facts plausibly showing that any University Defendant "personally played a role in violating the Constitution." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019). *See* Argument § I. It also alleges no facts plausibly establishing that (a) any Plaintiff "engaged in a constitutionally protected activity" and (b) any "protected activity" substantially motivated any University Defendant's "conduct." *Gamino v. Schrouder*, No. CV-23-00239, 2024 WL 1740016, at *3 (D. Ariz. Apr. 23, 2024) (citation omitted).

**1.    By camping or engaging in overnight occupancy on campus, Plaintiffs did not engage in a constitutionally protected activity.**

The SAC alleges (¶¶ 57, 58, 83) that Plaintiffs participated in a "sit-in" protest—involving "encampment tents"—on ASU's campus. The response does not dispute this. According to the SAC (¶ 95), this protest was "a constitutionally protected activity."

Not so. Applying a forum analysis, the motion to dismiss establishes (at 9-14) that the Policy prohibiting camping and overnight occupancy on ASU's campuses is a valid time, place, and manner restriction and Plaintiffs violated it. Plaintiffs thus failed to allege facts plausibly showing that they engaged in a constitutionally protected activity. *See, e.g.*, *Navratil v. City of Racine*, 101 F.4th 511, 520-21 (7th Cir. 2024) (rejecting a retaliation claim when the plaintiff's attendance at a protest violated "a valid time, place, and manner restriction" because this "was not protected First Amendment activity").

Plaintiffs do not seriously address the motion's forum analysis. They instead try to forge a new path—based on a series of legal errors—to somehow show that they engaged in a constitutionally protected activity. All this maneuvering fails.

1

**a.     A forum analysis is the correct legal framework.**

2      Plaintiffs argue (8-10) that a forum analysis is the wrong lens through which to

3   evaluate their claims. Relying on cases arising from high schools, they urge this Court to

4   extend the student speech doctrine to universities. The Court should decline the invitation.

5      The Ninth Circuit recognizes that while "aspects of [the] student speech doctrine"

6   may be relevant, neither the Supreme Court nor the Ninth Circuit has ever "extend[ed]

7   [it] to the public university setting." *Oyama v. Univ. of Hawaii*, 813 F.3d 850, 862 (9th

8   Cir. 2015); *see also, e.g.*, *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S.

9   217, 238 n.4 (2000) (Souter, J., concurring) (the Supreme Court's cases "dealing with the

10   right of teaching institutions to limit expressive freedom of students have been confined

11   to high schools . . . whose students and their schools' relation to them are different and at

12   least arguably distinguishable from their counterparts in college education").

13      Plaintiffs offer no reason for this Court to do what the Ninth Circuit has twice

14   refused. Like *Oyama*, this case "presents no occasion to extend [the] student speech

15   doctrine to the university setting." 813 F.3d at 863. That's because the student speech

16   doctrine "does not adequately address the governmental purposes at stake" here. *Id.* The

17   Policy "protect[s] the health and safety of the university and campus community and

18   access to and security of university facilities and property." [Doc. 90 at Ex. 4] These

19   health and safety considerations are critical because tens of thousands of people study,

20   teach, research, work, and live on ASU's campuses. And as a property owner, ASU has

21   a strong interest in protecting and securing its facilities and property. The student speech

22   doctrine may minimize or ignore these important government interests.

23      Other student free speech cases involving universities reinforce that this Court

24   should apply a forum analysis. In *Flint v. Dennison*, for instance, the Ninth Circuit again

25   declined to extend the student speech doctrine to universities. *See* 488 F.3d 816, 829 n.9

26   (9th Cir. 2007). *Flint* involved student campaign speech restrictions in "a forum opened"

27

28

4

by the university, and so the Ninth Circuit "engag[ed] in a forum analysis" when it addressed (and rejected) a student's free speech claim on the merits. *Id.* at 820, 828.

So too here. The Policy applies to ASU's property, including spaces that ASU has dedicated to expressive conduct.[2] A forum analysis allows this Court to decide whether ASU's "interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Id.* at 826 (citation omitted). As *Flint* put it, this "traditional First Amendment analysis" controls. *Id.*; *see also, e.g.*, *Spears v. Ariz. Bd. of Regents*, 372 F. Supp. 3d 893, 910-15 (D. Ariz. 2019); *Spears v. Ariz. Bd. of Regents*, 409 F. Supp. 3d 779, 786-88 (D. Ariz. 2019) (dismissing free speech claims while applying a forum analysis to restrictions on U of A's campus).

### b.    The Policy is a valid restriction on expressive conduct.

Under the correct legal framework, the motion to dismiss explains (at 9-12) that the Policy prohibiting camping and overnight occupancy on ASU's campuses is a valid time, place, and manner restriction on expressive conduct. The response does not dispute this. [*See* Doc. 97 at 11 (admitting that the Policy is "not being challenged")]

### c.    Plaintiffs violated the Policy.

Next, the motion to dismiss demonstrates (at 12-14) that Plaintiffs violated the Policy. The response does not dispute that 15 Plaintiffs—all except Harry Smith and Michael Clancy—violated the Policy. It contends (at 10-11), though, that these violations do not matter because the SAC alleges that the University Defendants' actions were not "motivated" by the violations. But this argument puts the cart before the horse. Plaintiffs first had to show that they were "engaged in a constitutionally protected activity" and then that "*the protected activity* was a substantial or motivating factor in [the University Defendants'] conduct." *Gamino*, 2024 WL 1740016, at *3 (citation omitted) (emphasis added). By violating a valid time, place, and manner restriction like the Policy, Plaintiffs

---

[2] As the motion to dismiss notes (at 9 n.10), the Alumni Lawn is not dedicated to expressive conduct because it requires reservations. The University Defendants thus reserve the right to establish in later stages that it is, at most, a limited public forum.

did not engage in a constitutionally protected activity. *See, e.g.*, *Blomquist v. Town of Marina*, 501 F. App'x 657, 659 (9th Cir. 2012). Their contrary argument has "as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law [has always been] vigorously and forthrightly rejected." *Lloyd Corp. v. Tanner*, 407 U.S. 551, 568 (1972) (citation omitted).

As for Mr. Smith and Mr. Clancy, they too violated the Policy for two reasons.

*First*, the motion to dismiss establishes (at 12, 18) that administrative res judicata principles bar Mr. Smith and Mr. Clancy from relitigating the legal conclusions and factual findings from their decision letters. *See, e.g.*, *Quade v. Ariz. Bd. of Regents*, No. CV-15-00610, 2015 WL 10939902, at *3 (D. Ariz. Sept. 14, 2015), *aff'd*, 700 F. App'x 623 (9th Cir. 2017) (res judicata principles bar parties from relitigating "the underlying legal and factual issues" involved in final "state administrative decision[s]"). Having chosen not to seek judicial review in state court of the findings from their decision letters that they violated the Policy (as was their right), Mr. Smith and Mr. Clancy cannot relitigate those findings here. [*See* Doc. 90 at Exs. 31, 39 (Mr. Smith's and Mr. Clancy's decision letters)] *See also, e.g.*, *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988) (rejecting a Section 1983 claim when "an adequate opportunity for review [was] available" in state court because "a losing party cannot obstruct the preclusive use of [a] state administrative decision simply by foregoing the right to appeal") (citation omitted).[3]

The response misconstrues (at 16-17) the administrative res judicata argument as a remedies exhaustion argument. The University Defendants never made an exhaustion argument. The words "exhaust" or "exhaustion" appear nowhere in the motion to dismiss. And the response's effort to distinguish this case from *Quade* and the other cases cited in the motion fails. Plaintiffs suggest (at 17 n.1) that all those cases are "specific to due

---

[3] This argument applies to all Plaintiffs except Guadalupe Chavez Morales because she was not suspended and thus had no right to appeal the decision to state court. [*See* Doc. 89 at 12 n.11] At any rate, the response does not dispute that she violated the Policy.

process claims." That's wrong. *See, e.g.*, *Olson v. Morris*, 188 F.3d 1083, 1085-87 (9th Cir. 1999) (affirming the dismissal of a Section 1983 claim for alleged First Amendment religious freedom violations); *Eilrich*, 839 F.2d at 632 (affirming the dismissal of a Section 1983 claim for alleged First Amendment free speech violations).

*Second*, even if Mr. Smith and Mr. Clancy could avoid the administrative decisions finding that they violated the Policy, the SAC's own allegations confirm that those violations occurred, as the motion to dismiss details (at 12-13). The response criticizes (at 12-14) the motion's description, proclaiming that the SAC shows that Mr. Smith and Mr. Clancy engaged in a constitutionally protected activity because they were part of a "protest" and were not "disruptive." But the response omits key allegations. The SAC alleges (¶¶ 57, 58) that Plaintiffs participated in a "sit-in" protest on ASU's campus. Plaintiffs wanted to "make their protest known" through their ongoing "presence." And the SAC acknowledges (¶ 83), as it must, that this protest involved "encampment tents." Mr. Smith and Mr. Clancy were thus present on campus, with tents, not as bystanders or passersby, but as occupants intending to remain. That conduct violates the Policy.

Elsewhere, the response describes (at 3) the Policy as a "curfew" that Mr. Smith and Mr. Clancy could not have violated because they were arrested in the morning. But as the motion to dismiss explains (at 13), the Policy is not a curfew. It prohibits specific conduct—camping and overnight occupancy. [Doc. 90 at Ex. 4] All Plaintiffs violated it.

### d.    There was no selective enforcement.

Echoing the SAC (¶¶ 110, 111), Plaintiffs argue (at 12) that the University Defendants made content- and viewpoint-based enforcement decisions under the Policy. Plaintiffs assert that the Policy regulates "the combination of area (campus property) and time (after curfew)," yet the University Defendants did not enforce the Policy against fraternity members and pro-Israel protesters who were present in "the exact same place at the exact same time as Plaintiffs." Plaintiffs once again misinterpret the Policy.

7

The motion to dismiss makes clear (at 14-15) that the Policy prohibits specific conduct—camping and overnight occupancy. [Doc. 90 at Ex. 4] The response says (at 3) that fraternity members were "partying, drinking, and videotaping" the events. Pro-Israel protesters, says the SAC (¶ 78), were "present." This conduct does not violate the Policy. The Policy prohibits no one's "presence." And it also prohibits no one from "partying, drinking, and videotaping." There was no content- or viewpoint-based discrimination.

### 2. Any constitutionally protected activity was not a substantial or motivating factor in the University Defendants' conduct.

#### a. Plaintiffs' challenges to their arrests fail.

The motion to dismiss provides (at 16-17) the legal standard that Plaintiffs had to meet to state retaliatory arrest claims. A retaliatory arrest claim generally requires a plaintiff to allege facts plausibly establishing "the absence of probable cause." *Bellis v. Navajo Cnty.*, No. CV-23-08125, 2024 WL 3202332, at *7 (D. Ariz. June 27, 2024) (citing *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019)). No Plaintiff meets this test.

To start, the response does not dispute that probable cause supported the arrests for 15 Plaintiffs—all except Harry Smith and Michael Clancy. Any retaliatory arrest claim brought by those 15 Plaintiffs must therefore be dismissed. *See, e.g.*, *id.*

As for Mr. Smith and Mr. Clancy, the SAC alleges no facts plausibly showing that the University Defendants lacked probable cause to arrest them. The response insists (at 14) that Mr. Smith and Mr. Clancy did not need to plead that they "were not committing an exhaustive list of infractions" to plausibly allege that their arrests were "unwarranted."

That's not the standard. The University Defendants never argued that Mr. Smith and Mr. Clancy had to catalog every crime they believe they never committed at the protest. But they must allege facts plausibly establishing "the absence of probable cause." *Id.* Probable cause is "not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citation omitted). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (citation omitted). Courts review "the events leading up to the arrest[] and then decide whether these historical facts, viewed

from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* at 56-57 (citation omitted). Here, the SAC alleges no facts about the events leading to Mr. Smith's and Mr. Clancy's arrests, including their specific activities on ASU's campus. The SAC merely labels (¶¶ 67, 69, 98) the arrests "unwarranted." Those allegations are precisely the sort of "'naked assertions' devoid of 'further factual development'" that *Iqbal* condemns. 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### b.    Plaintiffs' challenges to their suspensions fail.

The motion to dismiss demonstrates (at 15-18) that the SAC also alleges no facts plausibly establishing that any constitutionally protected activity was a "substantial or motivating factor" in any University Defendant's conduct relating to Plaintiffs' suspensions. *Killgore v. City of South El Monte*, 860 F. App'x 521, 522 (9th Cir. 2021). Plaintiffs claim (at 10-12) that the SAC meets this requirement (¶¶ 77-80). They're wrong.

*First*, Plaintiffs argue that paragraph 77 alone is enough because it alleges that "ASU" imposed suspensions on Plaintiffs "based solely []on" the pro-Palestinian messages that Plaintiffs expressed at the protest. Not so. The SAC's "bald allegation of impermissible motive" is "conclusory and is therefore not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).

*Second*, Plaintiffs pivot to paragraphs 78 through 80 to purportedly contrast the University Defendants' "enforcement practices" under the Policy. *Mandel v. Bd. of Trs. of Cali. State Univ.*, No. 17-CV-03511, 2018 WL 5458739, at *15 (N.D. Cal. Oct. 29, 2018) (citation omitted). Plaintiffs allege that the University Defendants enforced the Policy against them, but not fraternity members and pro-Israel protesters who were present in "the exact same place at the exact same time as Plaintiffs." The University Defendants have debunked this selective enforcement theory many times. *See* Argument § II(A)(1)(d); [Doc. 89 at 14-18]. The SAC alleges no facts plausibly supporting it.[4]

---

[4] The response cites (at 14) *O'Brien v. Welty* for support. But *O'Brien* recognizes that a plaintiff must allege facts "plausibly show[ing] that the defendants' actions in

1    *Third*, the SAC lacks facts plausibly showing "but-for causation"—meaning that

2    any "adverse action against [Plaintiffs] would not have been taken absent [a] retaliatory

3    motive." *Kirwin v. Kot*, No. CV-22-00471, 2024 WL 911745, at *9 (D. Ariz. Mar. 4,

4    2024) (citation omitted). Neither the SAC nor the response even tries to suggest that had

5    Plaintiffs expressed other views on ASU's campus while protesting as occupants with

6    "encampment tents," any University Defendant would have done anything different.

7        **B.    Plaintiffs cannot recover their requested relief.**

8        Plaintiffs have apparently abandoned any official capacity claims that the SAC

9    asserted against the University Defendants. The motion to dismiss explains (at 19-20) that

10   (a) the Eleventh Amendment prohibits retrospective relief against the University

11   Defendants named in their official capacities and (b) the SAC alleges no facts plausibly

12   showing that the University Defendants can provide the requested injunctive relief. The

13   response does not mention—much less counter—either argument. And it describes the

14   SAC as though it brought only personal capacity claims against the University

15   Defendants. [*See* Doc. 97 at 14 (referring only to "individual capacity claim[s]")]

16       For the claims against the University Defendants in their personal capacities, the

17   motion to dismiss establishes (at 20-22) that the University Defendants are entitled to

18   qualified immunity. The SAC alleges no facts plausibly showing that any University

19   Defendant violated any Plaintiff's First Amendment free speech rights. *See* Argument §§

20   I and II(A). And it also lacks facts plausibly establishing that any constitutional right was

21   clearly established. The response resists this outcome (at 19), but it fails at every level.

22       *First*, the response defies the Supreme Court's instruction "not to define clearly

23   established law at a high level of generality." *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th

24   Cir. 2020) (citation omitted). Plaintiffs contend that the question here is whether "public

25   education staff may [] target students for discipline for engaging in political

26

27   _____

28   disciplining him were substantially motivated by his protected speech or expressive

     conduct." 818 F.3d 920, 932 (9th Cir. 2016). That's the standard the SAC fails to meet.

demonstration." That's as general as it gets. This "overbroad proposition, cast at a high level of generality, is just the sort of sweeping statement of the law that is inappropriate for assessing whether qualified immunity applies." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022) (citations omitted).

*Second*, the response claims that a decision from the Idaho District Court "placed public schools on notice that they may not retaliate against sit-in protesters." *See Gonzales ex rel. A.G. v. Burley High Sch.*, 404 F. Supp. 3d 1269 (D. Idaho 2019). This, too, is an "overbroad proposition . . . that is inappropriate for assessing whether qualified immunity applies." *Sabra*, 44 F.4th at 888. At any rate, "a single district court decision . . . does not qualify as a controlling authority or a robust consensus of cases of persuasive authority." *Ames v. City of Tempe*, 665 F. Supp. 3d 1013, 1044 n.25 (D. Ariz. 2023).

*Third*, *Gonzales* could not have placed the "constitutional question beyond debate." *Lamorie v. Davis*, 485 F. Supp. 3d 1065, 1069 (D. Ariz. 2020) (citation omitted). There are several significant differences between these cases. To name just a few, *Gonzales* arose from a high school, not a university. *See* 404 F. Supp. 3d at 1275. It also involved a "sit-in" protest that lasted for about "two minutes" during "an early morning cheer practice," not a protest involving "encampment tents" that lasted all day and into the night in violation of a valid time, place, and manner restriction on expressive conduct. *Id.* at 1275, 1277. Thus, even if *Gonzales* counted as "precedent" for qualified immunity purposes, it still "fails to address how the specific right that Plaintiff[s] invoke[] applies in the specific factual scenario [they] allege[]." *Lamorie*, 485 F. Supp. 3d at 1071.

**III.    Count 2 fails to state a claim on which relief can be granted.**

####    A.    Plaintiffs cannot sue ABOR because ABOR is immune from suit under the Eleventh Amendment.

"ABOR is a division of the State of Arizona entitled to sovereign immunity." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016). The response argues (at 19-21), though, that the "Eleventh Amendment does not immunize" ABOR because the State of Arizona waived its sovereign immunity over 60 years ago. But no

matter whether the State of Arizona consented to suit (or liability) in state court, it has not waived its Eleventh Amendment immunity in federal court for all suits. It's thus no surprise that the response cites no case from any court in this country at any time over the last six decades adopting this novel interpretation. Nor does A.R.S. § 15-1864 waive ABOR's Eleventh Amendment immunity. Nothing in the statute's "plain language" or "legislative history" shows any "intent to consent to suit in federal court." *Klein v. Ariz. State Univ.*, No. CV-20-01982, 2020 WL 7404564, at *3 (D. Ariz. Dec. 17, 2020).

**B.** **The Eleventh Amendment also bars Count 2 against the individual University Defendants.**

State officials sued in their official capacities generally have "the same" Eleventh Amendment immunity as the State. *Essif v. Ariz. Bd. of Regents*, No. CIV 19-00596, 2021 WL 673396, at *4 (D. Ariz. Feb. 22, 2021) (citation omitted). The *Ex Parte Young* exception allows a party to seek "prospective injunctive relief against an individual state officer in her official capacity." *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018). But this exception "does not apply when[, as here,] a suit seeks relief under state law." *Id.* Plaintiffs' official capacity claims thus fail as a matter of law.

Nor does Count 2 state a claim on which relief can be granted against the individual University Defendants named in their personal capacities. That's because A.R.S. § 15-1864(I) "only provides a cause of action in the official capacity." *Klein*, 2020 WL 7404564, at *4. The response argues (at 22) that *Klein* misinterpreted A.R.S. § 15-1864 because it does not say that faculty members and administrators may be held liable only "in their official capacities." But the Legislature had no reason to add that language when it authorized suit against people occupying only official positions ("faculty members" and "administrators"), unlike Section 1983, which authorizes suit against a "person."

**C.** **Even if Plaintiffs could bring Count 2, they would lack statutory authority to sue several University Defendants.**

For claims against individuals, A.R.S. § 15-1864(I) authorizes suit against only "faculty members" and "administrators." Plaintiffs thus had to allege facts plausibly establishing that every University Defendant falls within the statute's terms. The response

posits (at 22) that Plaintiffs met their burden for "all" 30 University Defendants because the SAC alleges their "titles" and "actions." Hardly. It would come as a shock to (for example) the University Defendants employed in the ASU Police Department to learn that they are "faculty members" or "administrators." Plaintiffs failed to meet their burden.

**D.    The SAC alleges no facts plausibly demonstrating that the University Defendants violated A.R.S. §§ 15-1864 or -1866.**

**1.    There was no content- or viewpoint-based discrimination.**

The University Defendants incorporate their arguments in Argument §§ I and II(A) on the lack of any content- or viewpoint-based discrimination. [*See also* Doc. 89 at 6-18]

**2.    Section 15-1866 merely requires ABOR to adopt a policy.**

The SAC alleges that the interim actions (¶¶ 113, 118, 119, 120) and disciplinary proceedings (¶¶ 123, 124, 125) violated Plaintiffs' procedural rights under A.R.S. § 15-1866. But as the motion to dismiss explains (at 24), Plaintiffs have no procedural rights under A.R.S. § 15-1866 because that statute merely requires ABOR to adopt a policy. The response claims (at 23) that this argument is "misleading." Yet that's exactly what the statute says. *See* A.R.S. § 15-1866(A) (ABOR "shall develop and adopt a policy on free expression that contains at least the following statements and requirements . . ."). To challenge how the University Defendants applied certain policies, Plaintiffs would have had to proceed through the administrative appeal process. *See* Argument § II(A)(1)(c).

**3.    Even if A.R.S. § 15-1866 conferred procedural rights on Plaintiffs, those rights would not apply to interim actions.**

In any event, A.R.S. § 15-1866(A)(5) applies only to "disciplinary proceedings." Interim actions are neither "disciplinary" nor "proceedings."

"Disciplinary" means "the punishment of someone who has not obeyed the rules." *Disciplinary*, Black's Law Dictionary (12th ed. 2024). Interim actions are "administrative actions," not "disciplinary sanctions," because ASU Deans of Students may impose them when they believe that a student who may have violated the Student Code of Conduct "poses a threat of harm or substantial disruption." [Doc. 90 at Ex. 23 §§ A, C] Interim actions "remain in effect until a final decision has been made on the pending charges or

13

until the Dean of Students believes that the reason(s) for imposing the interim action[s] no longer exist." [*Id.*] Interim actions are not disciplinary because they are imposed before any finding that a student has or has not violated the Student Code of Conduct. [*Id.*]

A "proceeding" is a "procedural means for seeking redress from a tribunal or agency." *Proceeding*, Black's Law Dictionary (12th ed. 2024). Interim actions provide no vehicle for students to seek redress on the pending charges. [*See* Doc. 90 at Ex. 23]

### 4. Plaintiffs failed to seek judicial review of the decisions to suspend them from ASU.

The University Defendants incorporate their arguments in Argument § II(A)(1)(c) on administrative res judicata principles barring the SAC's allegations about procedural rights violations in Plaintiffs' disciplinary proceedings. [*See also* Doc. 89 at 12, 18, 25]

## IV. This Court can and should consider public records and documents incorporated into the SAC by Plaintiffs when it rules on the motion to dismiss.

Plaintiffs quibble (at 6-8) about the University Defendants referring to (a) public records and (b) documents incorporated into the SAC by Plaintiffs. This argument fails.

**Public Records.** Exhibits 1-4, 22-23, and 41 are relevant ABOR and ASU policies. This Court can consider "public record[s]" like these when it rules on a motion to dismiss "without converting [it] into a motion for summary judgment." *Skilstaf, Inc. v. CVS Caremark*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (citation omitted).

**Incorporated Documents.** The "incorporation by reference" doctrine applies to the interim actions (Exhibits 5-21) and decision letters (Exhibits 24-40). *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Plaintiffs do not dispute that the SAC alleges these documents' "contents." *Id.* (citation omitted). Nor could they. [*See* Doc. 75 ¶¶ 70, 72, 73, 85, 86, 87, 96] Plaintiffs also do not dispute that the University Defendants attached authentic copies. [Doc. 97 at 7 ("not disput[ing] . . . authenticity")] These exhibits thus check all the boxes for the "incorporation by reference" doctrine.

### Conclusion

This Court should dismiss the SAC for failure to state a claim on which relief can be granted in full with prejudice and without leave to amend.

1

RESPECTFULLY SUBMITTED this 3rd day of June, 2025.

2

**COPPERSMITH BROCKELMAN PLC**

3

By  s/ Austin C. Yost

4

Keith Beauchamp
D. Andrew Gaona
Austin C. Yost
Andrew T. Fox

5

6

*Attorneys for University Defendants*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28