David J. Bodney (006065)
Matthew E. Kelley (037353)
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595
Email: kelleym@ballardspahr.com

*Attorneys for Non-Parties the Anti-Defamation*
*League and Jonathan Greenblatt*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Aida Esmeralda Campos, et al., | NO. 2:24-CV-00987-JJT |
| Plaintiffs, | **MOTION OF NON-PARTIES ANTI-DEFAMATION LEAGUE AND JONATHAN GREENBLATT TO QUASH SUBPOENAS** |
| vs. | |
| Michael Crow, et al., | |
| Defendants. | (Oral Argument Requested) |

Pursuant to Federal Rule of Civil Procedure 45(d)(3) and LRCiv 7.2, non-parties Anti-Defamation League ("ADL") and Jonathan Greenblatt (together, the "Non-Parties") respectfully move this Court for an order quashing the subpoenas that Plaintiffs recently caused to be served on them. These subpoenas should be quashed because (1) they were issued for a patently improper purpose – namely, to harass these non-parties based on an ideological difference, (2) they do not seek relevant information, (3) they are overbroad, (4) some of the materials sought are protected by the journalist's privilege, which Plaintiffs cannot overcome, and (5) they would impose an undue burden on these Non-Parties. This Motion is supported by the following memorandum of points and authorities.

### Preliminary Statement

This lawsuit involves alleged violations of the First Amendment rights of 17 students by Arizona State University ("ASU") for disciplining them over their participation in a protest against Israel's war in Gaza. The case does *not* involve a determination of which side of the Israeli-Gaza conflict holds the moral high ground, as this Court has

recognized. *Campos v. Ariz. Bd. of Regents*, No. CV-24-00987-PHX-JJT, 2025 U.S. Dist. LEXIS 143541, at *3-4 (D. Ariz. July 28, 2025). And, contrary to the public proclamations of Plaintiffs' counsel, this suit is *not* a vehicle to explore baseless conspiracy theories that the ADL and Mr. Greenblatt, its CEO and National Director, acted surreptitiously to suppress lawful student protests on this topic on university campuses across the country.

In recent years, the ADL and Mr. Greenblatt have called on colleges and universities to protect Jewish students, faculty and staff from acts of antisemitic harassment, and to respond when Gaza-related protests descend into violence or other lawless conduct on campus. ADL's First Amendment-protected advocacy is part of its mission: "to stop the defamation of the Jewish people and to secure justice and fair treatment to all." *See* Our Mission and History, ADL.com, https://www.adl.org/about/mission-and-history. *But in public statements on social media about this lawsuit, Plaintiffs' counsel has falsely accused ADL of being "an arm of the Israeli government" and, referring to Mr. Greenblatt, has announced his plan to take "that punk's deposition" and expose ADL's "dirty reasons" for "trying to suppress speech of American citizens on university campuses."*[1]

That animosity is evident in the four subpoenas Plaintiffs' counsel directed at these Non-Parties. Plaintiffs seek 52 categories of documents from ADL, 37 categories of documents from Mr. Greenblatt, and a deposition on 58 topics from an ADL representative. The subpoenas range far afield from any possible relevance, including the Non-Parties' communications with donors, other community organizations and elected officials, and every single one of their public statements regarding broad topics such as "Hamas, Israel, Palestine, Gaza, antisemitism, [and] terrorism" – in other words, every public statement made by the nation's leading nonprofit organization battling antisemitism in recent years.

These are not the first subpoenas Plaintiffs' counsel aimed at these two Non-Parties, though they are the most egregiously burdensome. In November 2025, Plaintiffs' counsel served subpoenas for documents and the deposition of Mr. Greenblatt, and an identical

---

[1] *See* https://www.tiktok.com/@thelitig8or/video/7571268377197481247 (posted Nov. 10, 2025).

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

2

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

subpoena for documents on ADL.  Those initial document subpoenas would have burdened the Non-Parties with overbroad requests for irrelevant information, including *all* recorded statements that Mr. Greenblatt has *ever* made about student protestors, regardless of topic. Undersigned counsel objected, including on the grounds that Plaintiffs needed, at an absolute minimum, to exhaust alternative sources for such discovery – for example, by deposing the Defendant – to determine what materials, if any, would even be relevant. After discussions among counsel, the Non-Parties agreed to provide a list of 85 other colleges and universities to which ADL had sent nearly identical messages about student protests in exchange for Plaintiffs' counsel withdrawing the first three subpoenas.

Now, barely five months later, Plaintiffs have returned with four subpoenas seeking considerably more baseless information and imposing substantially more onerous burdens on ADL and Mr. Greenblatt.  *Plaintiffs' subpoenas are calculated to inflict, not avoid, undue burden and expense.  See* Fed. R. Civ. P. 45(d)(1).  These latest subpoenas are plainly aimed to burden the Non-Parties with the crushing prospect of responding to requests for scores of broad and intrusive categories of documents and deposition topics unrelated to the protests at ASU that led to the Plaintiffs' arrests.

Like the initial three subpoenas, these four subpoenas call for materials and information the ADL and Mr. Greenblatt gathered in the course of producing publications regarding antisemitism and student protests that is protected by the journalist's privilege under the First Amendment and Arizona law.  Plaintiffs' counsel's own social media posts irrefutably demonstrate that these subpoenas are meant to harass the Non-Parties in furtherance of Plaintiffs' counsel's personal agenda rather than gather any *relevant* evidence for *this* lawsuit.  They should be quashed as a matter of law.

### Factual and Procedural Background

In this action, the Plaintiffs allege that the disciplinary actions that Arizona State University took after their arrests on April 26, 2024, at a protest of the Israel-Gaza conflict violated their First Amendment rights.  After this Court granted in part Defendants' motions to dismiss, the sole surviving federal claim in this action is against ASU President

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Michael Crow, asserting that he violated 28 U.S.C. § 1983 by retaliating against the students for their exercise of their First Amendment rights. *See Campos*, 2025 U.S. Dist. LEXIS 143541, at *9. Also pending is Plaintiffs' state-law claim against Dr. Crow for allegedly violating A.R.S. § 15-1864, which protects students' rights to protest, subject to reasonable time, place and manner restrictions.[2] *Id.*

The Second Amended Complaint ("SAC") includes an allegation that Dr. Crow and ASU officials "engaged in extensive communication and preparation" with "affiliates of political organizations such as the [ADL]" with the alleged goal of "preventing or squashing any public demonstrations" against U.S. weapons sales to and support of Israel. SAC ¶ 46. Plaintiffs alleged that four days before the arrests, Mr. Greenblatt contacted Dr. Crow and "explicitly called for ASU to prepare and coordinate with law enforcement in order to impose clear and immediate consequences" on student protestors. *Id.* ¶ 47. These are the only references to the Non-Parties in the SAC.

In November 2025, Plaintiffs' counsel served on Mr. Greenblatt subpoenas to produce documents and for a deposition, *see* Exs. A and B (the "First Greenblatt Subpoenas"), and then served on ADL's corporate representative a subpoena to produce documents nearly identical to that served on Mr. Greenblatt. *See* Ex. C (the "First ADL Subpoena," and together with the First Greenblatt Subpoenas, the "First Subpoenas"). The First Subpoenas requested all communications since October 7, 2023 between Mr. Greenblatt and ADL, on the one hand, and Dr. Crow and any other ASU faculty or staff member, on the other, as well as all communications with any college or university about student protests related to 'Palestine', 'Gaza', 'Israel', 'October 7', 'Jews', and/or 'Judaism,'" and any recordings of interviews or statements Mr. Greenblat had given regarding student protestors. Ex. A at 5; Ex. C at 5.

Counsel for the Non-Parties served detailed objections to the First Subpoenas on Plaintiffs' counsel on December 3, 2025. *See* Ex. D (Non-Parties' objections). Among

---

[2] This Court has stayed litigation of the state-law count pending resolution of an interlocutory appeal to the Ninth Circuit. *See* 9/22/25 Order (Dkt. 117).

other issues, the ADL explained that the information and materials sought by the Subpoenas were available from *parties* such as Dr. Crow. *See id.* The letter further argued that any materials that were *not* available from named parties were irrelevant because they were likely neither reviewed nor relied on by any party regarding the events at issue. *Id*. On December 9, Plaintiffs' counsel declined to withdraw the Subpoenas. *See* Ex. E (Plaintiffs' response letter). Counsel for the Non-Parties subsequently met and conferred with Plaintiff's counsel and reached an agreement by which the ADL provided Plaintiff's counsel with a list of the 85 colleges and universities to which it sent emails nearly identical to the one sent to ASU, and Plaintiffs' counsel agreed to withdraw the First Subpoenas.

On April 28, 2026, Plaintiffs' counsel emailed counsel for the Non-Parties stating his intention to serve renewed document and deposition subpoenas on Mr. Greenblatt. *See* Ex. F (Plaintiffs' counsel's email). Plaintiffs' counsel stated that at Dr. Crow's deposition in March, "we learned about a number of things such as an antisemitism report card that was created in or around April 2024, multiple other communications with Mr. Crow and Greenblatt surrounding that score card among other things,"[3] that he asserted justified further discovery from the Non-Parties. Ex. F at 1.

Subsequently, on May 15, 2026, Plaintiffs issued four subpoenas to the Non-Parties: subpoenas *duces tecum* to Mr. Greenblatt and ADL, respectively (together, the "Documents Subpoenas") and subpoenas for Mr. Greenblatt's and ADL's depositions, respectively (the "Deposition Subpoenas," and together with the Documents Subpoenas, the "Subpoenas"). The Documents Subpoenas are *far broader* than the First Subpoenas, seeking 37 categories of documents from Mr. Greenblatt and 52 categories of documents from ADL. *See* Ex. G (the "Greenblatt Document Subpoena"); Ex. H (the "ADL Document Subpoena"). Similarly, the subpoena seeking ADL's deposition requests

---

[3] Numerous materials related to ADL's antisemitism report cards are *publicly available* on ADL's website. *See, e.g.,* https://www.adl.org/antisemitism-campus; https://www.adl.org/campus-antisemitism-report-card; https://www.adl.org/campus-antisemitism-report-card-case-studies (specifically discussing ASU's report card). The Non-Parties assume that, in the course of this litigation, ASU surely disclosed email communications related to ASU's report card *before* Plaintiffs issued the First Subpoenas.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

testimony on 58 topics.  *See* Ex. I (the "ADL Deposition Subpoena"); *see also* Ex. J (the "Greenblatt Deposition Subpoena").

Counsel for the Plaintiffs and the Non-Parties met and conferred on May 22, 2026, during which counsel for the Non-Parties reiterated their objections that the Subpoenas were harassing, overbroad, unduly burdensome and sought irrelevant information. Although Plaintiffs' counsel said he was willing to narrow the categories of documents and testimony sought, he declined to withdraw the subpoenas, saying he intends to depose both Mr. Greenblatt and an ADL representative next, focusing on such irrelevant topics as the intent behind the Non-Parties' communications with ASU and other universities.  The two sides did not reach an agreement.

## **Argument**

Rule 45(d) requires the party or attorney serving a subpoena on a nonparty to "take reasonable steps to avoid imposing undue burden or expense" on the subpoena recipient and requires a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden."  As this Court has observed, "[n]on-parties are entitled to special consideration when it comes to subpoena requests under Rule 45."  *In re Subpoenas for Deposition Testimony of Dr. Bruce Bethancourt*, No. MC-23-00038-PHX-JJT, 2023 U.S. Dist. LEXIS 194813, at *3-4 (D. Ariz. Oct. 31, 2023) (citing *Dart Industries Co., Inc. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980)).

Courts affording this special consideration should "weigh the burden to the subpoenaed party against the value of the information to the serving party," considering "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed."  *Id.* at *4 (citation omitted).  The court also "may evaluate whether information requested through a non-party subpoena is readily available from a party."  *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81-82 (D. Ariz. 2022) (citation omitted).

Here, those factors call for quashing the Subpoenas served on the Non-Parties.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Unlike the circumstances in most non-party discovery efforts, these Subpoenas are calculated to harass the ADL. Plaintiffs' counsel's own social media pronouncements demonstrate that the Subpoenas are an improper and harassing attempt to further an ideological agenda against these Non-Parties rather than a good-faith attempt to gather evidence relevant to this lawsuit. This improper purpose is only clarified by the parties' course of dealing, wherein counsel for the Non-Parties negotiated with Plaintiffs' counsel in good faith to reach a compromise regarding the scope of discoverable information, only for Plaintiffs to return a few months later with *even broader* requests (including over *nine times* as many categories of documents and *nearly five dozen* deposition topics). Their aim seems punitive and performative, not in service of necessary or proper discovery.

This expanded scope of requested discovery does not reflect any apparent effort by Plaintiffs' counsel to respond to the ADL's objections or comply with the rules. Instead, the Subpoenas seek *even more* irrelevant information than the first round, such as information related to ADL's donors and ADL's communications with elected officials. They are overbroad, requesting communications with universities other than ASU, ADL's internal processes and methodologies for evaluating *other institutions'* efforts to combat antisemitism, and all recorded statements Mr. Greenblatt has made about student protestors in *any* context in the last nearly three years. They improperly seek materials covered by the journalist's privilege recognized under Arizona law and the First Amendment. And they are unduly burdensome, requiring Non-Parties to comb through years' worth of records and communications that are either entirely unrelated to the issues in this case or that are equally available from Dr. Crow and/or ASU.

## I.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY WERE ISSUED FOR AN IMPROPER PURPOSE AND ARE HARASSING.

This Court should quash the Subpoenas because they were issued for an improper, ideologically driven purpose to harass the Non-Parties, rather than a legitimate effort to obtain relevant, admissible evidence to advance Plaintiffs' claims in this case.

Rather than leaving the ADL and the Court to guess at the possible motivation behind these Subpoenas, Plaintiffs' counsel has explained his goals quite clearly on social

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

media.    Approximately one week before he served the First Greenblatt Subpoenas, Plaintiffs' counsel posted a video to his TikTok account discussing this litigation and explaining that he was trying to serve subpoenas on the Non-Parties.    *See* https://www.tiktok.com/@thelitig8or/video/7571268377197481247 (posted Nov. 10, 2025).    In the video, Plaintiffs' counsel baselessly accused ADL of being "an arm of the Israeli government" and said: "I want you all to know that I am currently trying to serve Jonathan Greenblatt's subpoena, 'cause I plan to take that punk's deposition by video, so that it's recorded . . . I want video and audio of everything he says, 'cause I am going to get into all of the dirty reasons why ADL was trying to suppress speech of American citizens on university campuses." *Id.*  The following are screenshots from that video:

   

In other words, Plaintiffs' counsel announced to the world that he wants to question Mr. Greenblatt not about anything he said to ASU officials but about the accusation that Mr. Greenblatt and ADL were "trying to suppress speech" on university campuses across the country.  Consistent with this apparent goal, the Subpoenas request documents related to ADL's strategies and communications with *any* university.  *See* Ex. H, Request Nos. 20, 37, 38; *see also* Ex. G, Request Nos. 11-15, 17.  What Mr. Greenblatt and ADL did or said regarding protests at other universities is utterly irrelevant to what Dr. Crow and ASU did regarding *these* Plaintiffs.  Of course, if there is evidence that Dr. Crow considered ADL's and Mr. Greenblatt's advocacy regarding other universities, Plaintiffs can obtain that information from Dr. Crow and his staff rather than burdening nonparties.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Plaintiffs' counsel's ideological agenda against the ADL is evident across his social media postings.[4]  It is also evident from Plaintiffs' course of dealing related to these Subpoenas.  After the ADL's counsel worked in good faith to reach a compromise to disclose limited information to Plaintiffs to resolve the First Subpoenas, Plaintiffs wasted no time returning a few months later with vastly expanded requests for more information.

The Subpoenas include requests for information with no reasonable connection to this case and seem intentionally targeted to troll for information Plaintiffs' counsel may attempt to use in his public criticism of the ADL.  For example, the Subpoenas seek a broad range of ADL's and Mr. Greenblatt's communications with elected officials, law enforcement agencies, donors, and advocacy groups that are unrelated to ASU or the Plaintiffs.  *See* Ex. H, Request No 34, 36; Ex. G, Request No. 21, 22.  The Subpoenas also seek to collect ADL's and Mr. Greenblatt's data from various identified communications – copies of which Plaintiffs apparently already possess from other parties.  *See* Ex. H, Request Nos. 43-50, Ex. G, Request Nos. 28-34.  These requests are untethered to any legitimate need for this lawsuit.

Although Plaintiffs' counsel has a First Amendment right to express his political beliefs, including his opinions about these Non-Parties, he is *not* entitled to weaponize the legal system against his perceived ideological opponents without any legitimate litigation purpose.  *See* Fed. R. Civ. P. 26(c)(1) (allowing the court to issue orders as necessary to

---

[4] *See, e.g.,* https://www.tiktok.com/@thelitig8or/video/7575594280765492511 (posted Nov. 22, 2025) (criticizing a political candidate as a "Zionist dipshit"); https://www.tiktok.com/@thelitig8or/video/7571941500880178462 (posted Nov. 12, 2025) (labeling Mr. Greenblatt as one of the "key figures" of Israeli propaganda in the United States and questioning why his profile appeared on congress.gov when it was clear from the actual post that it related to Mr. Greenblatt's testifying before Congress). Plaintiffs' counsel also serves on the board of the local Arizona Council on American-Islamic Relations ("CAIR"), which also frequently criticizes the ADL Parties.  *See* https://cair-az.org/about-us/board-of-directors/david-chami/; *see, e.g., 60+ Muslim, Arab & Allied Groups Condemn ADL for Anti-Palestinian Hate, Call for Firing of CEO Greenblatt*, CAIR (Apr. 15, 2024), https://www.cair.com/press_releases/60-muslim-arab-allied-groups-condemn-adl-for-anti-palestinian-hate-call-for-firing-of-ceo-greenblatt/; *BREAKING: CAIR Condemns ADL CEO Greenblatt's 'Unhinged, Racist Rant' Against Black, Palestinian Americans*, CAIR (June 7, 2025), https://www.cair.com/press_releases/breaking-cair-calls-on-adl-to-fire-ceo-jonathan-greenblatt-after-unhinged-racist-rant-against-black-palestinian-americans/.

protect against annoyance, embarrassment, oppression, or undue burden or expense).  In brief, the Subpoenas are not a legitimate use of the Court's subpoena power, and they therefore should be quashed forthwith.

## II.    THE SUBPOENAS SHOLD BE QUASHED BECAUSE THEY DO NOT SEEK RELEVANT INFORMATION.

A subpoena issued under Rule 45 is subject to the relevance standard of Rule 26. *See Xcentric Ventures, L.L.C. v. Borodkin*, 934 F. Supp. 2d 1125, 1144 (D. Ariz. 2013) ("Any information sought by means of a subpoena must be relevant to the claims and defenses in the underlying case.  More precisely, the information sought must be reasonably calculated to lead to admissible evidence.").  This ordinary relevance standard "is heightened in the context of nonparty subpoenas." *Oyenik v. Corizon Health,* No. CV-13-01597-PHX-SPL (BSB), 2014 U.S. Dist. LEXIS 204433, at *1-2 (D. Ariz. Nov. 20, 2014) (citing *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986)).  To obtain discovery from a nonparty, the requesting party "must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure." *Id*. (citation omitted).

The Subpoenas do not come close to meeting this high bar.  Plaintiffs' apparent "hook" for dragging Mr. Greenblatt and ADL into this matter is a single communication produced in discovery:  an April 22, 2024 email from Mr. Greenblatt to Dr. Crow.  In that email, Mr. Greenblatt offered thoughts and recommendations regarding how to protect Jewish students in the context of then-recent protests on college campuses related to the Israel-Gaza conflict.  *See* SAC ¶ 47 (referencing the email).

Given its mission, ADL naturally has spoken widely and publicly on this topic in recent years.[5]  It is hardly surprising that ADL also directed some of its advocacy on this subject directly to the leaders of universities.  Indeed, as ADL told Plaintiffs' counsel, the information contained in the email to Dr. Crow was not substantively different from

---

[5] *See, e.g. Two Years of Turmoil: The Strategic Evolution of Anti-Israel Activism on U.S. Campuses and 2025-2026 Challenges*, ADL (Nov. 19, 2025), https://www.adl.org/resources/report/two-years-turmoil-strategic-evolution-anti-israel-activism-us-campuses-and-2025; John Towfighi, *US colleges are making substantial progress on campus antisemitism, but work remains, ADL says*, CNN (Mar 3, 2025), https://www.cnn.com/2025/03/03/business/antisemitism-grades-colleges.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

information ADL posted on its website and was virtually identical to emails sent to dozens of other universities at the same time. *See* Ex. K, Declaration of Shira Goodman at ¶¶ 2-3 & its Ex. A (list of 85 colleges and universities to which substantially identical email was sent). This direct advocacy apparently is the target of these Subpoenas but is irrelevant to this litigation and does not justify burdening the Non-Parties with nonparty discovery in this matter.

Plaintiffs have stated that communications between these Non-Parties and ASU officials are "evidence of influence, coordination, notice and motive regarding campus protest responses." Ex. E at 3. But party discovery is the vehicle to gather that evidence. Plaintiffs cannot cite any reason to believe such information is possessed only by the Non-Parties rather than Dr. Crow and/or ASU.

Plaintiffs have not asserted, nor could they explain, why party discovery is purportedly inadequate and how evidence from the Non-Parties would be relevant to Dr. Crow's rationale for his actions that are at issue in this litigation. Nor have Plaintiffs pursued other avenues for obtaining the information they seek, such as simply reviewing the extensive publicly available information regarding the topics listed in the Subpoenas.

The Subpoenas also seek communications with universities other than ASU. *See, e.g.,* Ex. H, Request Nos. 16-19, 22, 37, 38, 51; Ex. G, Request Nos. 11-17, 21. Plaintiffs have asserted that such communications "are likely to demonstrate ADL/Mr. Greenblatt's advocacy, talking points, and recommended law-enforcement coordination disseminated nationally and then applied at ASU." Ex. E at 3. But any communications that Dr. Crow or ASU did *not* receive are irrelevant; they could not possibly have affected anything Defendants did regarding Plaintiffs. This is purely fishing for information in support of Plaintiffs' counsel's personal opposition to the ADL. If the statements of Mr. Greenblatt or the ADL were communicated to or adopted by ASU decisionmakers, that information can be obtained from Dr. Crow or ASU.[6] If not, it is irrelevant.

---

[6] Dr. Crow's deposition is currently unavailable to the Non-Parties, leaving them unable to evaluate whether Dr. Crow was asked to identify *any* communications or documents from ADL that he actually reviewed or relied on in connection with his actions at issue in this litigation. For this reason, the ADL supports Dr. Crow's effort to limit access to his

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Put simply, there is no reason why the ADL's speech on these subjects is relevant to whether Dr. Crow can be held liable for infringing Plaintiffs' First Amendment rights. Of course, to the extent that Plaintiffs believe that Dr. Crow may have been improperly influenced by ADL or Mr. Greenblatt in some way that affects the merits of their claims, they can obtain that information via document and deposition discovery from Dr. Crow without burdening any nonparties. *See Williams & Cochrane LLP v. REDW LLC*, No. MC-20-00023-PHX-SMB, 2020 U.S. Dist. LEXIS 138296, at *15 (D. Ariz. Aug. 3, 2020) (quashing a subpoena for nonparty accounting firm's records because the documents could be obtained from firm's client, "which is actually a party to the underlying litigation"). The Non-Parties have no relevant evidence to contribute to this case that cannot be obtained from Dr. Crow and ASU, and certainly nothing of such necessity to outweigh their significant interests in avoiding the burden and expense of complying with these Subpoenas. This Court should quash the Subpoenas on this basis alone.

## III.   THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY ARE OVERBROAD.

The Subpoenas are also improper because they are significantly overbroad. *See Oyenik*, 2014 U.S. Dist. LEXIS 204433, at *5 ("Overbroad subpoenas must be quashed or modified because they impose an undue burden on the subpoenaed party.").

The Subpoenas seek various records and communications between ADL and/or Mr. Greenblatt, on the one hand, and *any other college or university anywhere*. *See* Ex. H, Request Nos. 8, 14, 15, 17-19, 21-23. There is no reason why ADL's or Mr. Greenblatt's communications with *other* universities have any relevance to Plaintiffs' claims in this case. These requests are exactly the type of "fishing expedition" that the discovery rules forbid. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); *Lewin v. Nackard Bottling Co.*, 2010 U.S. Dist. LEXIS 123738 at *1 (D. Ariz. Nov. 4, 2010) (finding that a

deposition transcript for use only in this case. *See* Joint Statement of Discovery Dispute Regarding Use of Dr. Crow's Videotaped Deposition (5/14/2026). If this request is granted and the Non-Parties can see what Plaintiffs' counsel asked Dr. Crow, they will be in a better position to protect their interests from this abusive discovery and identify potential alternative sources of the requested information.

subpoena requesting a party's entire personnel files from five former employers was a "fishing expedition" and should have been limited to "certain categories of documents").

ADL is an organization focused on combatting antisemitism. To subpoena all of its records concerning its analysis of antisemitism and anti-Zionism on any college campuses is yet another indication that the Subpoenas are overly broad and calculated to harass and offend Mr. Greenblatt and ADL. *See, e.g.,* Ex. H, Request Nos. 17, 19, 24. Seeking *all* of ADL's and Mr. Greenberg's public statements related to "Hamas, Israel, Palestine, Gaza, antisemitism, terrorism, SJP, [and] anti-Zionism" is impermissibly overbroad for the same reason. Ex. H, Request No. 31. Indeed, it would be hard to imagine how ADL's reporting on topics such as the number of antisemitic incidents in the world, the killing of two embassy workers in Washington, D.C., the Bondi Beach attack in Australia, Holocaust Remembrance Day and the Iran conflict could possibly be relevant to Plaintiffs' case, although each would be required to be produced under this request.

At the May 22 meet and confer, Plaintiffs' counsel said he would consider reducing the numerous categories of documents and deposition topics listed in the Subpoenas. But he made it clear that he wants the ADL depositions and documents, and they are his next discovery priority. This is no surprise: Plaintiffs' first discovery targets in this case were ADL and Mr. Greenblatt, and they only backed down and deposed the Defendant after meeting and conferring with undersigned counsel. But the ink has barely dried on the Crow deposition transcript, and Plaintiffs have doubled down on their attempt to use this case to bludgeon ADL with burdensome and irrelevant discovery. For example, Plaintiffs' counsel admitted he wants to depose Mr. Greenblatt and the ADL about the "methodology" used for the ADL's Campus Antisemitism Report Card.[7] There is every reason for ADL to oppose this burdensome, intrusive and harassing discovery, and for the Court to forbid it.

What matters for the purposes of this Motion are the words of the Subpoenas, not any vague and nonbinding offers to limit their scope. *See, e.g.*, *Games2U, Inc. v. Game Truck Licensing, LLC*, No. MC-13-00053-PHX-GMS, 2013 U.S. Dist. LEXIS 114907, at

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

---

[7] The ADL explains its methodology and reasoning online. *See* https://go.adl.org/campus-antisemitism-report-card/faqs.

*6 (D. Ariz. Aug. 9, 2013) (although plaintiff had offered to limit its nonparty subpoena requests "to relevant, non-privileged, and non-work product protected documents," "such limiting language is not present in the subpoena and the Court will not accept post-hoc characterizations of the subpoena"). Moreover, "by making the offer to limit the subpoena upon consultation, Plaintiffs are essentially confirming that at face value, their subpoena is proportionately overbroad compared with their need for the documents, does not exhibit particularity, and would require [nonparties] to produce items of dubious relevance." *Walker v. AIU Ins. Co.*, No. CV-23-01641-PHX-JAT, 2024 U.S. Dist. LEXIS 196065, at *11 (D. Ariz. Oct. 29, 2024).

### IV.   PLAINTIFFS SHOULD BE DENIED DISCOVERY OF MATERIALS AND INFORMATION PROTECTED BY THE JOURNALIST'S PRIVILEGE.

The Subpoenas also should be quashed to the extent that they seek documents and information protected by the qualified journalist's privilege recognized under the First Amendment and Arizona law. This qualified privilege shields from discovery communications, notes, documents, and other material gathered for purposes of publication. *Shoen v. Shoen*, 5 F.3d 1289, 1291-92 (9th Cir. 1993) ("*Shoen I*") (under the First Amendment, "when facts acquired by a journalist in the course of gathering the news become the target of discovery, a qualified privilege against compelled disclosure comes into play").

The privilege applies to anyone gathering information for publication, not just those who work for traditional news organizations, because the First Amendment protects gathering and disseminating information generally. *Shoen I*, 5 F.3d at 1293 ("it makes no difference whether the intended manner of dissemination was by newspaper, magazine, book, public or private broadcast medium, or handbill because the press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion.") (cleaned up). The privilege therefore applies when the person invoking it "had the intent to use material – sought, gathered, or received – to disseminate information

14

to the public and such intent existed at the inception of the newsgathering process." *Id.* at 1293-94 (cleaned up).  A promise of confidentiality is not required.  *Id.* at 1295.

To overcome the journalist's privilege for protected information held by a nonparty, a civil litigant "must show that the material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case." *Shoen v. Shoen*, 48 F.3d 412, 418 (9th Cir. 1995) ("*Shoen II*"); *see also Phoenix Newspapers, Inc. v. Reinstein*, 240 Ariz. 442, 448-50 (App. 2016) (adopting under Arizona law the framework for the journalist's privilege set forth in *Shoen I* and *Shoen II*). Importantly, "there must be a showing of *actual* relevance; a showing of *potential* relevance will not suffice.  *Shoen II*, 48 F.3d at 416 (emphasis added).  Arizona's federal courts have repeatedly quashed subpoenas seeking materials protected by the journalist's privilege when litigants failed to meet the *Shoen* requirements.  *See, e.g.*, *Salazar v. City of Phoenix*, 2021 U.S. Dist. LEXIS 224250, at *1-3 (D. Ariz. Nov. 18, 2021); *Gonzales v. Phoenix Police Dep't*, 2006 U.S. Dist. LEXIS 26130, at *1-3 (D. Ariz. May 2, 2006).

Here, the journalist's privilege applies to the Non-Parties' gathering of information for ADL's publications, which are unquestionably platforms of information and opinion. *Shoen I*, 5 F.3d at 1293; *see also* Ex. H, Request Nos. 8, 50, 51 (recognizing various ADL "publication[s]").  As part of its advocacy mission, ADL gathers and analyzes information about, for example, antisemitism on college campuses including ASU, and reports that information in publications such as its Campus Antisemitism Report Card.  *See* https://www.adl.org/campus-antisemitism-report-card; *see also supra* n.5 (collecting other ADL publications regarding campus antisemitism).  ADL also publishes eight newsletters, advertised for subscription on its website.  *See* https://www.adl.org/newsletter-signup. ADL's largest circulating newsletter, the Antisemitism Briefing, reaches over 300,000 subscribers.  Thus, communications by Mr. Greenblatt and ADL seeking and receiving information for publication and their documents containing, analyzing and commenting on that information, are materials protected by the journalist's privilege.  Indeed, at least one court has specifically held that materials gathered in the course of ADL's publishing

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

15

activities qualify for the journalist's privilege. *Anti-Defamation League of B'Nai B'Rith v. Superior Court*, 67 Cal. App. 4th 1072, 1098, 79 Cal. Rptr. 2d 597, 613 (1998).

As demonstrated above, Plaintiffs have not shown, and cannot show, that for the ADL's materials protected by the journalist's privilege, they have exhausted all reasonable alternative sources; that the material sought is not cumulative; or that it is clearly relevant to an important issue in this case. Indeed, Plaintiffs have plenty of alternative sources for their proposed discovery, as evidenced by their list of a dozen or so ASU officials identified in Plaintiffs' own Document Subpoena to ADL. See Ex. H, Request No. 3 (at 7). As noted above, Plaintiffs cannot show that the materials and testimony they seek are noncumulative and relevant. This Court should quash the Subpoenas to the extent they seek information protected by the journalist's privilege as matter of First Amendment law.

## V. THE SUBPOENAS SHOLUD BE QUASHED BECAUSE THEY WOULD IMPOSE AN UNDUE BURDEN ON MR. GREENBLATT AND ADL.

Finally, the Subpoenas should be quashed because they impose an undue burden on these Non-Parties. *See* Fed. R. Civ. P. 45(c)(3)(A)(iv). A subpoena is unduly burdensome when the burden on the subpoenaed party outweighs the value of the information to the serving party, considering factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, and the particularity with which the documents are described." *BBK Tobacco & Foods, LLP v. Skunk, Inc.*, 2020 U.S. Dist. LEXIS 83263, at *3 (D. Ariz. May 12, 2020).

Here, the burden on the ADL far outweighs any marginal value of the information to Plaintiffs. As shown above, the Subpoenas are facially overbroad and seek irrelevant information. Any ostensibly relevant information can be obtained from Dr. Crow or ASU. Plaintiffs have not shown, nor can they show, any legitimate need for these materials, particularly given the availability of party discovery and publicly available sources that Plaintiffs have not begun to explore.

Requiring ADL to search all of its files for its hundreds of employees for records about their efforts to catalog and combat antisemitism on college campuses would unnecessarily require significant time and expense, without providing any foreseeable

16

benefit to Plaintiffs' case.  Likewise, a day-long deposition of these Non-Parties would severely burden this nonprofit organization without providing any material benefit to Plaintiffs, who have already had the opportunity to obtain any relevant information in their deposition of Dr. Crow.  Forcing ADL to prepare its representatives and appear for a deposition on *58 topics* would be unduly burdensome for the same reason. Increasing the burden further, the topics themselves range from ADL's understanding of Title VI, the IHRA definition of antisemitism, and conditions at Columbia University to any statements about Hamas or terrorism and communications with donors about anti-Zionism or even the report card generally.  Ex. I Request Nos. 30, 34, 53 & 54.

In their response to ADL's and Mr. Greenblatt's objections to the First Subpoenas, Plaintiffs' counsel stated those Subpoenas were justified because "ASU's productions may omit, be incomplete concerning, or dispute third-party statements, and only ADL/Mr. Greenblatt can authenticate and complete the context of their own communications and media records." Ex. D at 2.  If Plaintiffs have good reason to believe that Dr. Crow's or ASU's discovery responses are incomplete, their proper recourse is a motion to compel those parties to produce, not to burden nonparties with overbroad, irrelevant and burdensome discovery requests based on pure speculation that party discovery *might* be incomplete.  The law is clear that "[a] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation." *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement Dist.*, No. 2:10-CV-00290-DAE-BGM, 2016 U.S. Dist. LEXIS 5674, at *69 (D. Ariz. Jan. 14, 2016).  This Court should do so here.

Plaintiffs have not shown and cannot demonstrate that their need for the requested materials outweighs the severe burdens that responding to the Subpoenas would impose on these Non-Parties.  The Subpoenas are demonstrably improper, and this Court should put a stop to them.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

## Conclusion

For the foregoing reasons, non-parties Anti-Defamation League and Jonathan Greenblatt respectfully request that this Court grant their Motion and issue an order quashing Plaintiffs' four subpoenas to them.

DATED this 27th day of May, 2026.

Respectfully Submitted,

BALLARD SPAHR LLP

By: /s/ *Matthew E. Kelley*
David J. Bodney
Matthew E. Kelley
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

*Attorneys for Non-Parties Anti-Defamation League and Jonathan Greenblatt*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

18

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

## **<u>CERTIFICATE OF CONSULTATION</u>**

Pursuant to LRCiv 7.2(j), I hereby certify that after personal consultation and sincere efforts to resolve this dispute, counsel for the Non-Parties and Plaintiffs have been unable to do so.

*/s/ Matthew E. Kelley*
Matthew E. Kelley

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May, 2026, I electronically submitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

I further certify that a copy of the foregoing was sent via e-mail and first class mail this same date to:

David Chami
Michael Yancey
CONSUMER ATTORNEYS, PLC
8095 North 85th Way
Scottsdale, AZ 85258
dchami@consumerattorneys.com
myancey@consumerattorneys.com

*Attorneys for Plaintiffs*

Austin Clark Yost
Keith Beauchamp
COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue
Suite 1900
Phoenix, AZ 85004
ayost@cblawyers.com
kbeauchamp@cblawyers.com

*Attorneys for Defendants Michael Crow
and Arizona Board of Regents*


By: */s/ JoAnna R. Wahlund*

20