Keith Beauchamp (012434)
Austin C. Yost (034602)
Andrew T. Fox (034581)
Kelleen Mull (036517)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5485
kbeauchamp@cblawyers.com
ayost@cblawyers.com
afox@cblawyers.com
kmull@cblawyers.com

*Attorneys for Defendant Michael Crow*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Aida Esmeralda Campos, et al., | No. 2:24-CV-00987-JJT |
| Plaintiffs, | **OPENING BRIEF REGARDING USE OF DR. CROW'S VIDEOTAPED DEPOSITION** |
| v. | |
| Arizona Board of Regents, et al., | |
| Defendants. | |

## Introduction

Operating social media accounts under the handle "thelitig8or," Plaintiffs' counsel has a long history of posting profanity-laced rants about this case, sharing unfiled materials that he obtained in discovery, and disparaging Dr. Crow and ASU in edited videos designed to sway public opinion. This Court has twice warned against jeopardizing the "fair administration of this lawsuit" with "extrajudicial statements" by counsel. [Doc. 69 at 9; *see also* Doc. 58 at 3-4 (similar)] But he has not stopped.

On April 16, Plaintiffs' counsel announced to his more than 30,000 followers that he intends to publish Dr. Crow's videotaped deposition on TikTok and Instagram. At the deposition, Plaintiffs' counsel introduced dozens of never-disclosed, irrelevant exhibits and spent substantial time questioning Dr. Crow on issues far afield from anything relevant to Plaintiffs' claims or Dr. Crow's defenses. Rule 30, of course, required that Dr.

Crow answer questions about these irrelevant topics and undisclosed documents. Now, Plaintiffs seek to publish that footage in an effort to publicly harass Dr. Crow and to further their own narrative about conflict in the Middle East. Dr. Crow seeks a protective order limiting use of the videotaped deposition solely for purposes of this litigation.

A protective order is all the more warranted here because (i) Plaintiffs' counsel has violated this Court's order "prohibiting dissemination of any subject materials until the Court has resolved the dispute" [Doc. 148 at 2], and (ii) recent events have put Dr. Crow's safety at risk. After this Court entered its May 15 order for briefing on this issue, Plaintiffs' counsel improperly provided statements to the Phoenix New Times and his social media followers about Dr. Crow's deposition. The Phoenix New Times also published an article about this discovery dispute, and one commenter publicly revealed Dr. Crow's vehicle, parking spot, and license plate. Someone responded: "I'm glad we know where he parks." Enough is enough. Good cause exists to enter a protective order to ensure that this litigation is tried in a courtroom—not in the press, not on social media, and not in a way that threatens Dr. Crow's security.

**Background**

**I.    Plaintiffs' counsel has used this litigation to generate social media content.**

From the very beginning, Plaintiffs' counsel has used social media to publicize this litigation and his involvement in it. He has also repeatedly disparaged Dr. Crow and ASU, misrepresented their positions in this case, and sought to influence public opinion. *See, e.g.*, David Chami, TikTok (Oct. 16, 2024) (describing the suggestion that Plaintiffs trespassed on ASU's Tempe campus as "bullshit" and the criminal charges as "revenge"); David Chami, TikTok (May 29, 2024) (asserting that Dr. Crow has "ongoing support for the [genocide] in Gaza"; as of the date of this TikTok, ASU students remained suspended: "Michael Crow, shame on you, and shame on ASU"); David Chami, TikTok (July 23, 2024) (publicizing his involvement in this case and claiming that ASU "violated the civil rights" of students); David Chami, TikTok (July 30, 2024) (similar); David Chami, TikTok (August 5, 2024) (similar); David Chami, TikTok (Sept. 5, 2024) (similar).

In early discovery, Plaintiffs' counsel began commenting on unfiled evidence. He posted videos in which he discussed various emails and left written comments on his own posts. In one exchange, he replied to a follower: "It's crazy you can't make this sh*t up."

 

David Chami, TikTok (Oct. 10, 2024) (arguing that an MCSO email is "proof" that the trespass orders were "pretext" and that "there was always a plan to shut down these protests without any laws being broken"); David Chami, TikTok (Nov. 6, 2024) (claiming that Dr. Crow "plott[ed] with the ADL" to "shut down ASU student protests").

In connection with a discovery dispute over a confidential designation on body camera footage, this Court twice warned Plaintiffs' counsel that there are limits on his ability to publicize this litigation. First, this Court explained that even when "material produced in discovery is not found to be confidential, that does not mean that a party's counsel is free to do whatever she or he likes with the material so produced." [Doc. 58 at 3] "A private party 'has no constitutional right to use the media to influence public opinion concerning his case so as to gain an advantage at trial.'" [Id. (citation omitted)]

Second, this Court cautioned that Plaintiffs' counsel should avoid making "extrajudicial statements" that undermine "the fair administration of this lawsuit." [Doc. 69 at 9]

Despite these warnings, Plaintiffs' counsel charged ahead with extrajudicial statements on social media. After this Court granted in part and denied in part Plaintiffs' motion to de-designate the body camera footage as confidential, Plaintiffs' counsel posted a video in which he gloated about this Court's decision and accused ASU of "lying about the reasons it suspended students" and trying to "hide all of the bad shit [it] do[es] from the public and act like they're the good guys." David Chami, TikTok (Jan. 3, 2025).



In November 2025, Plaintiffs' counsel started ramping up the level of sensational, extrajudicial statements about this litigation. He accused "defense counsel" of "engaging in ongoing delay tactics" by filing motions to dismiss. David Chami, TikTok (Nov. 10, 2025). Then, he disclosed his intent to depose Jonathan Greenblatt (the Anti-Defamation League's CEO), saying that he "plan[s] to take that punk's deposition, by video, so it is

recorded." *Id.* The purpose of that deposition, according to counsel, would be to "get into all of the dirty reasons why the ADL was trying to suppress speech of American citizens on university campuses," *id.*, notwithstanding that this case turns on the arrests and suspensions of students at only one campus for violating ASU's policy against camping.

**II.    Dr. Crow's videotaped deposition included extensive irrelevant and harassing questions—many of which were related to previously undisclosed and unproduced exhibits that have nothing to do with the issues in this case.**

Dr. Crow's videotaped deposition was taken on March 31, 2026. It strayed far beyond Plaintiffs' First Amendment retaliation claim and Dr. Crow's defenses, veering into various inflammatory tangents using undisclosed, irrelevant documents.

Plaintiffs' counsel asked a broad range of questions bearing no relationship to whether these Plaintiffs were arrested and suspended for violating ASU policies or whether it was retaliation based on the viewpoint of their speech. Examples abound:

| Deposition Question | Citation |
|---|---|
|  | Tr. 36:24-25 |
| | Tr. 37:24-38:1 |
| | Tr. 63:13-14 |
| | Tr. 75:19-20 |
| | Tr. 93:23-24 |
| | Tr. 94:8-10 |
| | Tr. 94:24-95:1 |

| Deposition Question | Citation |
|---|---|
| ██████████████████████████████ | Tr. 95:12-15 |
| ██████████████████████████████ | Tr. 95:25-96:4 |
| ██████████████████████████████ | Tr. 104:12-15 |
| ██████████████████████████████ | Tr. 104:19 |
| ██████████████████████████████ | Tr. 283:21 |
| ██████████████████████████████ | Tr. 296:5-7 |

Plaintiffs' counsel also used the deposition to question Dr. Crow about the broader Israel-Hamas conflict. These questions served no good purpose. The only apparent purpose was to generate a soundbite for Plaintiffs' counsel's social media accounts.

| Deposition Question | Citation |
|---|---|
| ██████████████████████████████ | Tr. 22:8-9 |
| ██████████████████████████████ | Tr. 67:12-14 |
| ██████████████████████████████ | Tr. 67:22-24 |
| ██████████████████████████████ | Tr. 71:5-7 |
| ██████████████████████████████ | Tr. 73:11-12 |
| ██████████████████████████████ | Tr. 153:10 |

Many of these harassing and irrelevant questions were related to nearly 30 previously undisclosed exhibits, most of which are also irrelevant to Plaintiffs' claims and Dr. Crow's defenses. A handful of these undisclosed exhibits are listed below:

| Exhibit # | Description |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 8 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 24 | |
| 28 | |
| 33 | |
| 46 | |

| Exhibit # | Description |
|-----------|-------------|
| 65 | ███████████████████████████████ |

None of these exhibits is relevant to Plaintiffs' claims, which is presumably why Plaintiffs did not disclose them as required by Rule 26(a)(1). Instead, these documents were marked for the first time at Dr. Crow's deposition, preventing any review or preparation, for the purpose of making video clips unrelated to this case.

**III.    Plaintiffs' counsel has already publicly disclosed information about Dr. Crow's deposition, and the resulting publicity is creating serious safety risks.**

After Dr. Crow's deposition, Plaintiffs' counsel announced his intent in a profanity-laced rant to publish the deposition on TikTok and Instagram. He said:

> [T]he Israeli occupation forces were tabling at Arizona State University . . . I don't know if these motherfuckers are actual students. **I don't know how Michael Crow, well I guess I do know how Michael Crow would allow this. He's the same guy who had the peaceful protesters arrested, trespassed, and suspended from university for protesting genocide. I took his deposition. You'll all get to see it soon.** And he to this day refuses to call it a genocide. But he allows these dirty sons of bitches, these murderers, these war criminals on Arizona State University Campus to do a Q&A. . . . Go ask Michael Crow why the fuck these war criminals are not in prison instead of flipping us the peace sign on campus. You know, peace, the only thing these bastards know nothing about.

David Chami, TikTok (Apr. 16, 2026) (emphasis added). Dr. Crow promptly sought a protective order to bar the "improper publication of his videotaped deposition on social media and confidential protection of his deposition transcript pending a ruling on the issue." [Doc. 147 at 1] This Court set a briefing schedule and "prohibit[ed] dissemination of any subject materials until the Court has resolved the dispute." [Doc. 148 at 2]

Plaintiffs' counsel has already violated this Court's order that Dr. Crow's deposition remain confidential pending a ruling on this dispute. A few days after this Court entered its order, Plaintiffs' counsel returned to social media to once again publicize his involvement in this case, attack Dr. Crow, and misrepresent his positions. ████████ ████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ David Chami, TikTok (May

19, 2026). ███████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████ Plaintiffs' counsel then claimed that Dr. Crow decided to arrest and suspend Plaintiffs because he wished to "protect Israel." *Id.* Plaintiffs' counsel argued that Dr. Crow "didn't give a shit about our constitution" and "didn't give a damn about some 11 p.m. curfew." *Id.* ███████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████ *Id.*

That's not all. On May 20, the Phoenix New Times published an article about this discovery dispute. *See* Morgan Fisher, *ASU President Wants his Gaza Protester Lawsuit Deposition Kept Hidden*, Phoenix New Times (May 20, 2026) ("Article"). In the Article, Plaintiffs' counsel shared specific content from Dr. Crow's deposition:

> Chami has given hints about what Crow's deposition contains. He told New Times that he asked Crow about the encampment crackdown and "many different topics," including the Epstein files and Crow's "connections to certain people who I find to be affiliated with the pro-Israeli lobby." Chami alleges that the Anti-Defamation League — a nongovernmental organization known for its pro-Israel advocacy and its position that criticism of Israel and Zionism is antisemitic — was in "direct contact" with Crow just days before the protest.
>
> Chami said he asked Crow about being named in the Epstein files several times in connection with disgraced ASU professor Lawrence Krauss. Krauss was a good friend of Epstein's who relied on the disgraced financier when navigating a sexual misconduct scandal at ASU. Chami asked Crow about his ties to Epstein, who, in addition to being a child sex offender, had alleged ties to Israeli intelligence.

*Id.* The Phoenix New Times linked the Article on its social media accounts. *See* **Ex. A** (Instagram Post).[1]

The Article resulted in comments inciting violence and harassment against Dr. Crow. For instance, one user publicly revealed Dr. Crow's vehicle, parking spot, and license plate. Another user responded: "I'm glad we know where he parks." Someone else suggested that "complicit parties"—those involved in the decisions of schools to "us[e] their endowment to invest in genocide"—should be "shot in the head."

outergodless: I'm glad we know where he parks.

llacunaorg: What about the larger issue – schools using their endowment to invest in genocide? Should complicit parties be shot in the head or just dismembered after being charged with treason? #THINKCRITICALLY

**Ex. B** at lines 33, 50, 83, 86; **Ex. C** (screenshots of john.w1414's comments); **Ex. D** (screenshot of llacunaorg comment); **Ex. E** (screenshot of outergodless comment).

Plaintiffs' counsel also commented several times. And despite this Court's order, he continued to publicly disclose the content of Dr. Crow's deposition. *See, e.g.*:

thelitig8or:

thelitig8or:

---

[1] A download of the comments to the Phoenix New Times's Instagram post is attached as **Exhibit B**.

-10-

[black redaction bar]

**Ex. B** at lines 65, 110.

One day later, Plaintiffs' counsel shared with his followers that he is "someone who just took the deposition of Michael Crow." David Chami, TikTok (May 21, 2026).

[black redaction bars]

*Id.* According to Plaintiffs' counsel, this matters because "ASU is now offering a master's degree in war" and seeks to "brainwash" and "propagandize students into becoming psychopathic killers." *Id.* Plaintiffs' counsel asked: "[I]s this Nazi Germany?" *Id.* "This is where we are as a country now." *Id.* Plaintiffs' counsel then urged his 30,000 followers to decide whether they're on the side of "good or evil." *Id.*

## Argument

Rule 26(c) authorizes courts to issue protective orders for "good cause" to shield parties and witnesses from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Good cause exists here.

**I.    Good cause exists to restrict use of Dr. Crow's entire videotaped deposition (transcript and video) solely for purposes of this litigation.**

"[P]retrial depositions . . . are not public components of a civil trial." *Id.* at 33 ("restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information"). "Rule 26(c) furthers a substantial governmental interest unrelated to the suppression of expression." *Id.* at 34. It protects litigants from abuses of pretrial discovery. *Id.* "The liberality of this process creates a significant potential for abuse such as delay, expense, misuse of court process and damage to the reputation and privacy of litigants and third parties." *DaCosta v. City of Danbury*, 298 F.R.D. 37, 39 (D. Conn. 2014). Courts must thus be "vigilant to ensure that their processes are not used improperly for purposes unrelated to their role." *Drake v. Benedek*

-11-

*Broad. Corp.*, No. 99-2227, 2000 WL 156825, at *2 (D. Kan. Feb. 9, 2000) (citation modified); *see also, e.g.*, *Seattle Times Co.*, 467 U.S. at 34–35 (courts "clearly ha[ve] a substantial interest in preventing this sort of abuse of its processes").

Here, this Court should limit use of Dr. Crow's videotaped deposition (transcript and video) solely for purposes of this litigation for three reasons.

*First*, Plaintiffs' counsel seeks to sensationalize Dr. Crow's deposition and weaponize it for media attention. This Court has already warned him against jeopardizing the "fair administration of this lawsuit" with "extrajudicial statements." [Doc. 69 at 9] But he has repeatedly disregarded that admonition. Dr. Crow's deposition strayed far beyond the claims in this case, veering into various inflammatory tangents using undisclosed, irrelevant documents. Dr. Crow could not limit the questioning at his deposition to relevant issues. *See* Fed. R. Civ. P. 30(c)(2) ("[T]he testimony is taken subject to any objection."); Fed. R. Civ. P. 32(d)(3)(A) (relevance objections are "not waived"). Plaintiffs' counsel should not now be permitted to publicize the footage and turn this case into a circus while he tries to publicly harass Dr. Crow on his social media accounts. *See* Ethical Rule 3.6(a) (barring a lawyer from "mak[ing] an extrajudicial statement that the lawyer knows or reasonably should know . . . will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter").

*Second*, Plaintiffs' counsel's effort to use Dr. Crow's deposition for private commercial gain supports this request. In *Paisley Park Enterprises, Inc. v. Uptown Productions*, for instance, the court restricted use of a videotaped deposition to the litigation, holding that depositions were "not intended to be a vehicle for generating content for broadcast and other media." 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999). Courts have applied the same reasoning to prevent a party from using deposition footage for a documentary, *Drake*, 2000 WL 156825, at *2, and to prohibit counsel from using deposition videos in commercial seminars, *Larson v. Am. Fam. Mut. Ins. Co.*, No. CIV.A. 06CV01355PSFM, 2007 WL 622214, at *1 (D. Colo. Feb. 23, 2007). Plaintiffs' counsel has built himself a social media platform with over 30,000 followers. Each post drives

-12-

engagement and grows that platform. Publicly posting Dr. Crow's videotaped deposition, especially excerpts featuring incendiary and irrelevant questioning, is improper.

*Third*, a protective order is all the more important here because dissemination of Dr. Crow's deposition presents immediate safety concerns. Courts recognize that Rule 26(c)'s protection is appropriate when release of deposition materials creates credible safety concerns for deponents. *See, e.g.*, *Poulos v. City of L.A.*, No. 2:19-CV-00496, 2020 WL 4108433, at *1 (C.D. Cal. June 23, 2020) (finding good cause to prohibit use of videotaped depositions outside the litigation because of demonstrated safety risks to deponents); *Howards v. Reichle*, No. 06-CV-01964, 2008 WL 11363652, at *3 (D. Colo. Nov. 25, 2008) (granting protective order based in part on safety concerns arising from release of videotaped depositions). As discussed above, after Plaintiffs' counsel's public commentary about this case, social-media users responded to the Article with comments that could reasonably be interpreted as inciting harassment and violence toward Dr. Crow, including posts identifying where Dr. Crow parks and threatening that "complicit parties" should be "shot in the head." Those reactions underscore the foreseeable risk of harassment from further public dissemination of Dr. Crow's deposition.

Even if this Court declines to protect the entire deposition, it should at the very least protect the portions with no connection to Plaintiffs' claims or Dr. Crow's defenses. Questions asked solely to generate a media clip are the paradigm case of "annoyance" and "oppression" under Rule 26(c). Allowing Plaintiffs' counsel to broadcast that footage on social media would sanction the very abuse of process that Rule 26(c) seeks to prevent.

**II.     At a minimum, the video recording warrants heightened protection.**

The video recording of Dr. Crow's deposition warrants even greater protection than the transcript alone. A video can be "cut and spliced and used as sound-bites," manipulated, decontextualized, and broadcast to mass audiences in ways that a transcript cannot. *Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (citation modified); *see also, e.g.*, *Burgess v. Town of Wallingford*, No. 3:11-CV-1129, 2012 WL 4344194, at

-13-

\*8 (D. Conn. Sep. 21, 2012) ("publication of audio recordings is rife with potential for abuse").

That potential for abuse is why courts often prohibit video publication even when they refuse to protect a deposition transcript. In *United States v. McDougal*, for example, the court released the transcript of President Clinton's deposition but refused to release the video, recognizing that the visual and auditory dimensions of a recording create prejudice risks that the written word does not. 940 F. Supp. 224, 228 (E.D. Ark. 1996). Other courts have reached the same conclusion. In *Springs v. Ally Financial, Inc.*, the plaintiff posted YouTube excerpts of her former employer's deposition, interspersed with commentary accusing the witness of lying based on her hand gestures. No. 3:10-CV-311, 2014 WL 7778947, at \*3 (W.D.N.C. Dec. 2, 2014), *aff'd*, 684 F. App'x 336 (4th Cir. 2017). The court ordered the plaintiff to remove the video from YouTube and, on appeal, the Fourth Circuit concluded that courts have "a compelling interest in preventing litigants from using discovery to mock and harass a private party on the internet." 684 F. App'x at 338. That is exactly what Plaintiffs' counsel intends to do here.

Plaintiffs' counsel posts videos—edited, captioned, and commentated for maximum engagement on social media. And Dr. Crow's deposition is ripe for mischaracterization and abuse because it is filled with irrelevant and inflammatory questions. Allowing Plaintiffs' counsel to post that footage on social media would transform discovery into a spectacle. Rule 26(c) seeks to prevent precisely that.

### Conclusion

As explained above, use of Dr. Crow's videotaped deposition should be limited solely for purposes of this litigation. This is not a request for "blanket secrecy," as Plaintiffs argued in the discovery dispute statement. Rather, it is a request that would restrict Plaintiffs from using the deposition for publicity purposes unrelated to this case.

-14-

RESPECTFULLY SUBMITTED this 28th day of May, 2026.

**COPPERSMITH BROCKELMAN PLC**

By /s/ Austin C. Yost

Keith Beauchamp
Austin C. Yost
Andrew T. Fox
Kelleen Mull

*Attorneys for Defendant Michael Crow*