**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Aida Esmeralda Campos, *et al.*, | No. CV-24-00987-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Arizona Board of Regents, *et al.*, | |
| Defendants. | |

The Court held a telephonic discovery dispute hearing on July 15, 2026 and has already resolved issues raised in Docs. 183, 184, and a portion of 188. The Court took the remaining issues raised in Doc. 188 and all of Doc. 189 under advisement and now resolves them here.

**I.    Doc. 188**

**A.  Social Media Activity**

The discovery dispute set forth in Doc. 188 deals primarily with communications from and in some cases to Plaintiffs about the April 26, 2024 protest ("Protest") and its aftermath. The parties presented four areas of disagreement. The Court already addressed the fourth area, related to timing of Plaintiffs' obligation to answer Defendant's contention interrogatories, at the July 15 telephonic hearing. The first remaining live dispute centers on Defendant's requests for Plaintiffs' social media activity relating to: 1) the Protest, including any plans or preparations for the Protest, bounded from October 7, 2023 to the present; and 2) each respective responding Plaintiff's arrest, criminal proceedings,

disciplinary proceedings within ASU arising from the Protest, and the instant action in this Court. Plaintiffs argue none of these materials are relevant to the issues in the matter, and that the request is overbroad and not particularized as required by Rules 26(b)(1) and 34(b)(1)(A).

First, the requests are relevant. Defendant has argued that where "the dispositive question is whether Defendant took adverse action against Plaintiffs because of their protected speech on April 26," what Plaintiffs "read, posted or planned beforehand" is not relevant. This construction artificially restricts relevance based on Plaintiffs' preferred narrative. It ignores the role Plaintiffs' knowledge of ASU codes and policy as well as police response practices, their intentions, and their plans could and did have on their interactions with police and other university officials, as well as those officials' resulting responses. Many protest groups, from the organizers of the Indian independence movement to America's own 1960s' Civil Rights movement to more contemporary movements, have at times designed their protests—and specific actions or non-actions within—to have their participants get arrested *en masse* in order to draw public attention to their issues. What the protesters did, how they did it, and why, as informed by their knowledge, plans and intent, all could significantly impact a finder of fact's decision as to the propriety of any response. Defendant thus is entitled here to explore Plaintiffs' knowledge, intent and plan as those factors go directly to one or more elements of the Section 1983 claim. That same state-of-mind discovery goes indirectly to Plaintiff's claim for emotional distress damages—if, for example, evidence tends to show a plaintiff hoped or intended to get arrested, it may well undermine that plaintiff's claim that such arrest caused them emotional distress. What each Plaintiff said or wrote about the Protest and its aftermath is probative of their knowledge, intent and planning of it.

Second, the requests are tailored and particularized by timespan, subject matter and origin, all of which delimiters the Court concludes are rationally set. As to subject matter limitations, the requests are properly bound to only those communications about the Protest, the arrests, the criminal cases and university disciplinary proceedings arising

therefrom, and this lawsuit. The communications at issue are further limited by Defendant's word choice seeking each respective Plaintiff's social media "activity," which the Court can only rationally read as asking for the statements made by the respondent. Because the Plaintiffs' own statements in such conversations would in many cases be devoid of meaning absent the context provided by the prompts or responses interjected by the other participants, the Court will require Plaintiffs to provide all communication in the threads, from whatever participant. But seeing no relevance to the identity of the non-party participant in this circumstance, and in light of Defendant's specific limitation in his request to a *responding plaintiff's activity*, the Court will allow Plaintiffs to redact the identities of other participants in the responsive social media threads who are not themselves Plaintiffs in this matter. Finally, Defendant has set a rational temporal boundary to the requests. Social media activity from after the triggering event for the Protest—the attacks against Israelis in Israel by Hamas on October 7, 2023—is probative of each Plaintiff's knowledge, plan, design intention and expectation regarding the Protest. Seeking the above subset of social media activity from October 7 2023 to the present is reasonably calculated.

### B. "Protest Documents"

The second remaining live dispute is over "April 26 Protest Documents," which Defendant identifies are writings possessed by Plaintiffs between the Hamas attack of October 7, 2023 and the Protest, discussing the instant Protest or any other protest occurring on university campuses over the Israel/Gaza/Hamas conflict. For the reasons discussed in Section I.A. above, the Court concludes the material sought, if it exists, is relevant to Plaintiffs' knowledge, intent and plan. The time boundary of the request is tailored, rational and not overbroad. The Court cannot conclude that Plaintiffs have made the threshold showing to trigger the associational privilege under the First Amendment; their argument in the Notice and at hearing was a bare invocation. Thus, Plaintiffs will be required to produce any responsive documents. However, the Court will order that associated information identifying non-party sources of such documents will be

"Attorneys' Eyes Only" ("AEO") and shall not be further shared or disclosed unless the Court orders otherwise.

### C. Interrogatory Regarding How Plaintiffs Learned about the Protest

For the same reasons, Defendant is entitled to discover who told Plaintiffs about the Protest or where they learned about it, and what the communication was. Again, however, that disclosure—where it involves non-parties to this action—will be treated as AEO and shall not be further shared or disclosed unless the Court orders otherwise.

## II.    Doc. 189

The part of Defendant's discovery addressed in the Joint Notice at Doc. 189 involves requests related to Plaintiffs' collective allegations that they suffered "severe emotional and mental distress, frustration, anxiety, and fear." (Doc. 189 at 2 (citing Doc. 75 ¶¶ 90, 99).) Those requests seek medical records predating the Protest by three years. (*See* Doc. 189-1 at 45.) Seven of the sixteen Plaintiffs issued no response at all to these discovery requests, while the remaining nine Plaintiffs produced limited mental health records that, according to them, demonstrate their treatment related to the Protest.

As for the group of seven Plaintiffs who produced nothing, Defendant argues that they placed their mental health records at issue by alleging "severe emotional distress" and are not excused from their obligation to produce medical records. Plaintiffs argue that they allege "garden-variety" or "ordinary" emotional distress only and, accordingly, have not waived their medical privacy and need not produce medical records. The parties disagree whether the so-called "garden-variety" test, which some courts use to determine whether emotional distress damages invoke waiver of medical record privilege, applies here.

While no consensus among federal courts exists regarding the circumstances under which a plaintiff waives his or her privacy in medical records when asserting emotional damages, three general approaches have emerged: (1) broad approach, under which the mere assertion of a simple claim for emotional distress damages triggers waiver; (2) narrow approach, under which a plaintiff makes "an affirmative reliance on the [medically privileged] communication" that triggers waiver; and (3) middle approach (also known as

"limited broad" approach), under which allegations of more than "garden variety" emotional distress trigger waiver. *Fitzgerald v. Cassil*, 216 F.R.D. 632, 636–37 (N.D. Cal. 2003). The majority of courts in this circuit reject the broad approach.[1] *Hookom v. Chandler Unified Sch. Dist.*, No. CV-24-00524-PHX-SPL, 2025 WL 1519160, at *2 (D. Ariz. May 28, 2025) (applying the middle approach); *Fitzgerald*, 216 F.R.D. at 636–37 (adopting narrow approach); *Equal Emp. Opportunity Comm'n v. Peters' Bakery*, 301 F.R.D. 482, 485 (N.D. Cal. 2014) (applying narrow and middle approach); *Stallworth v. Brollini*, 288 F.R.D. 439, 443 (N.D. Cal. 2012) (collecting cases adopting or applying either the narrow or middle approach). Defendant advances no argument that persuades this Court to break from the growing trend of its sister courts and declines to apply the broad approach here.

Under either the narrow or middle approach, the Court finds that these seven Plaintiffs have not waived their privacy to their medical records. No party suggests that these Plaintiffs have represented an affirmative reliance on a medically privileged communication to prove their emotional distress damages, asserted specific mental health conditions or unusually severe distress beyond generally pleading "severe emotional distress," or indicated that expert testimony will be submitted on this point. *See Peters' Bakery*, 301 F.R.D. at 486 (finding that no reliance on privileged communication, specific mental health condition, or expert testimony precludes waiver under the narrow and middle approach). Cross examination remains an effective tool for Defendant to test these Plaintiffs' purported emotional distress damages. *Id*. Further, as Plaintiffs noted at the July 15 hearing, the discovery rules provide mechanisms to exclude evidence that is improperly or untimely disclosed, and Defendant is free to use those mechanisms as appropriate.

The Court notes that its ruling on this issue—its conclusion that the seven Plaintiffs who produced nothing state only garden variety emotional damages claims—is premised upon its understanding that: 1) those Plaintiffs will present no expert diagnosis but only lay

---

[1] These courts have determined that the broad approach directly contravenes the Supreme Court's formulation of psychotherapist-patient privilege in *Jaffee v. Redmond*, 518 U.S. 1 (1996). *See Fitzgerald*, 216 F.R.D. at 635.

observations; 2) no physician, mental health professional or other expert will testify on their behalf; 3) none of these Plaintiffs will claim a pre-existing psychological condition was exacerbated by Defendants' conduct; and 4) none of these Plaintiffs will argue their emotional distress is a basis for impaired future earning capability. If the Court's understanding is incorrect, any of the seven Plaintiffs for which the understanding is incorrect must correct the Court's understanding immediately as the ruling as to that Plaintiff would likely change, as the presence of any of these circumstances would take a plaintiff's emotional distress claim outside the "garden variety" classification as defined in law.

As to the group of nine Plaintiffs who provided a limited production, Defendant argues that they must produce records of their mental health history so Defendant can evaluate their damages and identify alternative causes. (Doc. 189.) Plaintiffs acknowledge that these nine Plaintiffs allege more than ordinary or simple emotional distress damages and have agreed to produce "mental health records relating to the distress caused by the April 26 events." (Doc. 189 at 4.) At this stage, the Court agrees with Plaintiffs that records pertaining only to their mental health are relevant, not all health records as requested by Defendant. The Court also agrees with Defendant that he is entitled to review all these nine Plaintiffs' mental health records for the authorized periods before and after the Protest event to determine whether there are other causes of emotional distress. But three years prior to the Protest is two years too many, and the Court will restrict the relevant time period to March 1, 2023 through the date of production.

**IT IS ORDERED** with regard to the discovery dispute noticed at Doc. 188 that Plaintiffs each shall produce the following as requested by Defendant:

- All social media activity occurring between October 7, 2023 and present and relating to 1) the April 26, 2024 protest on ASU Main Campus, including any plans or preparations for it; 2) their arrest; 3) the associated criminal proceedings; 4) ASU disciplinary proceedings within ASU arising from the protest; and 5) the instant

action in this Court. Identities of participants on the responsive social media threads who are not parties to this action shall be redacted.

- All "protest Documents" as discussed and defined above in any Plaintiff's possession between October 7, 2023 and April 26, 2024. The identities of the sources of any such documents who are not parties to this action shall be treated "AEO."

- Complete responses to Defendant's Interrogatory asking from whom or where each Plaintiff learned of the April 26, 2024 protest and what was communicated. The identities of the sources of these communications who are not parties to this action shall be treated "AEO."

**IT IS FURTHER ORDERED** with regard to the discovery dispute noticed at Doc. 189 that Plaintiffs Byars, Jama, Brocker, Chavez Morales, Maciel, Clancy, Koert, Vallejo, and Quinn shall produce all mental health records dated March 1, 2023 through the date of production.

**IT IS FURTHER ORDERED** that Plaintiffs shall complete this production of extant responsive materials and information within 30 days of entry of this Order.

Dated this 29th day of July, 2026.

Honorable John J. Tuchi
United States District Judge