**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aida Esmeralda Campos, *et al.*, | No. CV-24-00987-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Arizona Board of Regents, *et al.*, | |
| Defendants. | |

The Court now resolves the fully briefed Motion of Non-Parties Anti-Defamation League and Jonathan Greenblatt to Quash Subpoenas (Doc. 162, Mot.; Doc. 180, Resp.; Doc. 193, Reply).

**I.    BACKGROUND[1]**

On April 26, 2024, Plaintiffs participated in a pro-Palestine student protest. (Doc. 75, SAC ¶ 57.) As relevant here, in the days leading up to the protest, "Defendants engaged in extensive communication and preparation . . . externally with . . . affiliates of political organizations such as the Anti-Defamation League [("ADL")] . . . all with the goal of preventing or squashing any public demonstrations against the use of public assets to fund the genocide in Gaza or affiliation with pro-Zionist entities that might take place at [Arizona State University ("ASU")] or any other public Arizona university." (SAC ¶ 46.) One such communication took place four days before the protest on April 22, 2026, wherein the CEO of the ADL, Jonathan Greenblatt, "explicitly called for ASU to prepare

---

[1] When referring to papers submitted by the parties, the Court cites to the page number as generated by the Electronic Court Filing system, not the parties' own page demarcation.

and coordinate with law enforcement in order to impose clear and immediate consequences on students protesting Zionism and its murderous effects in Gaza." (SAC ¶ 47.)

Several hours into the protest, some of the Plaintiffs were forcibly removed, some were arrested, and some were injured. (SAC ¶¶ 61–65.) The next day, Plaintiffs were suspended, banned from ASU property, and prohibited from communicating with ASU faculty. (SAC ¶¶ 70–76.) Plaintiffs are now suing Defendants for violating their First Amendment right to free speech and discovery efforts are underway. As relevant here, Dr. Crow has produced 662 pages of communications between ASU and ADL, including emails between Mr. Greenblatt and Dr. Crow. (Resp. at 5.) Plaintiffs detail some of those communications in their response brief including, for example, an April 11, 2024 email predating the protests in which Mr. Greenblatt announced the ADL's implementation of "Campus Antisemitism Report Cards" and informed Dr. Crow that ASU earned a "C" grade. (*See, e.g.*, Resp. at 3–4; Doc. 180-5.)

In November 2025, Plaintiffs served upon Mr. Greenblatt and the ADL ("Non-Parties") three subpoenas for documents and the deposition of Mr. Greenblatt. (Mot. at 2–3.) Upon Non-Parties' objection and discussion among counsel, Non-Parties agreed to provide Plaintiffs a list of the other colleges and universities to whom Non-Parties sent the same or similar April 22, 2024 email, and Plaintiffs agreed to withdraw the subpoenas. (Mot. at 3.) In May 2026, Plaintiffs served four subpoenas upon Non-Parties once more, this time with additional requests for document production and deposition categories. (Mot. at 3.) The instant motion to quash those subpoenas followed.

## II.    LEGAL STANDARD

Parties may seek the production of relevant, non-privileged documents from non-parties through a subpoena issued in accordance with Federal Rule of Civil Procedure 45. Fed. R. Civ. P. 34(c). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). A court may quash or modify a subpoena when

a timely motion is filed and the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).

Relevance in the context of Rule 45 is the same as it is for Rule 26(b)(1), which permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022). Importantly, though, non-parties are entitled to special consideration when it comes to subpoena requests under Rule 45. *See, e.g.*, *Dart Industries Co., Inc. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980). Restrictions on discovery "may be broader when a nonparty is the target of discovery." *Id*. "The proper way to afford this special consideration is to 'weigh the burden to the subpoenaed party against the value of the information to the serving party. Generally, this requires consideration of relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed.'" *Aquastar Pool Prods. Inc. v. Paramount Pool & Spa Sys.*, No. CV-19-00257-PHX-DWL, 2019 WL 250429, *3 (D. Ariz. Jan. 16, 2019) (quoting *Soto v. Castlerock Farming & Transport, Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012)). Under this inquiry, a court may also consider whether the information requested through a non-party subpoena is readily available from another party. *See, e.g.*, *Duong v. Groundhog Enterprises, Inc.*, 2020 WL 2041939, *7 (C.D. Cal. Feb. 28, 2020).

III.    **ANALYSIS**

Non-Parties move to quash the four subpoenas because they request material that is (1) irrelevant; (2) overbroad; (3) protected by the journalist's privilege, (4) already produced or are available through interparty discovery or online; or (5) intended to harass or unduly burden Non-Parties. (Mot. at 3, 5–6.)

Upon review of the 147 requests for production and deposition categories set forth in the subpoenas (*see* Docs. 162-7, 162-8, 162-9, 162-10), the Court observes that the information sought falls into three categories. First, Plaintiffs seek information passing between Defendants and Non-Parties. Second, Plaintiffs seek information circulating

internally within Non-Parties regarding, for example, its report card program. Third, Plaintiffs seek information passing between Non-Parties and other non-parties including colleges, universities, and even politicians.

As to the latter two categories, Non-Parties argue that such information is irrelevant because it "could not possibly have affected anything Defendants did regarding Plaintiffs." (Mot. at 11.) Plaintiffs respond that the information goes to Defendants' motive; specifically, that Defendants restricted Plaintiffs' speech so they could receive a better report card from the ADL. Plaintiffs argue that they require the information Nonparties shared internally and with other actors not named in this matter to "test" Dr. Crow's deposition testimony that he was not influenced by Nonparties when he decided to take action against Plaintiffs. (Resp. at 9.) But Plaintiffs do not explain how information passing among Nonparties and other non-parties (e.g., other universities, politicians, media) relate to whatever influence Nonparties exerted upon Defendants.

As to the first category, Plaintiffs argue that Nonparties' production of the same communications already produced by Dr. Crow would not be duplicative because the Nonparties' version would "contain metadata showing when and to whom ADL forwarded its communications internally, BCC recipients on the emails involving Defendant, internal deliberations about ASU's Report Card score, the criteria ADL applied in evaluating ASU's campus policies, and communications on which Defendant was not copied." (Resp. at 10.) As discussed above, the Court fails to see how information internally held by Nonparties, which would have never reached Defendants,[2] could influence decisions made by Defendants. Further, the Court is not convinced that whatever information that *is* relevant to Defendants' motive cannot be produced through interparty discovery. Significant production has already occurred, and Plaintiffs have not suggested that production was deficient.

. . .

. . .

---

[2] Plaintiffs concede that these records "capture information Defendant never possessed." (Resp. at 10.)

- 4 -

**IT IS ORDERED** granting the Motion of Non-Parties Anti-Defamation League and Jonathan Greenblatt to Quash Subpoenas (Doc. 162).

Dated this 29th day of July, 2026.

_____
Honorable John J. Tuchi
United States District Judge